text and bargaining history of this section.  Nothing in this
section makes state offset laws part of the CBA, or vests state
tribunals or legislatures with the right to interpret or modify
the limited time offset provided for in Paragraph 10 of the NFL
Player Contract.  That provision, like the rest of the CBA,
remains subject to the exclusive jurisdiction of the parties'
arbitrators, who have conclusively decided what its meaning is.
Only they can decide what Paragraph 10 means.  Certainly, the
parties did not agree to delegate to the 23 states having NFL
Clubs the contractual "right" to interpret Paragraph 10, with
the end product being a patchwork of disparate decisions that
treat players unequally under a uniform CBA.

      The NFLPA requests the following remedy in this case:
(1) a damages award for any grieving player whose workers'
compensation benefits were reduced as a result of a Club
obtaining a greater offset than the time offset permitted by
Paragraph 10 of the NFL Player Contract; (2) a declaration that
Freeman establishes that Paragraph 10 is a time offset only, and
that it is a benefit or right to the player, as well as the Club
-- in that it defines the scope of the injury benefits provided
for in other provisions of the CBA -- and that Freeman is the
law of the shop, binding on all Clubs for salary continuance and
injury protection; and (3) a declaration that to the extent any
state statute purports to create a greater offset and,
therefore, diminishes a contractual benefit it is preempted.
The NFLPA stresses that it is not asking the arbitrator to order
state authorities to do anything, and it is not seeking an order

preventing or limiting the Clubs from making any arguments they
want in state proceedings.

The NFLPA also contends that the Clubs' argument that
these grievances are untimely insofar as they seek monetary
damages is without merit.  The source of the injury to the
affected players was not the Club's arguing for a greater offset
than that provided in Paragraph 10, but the granting of an award
by the state tribunal which permitted such an offset and,
thereby, reduced the player's contractual injury benefit.  In
the case of all players, except Peter and Kerner, the grievance
was filed within 45 days of such an award, and, therefore, was
timely under Article IX, Section 2.  In Peter's case, there are
no damages yet, as the parties in that workers' compensation
proceeding have put the case on hold.  In Kerner's case, the
NFLPA -- which is not a party in any of the state proceedings --
did not know of the decision within 45 days of the award, but
filed an amended grievance to include Kerner -- a former player
who could not file a grievance on his own -- in the New York
grievance within 45 days of when the NFLPA did learn of the
award.

## CLUBS POSITION

Initially, the Clubs argue that this arbitrator lacks
jurisdiction to resolve these grievances because they involve a
dispute over how state law should be interpreted and applied in
purely state law proceedings.  As recognized in <u>Texas Workers'
Comp</u>, state law, not the CBA, determines what benefits a player

who files a claim for workers' compensation benefits under state
law is entitled to receive.  Any dispute over how such a claim
is to be calculated, including the amount of any appropriate
offset, always has been presented to, and resolved by, the
respective state authorities.

        In any event, the Clubs contend, the grievances are
meritless because the CBA does not guarantee players any minimum
level of workers' compensation benefits, but instead leaves the
players' entitlement to such benefits for determination solely
by state authorities in accordance with state law.

        Paragraph 10 of the NFL Players Contract gives Clubs
the contractual right to be reimbursed for money paid to players
that the parties deem to be an "advance payment" of workers'
compensation.  Paragraph 10 confers no affirmative rights upon
NFL players that could be subject to violation.  Past
arbitration decisions have not created any player rights to a
minimum level of workers' compensation benefits under state law.
The holding in Freeman may be asserted as authority in a
subsequent NFL arbitration in which a Club seeks to reduce a CBA
benefit by the amount of a state workers' compensation award,
but it cannot be extended to preclude Clubs from arguing how a
claim for workers' compensation should be determined by state
authorities under state law.  Donald Smith followed the Florida
court's decision in Jarvis in interpreting Paragraph 10 to
provide a time offset under Florida law.  State decisions in
Ohio, Louisiana and Pennsylvania likewise considered Paragraph
10 in determining that laws in those states provided Clubs with

a full dollar-for-dollar offset for advance compensation paid to
players for their injuries.

        The Clubs insist this is not a case of *Machinists*
preemption.  A state's determination as to how a particular
workers' compensation award should be calculated under state law
does not in any way deprive a player of any collectively
bargained benefit.  The NFLPA's reliance on <u>Freeman</u> and the law
of the shop principles is inapposite.  The question is not
whether <u>Freeman</u> should be followed in a subsequent arbitration
involving substantially identical claims under the CBA, or even
whether that decision has become part of the CBA and may not be
relitigated.  The grievances at issue here do not concern a
claim, as in <u>Freeman</u>, for injury protection benefits under the
CBA.

        Neither <u>Freeman</u> nor any of the other arbitration
decisions cited by the NFLPA holds that Paragraph 10 only
permits a limited time offset and precludes a dollar-for-dollar
offset to workers' compensation.  Indeed, Arbitrator Kagel
himself issued two decisions prior to the 1993 CBA granting a
Club a dollar-for-dollar offset.  See <u>Harris v. Los Angeles Rams</u>
(Kagel 1989) and <u>Miami Dolphins v. Bennett, et al.</u> (Kagel 1990).

        The Clubs stress that since <u>Freeman</u> was decided in
1994, Clubs and players -- with the assistance of the NFLPA --
have been arguing in state proceedings over whether <u>Freeman</u>'s
analysis should be adopted in determining the offset to be
provided under state law on the particular facts in issue.  This

shows that preemption does not apply, and that the practice
established under the CBA is that these issues are to be
resolved at the respective state level.

Indeed, the Clubs argue, the Preservation of Rights
provision in Article LIV, Section 6 of the CBA protects the
Clubs' right to make offset arguments to state authorities.
Ever since this provision was included in the CBA in 1993, both
parties have routinely argued to state workers' compensation
authorities regarding the legality of workers' compensation
offset provisions under state law, as Section 6 expressly
authorizes.

The Clubs assert that federal court decisions make
clear that a party to a CBA cannot obtain declaratory relief
precluding the other side from filing grievances or advancing
arguments that it believes already have been decided in
arbitration.  See, e.g., AG Communications Systems Corp. v.
Int'l Brotherhood of Electrical Workers, Local 21, 2005 WL731026
(N.D. Ill.).  Here the NFLPA seeks to bar the Clubs from ever
arguing about the offset issue not only in subsequent
arbitration, but even in a forum outside of the CBA under state
law.

The Clubs contend that there is no obligation that a
state apply state law in a manner consistent with Arbitrator
Kagel's decision in Freeman.  State authorities are not bound by
Freeman in how they interpret Paragraph 10 in the context of
applying state workers' compensation statutes.  An arbitrator

cannot tell states how they should interpret and apply their own
state statutes.

        Finally, the Clubs maintain that to the extent the
NFLPA is seeking damages for the named players in these
grievances, the grievances are untimely.  The Clubs assert that
the conduct being challenged here is the argument the various
Clubs have made at the state level about the application of
state workers' compensation offset provisions.  The Clubs argue
that in each instance the NFLPA was well aware of that far more
than 45 days prior to the filing of the grievance.

                            FINDINGS

        In Freeman, the player had received an award of
workers' compensation benefits before he was found to be
entitled to injury protection benefits under the CBA.  After
concluding that he was entitled to injury protection, Arbitrator
Kagel granted the Club a time offset under Paragraph 10 of the
NFL Player Contract.[2]  In Freeman, the parties disagreed on
whether Paragraph 10 provided only for a time offset or for a
dollar-for-dollar offset.  Freeman squarely held that Paragraph
10 only provides for a time offset, and not for a dollar-for-
dollar offset.  While Freeman involved injury protection, not
salary continuance, neither the parties, nor Arbitrator Kagel

_____

[2] Freeman is consistent with the two prior decisions, Wandler and
Green, in which arbitrators granted a club a time offset,
although it does not appear that the issue of a time offset
versus a dollar-for-dollar offset was raised in either case.

appeared to see any distinction between those contractual
benefits for purposes of the offset allowed by Paragraph 10.
That is perfectly understandable given the language of Paragraph
10.

        Under the holding in <u>Freeman</u>, a Club which has paid
salary continuance and/or injury protection to a player who
subsequently receives an award of workers' compensation would be
entitled to be reimbursed on a time offset basis under Paragraph
10.  For purposes of Paragraph 10 it would not seem to matter
whether such a time offset was factored into the workers'
compensation award itself or was repaid by the player after
receiving an award that did not include such an offset.

        The Clubs have cited two other arbitration decisions
that preceded <u>Freeman</u>, both also decided by Arbitrator Kagel.
<u>Bennett</u> was a case decided under the special procedure
applicable to the Miami Dolphins who elected not to be covered
by the workers' compensation laws of Florida.  As Arbitrator
Kagel later stressed in <u>Donald Smith</u>, the ruling in <u>Bennett</u> was
that a Florida dollar-for-dollar offset statute applicable only
to professional athletes did not apply retroactively.  <u>Harris</u>
was decided on the basis of an individualized insurance
provision included in the player's contract which specifically
provided for a dollar-for-dollar offset.

        <u>Donald Smith</u> can be viewed as implicitly acknowledging
that a state law can legitimately provide for a different offset
than Paragraph 10 in determining the amount of workers'

compensation to be awarded under state law to a player who has
also received contractual benefits, such as salary continuance
and/or injury protection, when it states that Jarvis not Freeman
was the appropriate precedent to consider.  Donald Smith, like
Bennett, was decided under the special procedure applicable to
the Dolphins, which looks to Florida state law to determine the
"equivalent benefits" to be provided under Article LIV, Section
1.  Jarvis was a Florida court decision which held that,
although Florida law provided for a dollar-for-dollar offset in
the case of professional athletes, Florida law also would
enforce a contract to provide greater benefits than otherwise
mandated by law.  The court in Jarvis then read Paragraph 10 of
the NFL Player Contract as only providing for a time offset, and
determined that was controlling under Florida law.  As I read
Jarvis, it applies state law, which in this instance looks to
the parties' agreement to see if they have agreed to greater
benefits than those provided by statute.  There is no mention of
federal preemption in Jarvis.  The only citation is to an
earlier Florida workers' compensation decision.  Moreover, in
Jarvis the Florida court interpreted Paragraph 10 on its own,
without any reference to how that provision had been interpreted
in arbitration proceedings under the CBA.[3]

         Texas Workers' Comp held that the CBA does not define
what workers' compensation benefits a player is entitled to

---

[3] In that case, of course, the Florida court's interpretation
coincided with the prior interpretation by Arbitrator Kagel in
Freeman.  Other courts in states such as Ohio and Pennsylvania
have interpreted Paragraph 10 as providing for a dollar-for-
dollar offset, contrary to the holding in Freeman.

receive under state law in a case where state workers'
compensation coverage applies.  That is a matter to be
determined under state law.  Texas Workers' Comp directed the
Texas Clubs not to require players to make an election between
contractual benefits guaranteed them under the CBA and workers'
compensation benefits under the Texas statute, even though the
statute directed the Clubs to do so, because that could place a
player in the position of waiving guaranteed contractual
benefits in order to receive workers' compensation benefits,
when the CBA clearly provides he is entitled to both.  The Texas
statute required an election be made only when the contractual
benefits were greater than the statutory benefits, and that part
of the state law was deemed to be preempted.

        Texas Workers' Comp involved an election imposed on
the players by the Clubs -- albeit in conformity with state law
-- not an offset.  That decision also recognized that the
arbitrator did not have the authority to determine what the
consequences of the decision would be in a state workers'
compensation proceeding.  That does not mean there would be no
consequences, but it does mean they would have to be determined
in a different forum.

        It is in the context of these prior NFL arbitration
decisions and the terms of the CBA that the issues raised in
this case must be decided.

        Freeman clearly decided that Paragraph 10 provides for
a time offset only.  Under Article IX, Section 8 the decision in

Freeman is binding "upon the player(s) and Club(s) involved and
the parties to this Agreement", which includes the NFLPA, the
NFLMC and all of the Clubs.  As the NFLPA contends, the CBA
contemplates a uniform "law of the shop".  Freeman's
interpretation of Paragraph 10 is the precedent in this shop.
Taking into account that the parties have twice renewed the
terms of Paragraph 10 without change since Freeman was decided,
Freeman is the law of the shop and is binding as such on all of
the Clubs, including those involved in these grievances.

        There is a separate issue, however, as to whether
Paragraph 10 limits the right of a state to provide a greater
offset in determining what workers' compensation benefits a
player is entitled to under state law.  Article LIV, Section 6
makes clear that the parties agreed to disagree over the
legality of state offset provisions, and preserved their rights
to assert their respective positions on that matter.  In
particular they agreed that the parties' agreement to Article
LIV and to Paragraph 10 would not be the basis of any claim that
either party was precluded from making such an assertion.  As
the NFLPA has stated, the legality question involved two issues
-- the constitutionality of state offset laws that provided for
a greater offset for NFL players or professional athletes, and
whether Paragraph 10 preempted state statutes providing for more
than a time offset.

        The CBA does not guarantee any particular level or
amount of workers' compensation benefits, but rather provides
that injured players are entitled to receive workers'

compensation benefits -- whatever they might be -- in addition
to contractual benefits.  The legality of provisions of state
workers' compensation laws is a mater to be decided in the
appropriate state or federal forum, not arbitration under the
CBA.  The parties seemed to have recognized this over the past
12 years during which those issues have been litigated in such
tribunals.  While neither the NFLPA nor the NFLMC has been a
party to such proceedings, they both have participated in
raising the respective positions which they preserved the right
to do in Article LIV, Section 6.

        This arbitrator cannot grant the damages sought by the
NFLPA in this case without in effect granting the affected
players a greater award of workers' compensation benefits than
they were deemed entitled to by a state tribunal applying state
law, which is not within my authority to do.  Indeed, if the
NFLPA believed such damages were available through the grievance
and arbitration procedure of the CBA it is difficult to
understand why they waited 12 years during which other players
were similarly affected by state offset laws before seeking such
a remedy.

        The issue of preemption can arise in a state workers'
compensation proceeding in a variety of contexts.  A state law
may grant a dollar-for-dollar offset in state workers'
compensation proceedings, regardless of what the parties have
agreed to regarding offsets in the CBA.  A state law may grant a
dollar-for-dollar offset unless the CBA provides for a lesser
offset (i.e., a greater benefit), as in the Florida cases --

Jarvis and Donald Smith.  In the latter situation, it would seem
that preemption would only be an issue if the state tribunal
concluded that the CBA provides for a dollar-for-dollar offset,
which was not the case in the Florida cases.  A state law may
grant a dollar-for-dollar offset only where that is provided for
in the parties' contract -- which apparently is the law in North
Carolina.

        Where the application of state law turns on what is
provided in the CBA, there is an issue as to whether a state
tribunal is free to interpret a provision in the CBA -- in this
case Paragraph 10 -- on its own without regard to what
arbitrators have held or to the law of the shop as determined by
arbitrators.  In each of these instances, however, the
preemption issue is one to be decided by the courts.

        What can appropriately be done here, however, is to
issue a declaration that:  Freeman holds that Paragraph 10 of
the NFL Player Contract provides only for a time offset, and not
for a dollar-for-dollar offset; that this is a benefit or right
to the player, as well as the Club; and that this is the law of
the shop under this CBA and is binding on all the Clubs.  In
light of the position taken by some Clubs and/or their workers'
compensation insurers in state proceedings -- where they argue,
among other things, that Paragraph 10 provides for a dollar-for-
dollar offset and/or that Freeman is not the law of the shop or
binding on all the Clubs -- the NFLPA has a legitimate interest
in obtaining such a declaration because the parties have agreed
that the arbitrator, not a court or other tribunal, is to be the

final determiner of what a provision in the CBA means and what
constitutes the law of the shop.

## AWARD

1. DECLARATION: The decision in <u>Kyle Freeman v.
Oakland Raiders</u> (Kagel 1994) holds that Paragraph 10 of the NFL
Player Contract provides only for a time offset, and not for a
dollar-for-dollar offset; this is a benefit or right to the
player, as well as the Club; and this is the law of the shop
under this CBA and is binding on all the Clubs.

2. The NFLPA's request for other relief is denied for
the reasons stated in the above Findings.

_____
Shyam Das, Arbitrator

# EXHIBIT D

SHYAM DAS
ARBITRATOR

350 ARDMORE AVENUE
ARDMORE, PA 19003-1032

PHONE: 610-642-7662
FAX: 610-642-4011
dasarb@verizon.net

RECEIVED MAR 1 5 2007

March 13, 2007

Special Master Stephen Burbank
Harvard Law School
129 Areeda Hall
Cambridge, MA  02138

> Re: NFLPA/NFL Workers Compensation
> Offset Grievances

Dear Special Master Burbank:

As requested by the parties, I am sending you two copies of my decision in the above-referenced non-injury grievances. The two copies are enclosed in the brown envelope provided to me by the parties to be used for this purpose. It is my understanding that you are to unseal the envelope and provide copies of the Award to both the NFLPA and the NFL Management Council on July 1, 2007.

Very truly yours,

Shyam Das

SD/snr

Enclosure

cc: (without enclosure)
    Richard A. Berthelsen, Esq.
    Brook F. Gardiner, Esq.

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**IN THE MATTER OF THE**
**ARBITRATION BETWEEN**

| | |
|---|---|
| **THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION On Behalf of Steve Harvey, David Alexander and Marlon Kerner** | : : : : : |
| **and** | : |
| **THE NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL On Behalf of THE BUFFALO BILLS and THE NEW YORK JETS** | : : : : |

Civil Action No.

| | |
|---|---|
| **THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION On Behalf of Charles Smith, Dusty Renfro, Michael Swift and Jason Peter** | : : : : : |
| **and** | : : |
| **THE NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL On Behalf of THE CAROLINA PANTHERS** | : : : |

## [PROPOSED] ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD AND ENTRY OF JUDGMENT THEREON

Upon consideration of the Petition and/or other pleadings filed herein, and this Court's determination that it has jurisdiction over the matter, IT IS HEREBY ORDERED THAT the NFLPA's Petition to Confirm Arbitration Award and Entry of Judgment Thereon is GRANTED. The Award of Arbitrator Shyam Das, dated February 14, 2007, attached hereto as Exhibit A, is thus CONFIRMED.

SO ORDERED

DATE: _____                    _____
                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT A

SHYAM DAS, ARBITRATOR


In the Matter of Arbitration
Between

- - - - - - - - - - - - - - - -)
THE NATIONAL FOOTBALL LEAGUE      )
PLAYERS ASSOCIATION On Behalf     )
of Steve Harvey, David Alexander  )
and Marlon Kerner                 )
                                  )        ARBITRATOR'S OPINION
          and                     )            AND AWARD
                                  )
THE NATIONAL FOOTBALL LEAGUE      )
MANAGEMENT COUNCIL On Behalf      )
of THE BUFFALO BILLS and          )
THE NEW YORK JETS                 )
- - - - - - - - - - - - - - - - -)
                                          February 14, 2007

- - - - - - - - - - - - - - - - -)
THE NATIONAL FOOTBALL LEAGUE      )
PLAYERS ASSOCIATION On Behalf     )
of Charles Smith, Dusty Renfro,   )
Michael Swift and Jason Peter     )
                                  )
          and                     )
                                  )
THE NATIONAL FOOTBALL LEAGUE      )
MANAGEMENT COUNCIL On Behalf      )
THE CAROLINA PANTHERS             )
- - - - - - - - - - - - - - - - -)


## Appearances


For the NFL Players Association:

                Richard A. Berthelsen, Esq.
                Jeffrey L. Kessler, Esq.
                Adam J. Kaiser, Esq.
                Kristin A. Meister, Esq.

For the NFL Management Council:

        T. David Gardi, Esq.
        Daniel L. Nash, Esq.
        Brook F. Gardiner, Esq.
        Sylvia A. Krainin, Esq.

On May 17, 2005, the NFLPA filed a grievance stating
as follows:

> Pursuant to Article IX of the NFL 2002-2008
> Collective Bargaining Agreement ("CBA"), the
> NFLPA hereby files a non-injury grievance
> against the Buffalo Bills, New York Jets
> (collectively, the "New York Clubs") and the
> NFL Management Council.
>
> It is our understanding that following the
> New York State Workers' Compensation Board's
> decisions in *Steve Harvey*, WCB Case
> #89516968 (April 4, 2005) and *David F
> Alexander*, WCB Case #89814852 (April 4,
> 2005), the Buffalo Bills and the New York
> Jets are now claiming an offset against
> money paid to NFL Players Steve Harvey and
> David Alexander, respectively, for the
> entire amount of the workers' compensation
> benefits awarded to those players (*i.e.*, a
> "dollar for dollar" offset) in the above
> cited cases.
>
> The New York Clubs' conduct in seeking this
> dollar for dollar offset violates the
> express language of Paragraph 10 of the NFL
> Player Contract, which permits Clubs to take
> only a limited offset for the amount of
> workers' compensation benefits due and
> payable during the same period of time in
> which a player is deemed to be entitled to
> his salary under his contract (*i.e.*, a
> "time" offset). *See* CBA, App. C (NFL Player
> Contract) at ¶10. The New York Clubs'
> conduct likewise violates various NFL
> arbitration decisions holding that Paragraph
> 10 permits Clubs to take only a "time"
> offset, as opposed to a "dollar for dollar"
> offset. *See, e.g., Kyle Freeman v. Los
> Angeles Raiders* (Arbitrator Kagel, Dec. 28,
> 1994).

To the extent that New York state workers'
compensation caselaw provides for a greater
offset than is permitted by Paragraph 10,
and is therefore inconsistent with the terms
of the CBA as interpreted in arbitration,
such state law is preempted pursuant to
federal labor law. *See, e.g., Tampa Bay
Area NFL Football, Inc. v. Jarvis*, 668 So.
2d 217, 219 (Fla. Dist. Ct. App. 1996)
(applying the "time" offset provided for in
Paragraph 10 of the NFL Player Contract
instead of the "dollar for dollar" offset
provided for by Florida statutory law).

The NFLPA therefore seeks a ruling from the
Arbitrator that the New York Clubs must
cease and desist from any further attempts
to claim offsets for the entire amount of
workers' compensation benefits awarded to
NFL players (*i.e.,* a "dollar for dollar"
offset) instead of the limited "time" offset
permitted by Paragraph 10 of the NFL Player
Contract.  The NFLPA further seeks
declarations that (1) Paragraph 10 of the
NFL Player Contract provides for a "time"
offset and not a "dollar for dollar" offset;
(2) the "time" offset in Paragraph 10
applies regardless of whether New York state
law provides for a greater offset; and (3)
the New York Clubs may not make any further
attempts to claim a "dollar for dollar"
offset against workers' compensation awards.
Finally, the NFLPA seeks any additional
remedy that the Arbitrator shall deem just
and equitable.
                    (Underlining in original.)


On September 14, 2005, the NFLPA filed a separate
grievance against the Carolina Panthers, which has been

consolidated with the New York grievance for purposes of
arbitration.  The Panthers grievance states as follows:

> Pursuant to Article IX of the NFL 2002-2008
> Collective Bargaining Agreement ("CBA"), the
> NFLPA and players Charles Smith, Dusty
> Renfro, Michael Swift and Jason Peters [sic]
> hereby file a non-injury grievance against
> the Carolina Panthers pursuant to Article IX
> of the 1993 CBA, as amended.
>
> It has come to the NFLPA's attention that
> the Carolina Panthers are taking the
> position that they are entitled to claim a
> "dollar-for-dollar" offset against workers'
> compensation awards paid to their players.
> For example, the Panthers have taken the
> position within the past month that they are
> entitled to a "dollar-for-dollar" offset
> against any workers' compensation award paid
> to Jason Peters [sic].  The club and/or its
> insurer has also claimed to the North
> Carolina Court of Appeals that it is
> entitled to a dollar-for-dollar offset
> against the claims of Charles Smith, Dusty
> Renfro and Michael Swift....  The NFLPA has
> challenged a similar position taken by the
> Buffalo Bills and New York Jets in a
> grievance previously filed on May 17, 2005,
> and believes that this case can be
> consolidated with the New York case for
> purposes of final disposition under Article
> IX.
>
> In this grievance, the NFLPA requests the
> same relief from the Panthers that it is
> currently seeking from the Bills, Jets, and
> NFL Management Council in the New York
> case....

On September 14, 2005, the NFLPA also filed an amended
grievance to include NFL player Marlon Kerner as an additional
grievant in the May 17, 2005, New York grievance, on the basis
that:  "the Bills have claimed a 'dollar-for-dollar' offset
against the entire amount of the workers compensation benefits
awarded to Mr. Kerner, in violation of Paragraph 10 of the NFL
Player contract."

The consolidated grievances were heard in arbitration
on January 10, 2006.  The parties filed pre-hearing briefs.

*       *       *

Players who are injured and unable to play may be
entitled to a number of benefits under the Collective Bargaining
Agreement (CBA), including salary continuance, as provided in
Paragraph 9 of the NFL Player Contract, and injury protection
benefit, as provided in Article XII of the CBA.

Since 1977, Paragraph 10 of the NFL Player Contract,
which is an integral part of the CBA, has provided:

> 10.  WORKERS' COMPENSATION.  Any
> compensation paid to Player under this
> contract or under any collective bargaining
> agreement in existence during the term of
> this contract for a period during which he
> is entitled to workers' compensation
> benefits by reason of temporary total,
> permanent total, temporary partial, or
> permanent partial disability will be deemed
> an advance payment of workers' compensation

benefits due Player, and Club will be
entitled to be reimbursed the amount of such
payment out of any award of workers'
compensation.

One of the issues presented in <u>Freeman v. Los Angeles
Raiders</u> (Kagel 1994) -- a case cited by the NFLPA in the present
grievances -- was the extent to which the Raiders were entitled
to a workers' compensation offset against injury protection
payments that Kyle Freeman was found to be eligible to receive
in that decision.  The Raiders contended they were entitled to a
complete "dollar-for-dollar" offset, regardless of the period
for which the workers' compensation payments were received.
Freeman argued the Club was only entitled to a limited "time"
offset.  In addressing this issue, Arbitrator Kagel stated:

> In view of the decision to award Freeman the
> monies due him under the Injury Protection
> provision of the Agreement, the Club
> contends that it is entitled to an offset
> for Workers' Compensation monies which have
> been and may be received by Freeman.
>
> Freeman contends that the offset granted
> under paragraph 10 should be limited
> strictly to the amount of Workers'
> Compensation benefits due and payable to him
> during the same period in which he was
> deemed entitled to his salary and/or his
> Injury Protection benefit.
>
> Paragraph 10 is designed to avoid "double
> dipping" by a Player in a case where the
> Player is receiving a salary or injury
> protection compensation and is also
> receiving Workers' Compensation by providing
> that the Club can offset Workers'

Compensation payments against such salary or
injury protection payments.

The "period" during which such offsets can
be made by the Club is the period of salary
payments or the period related to the injury
protection period, in Freeman's case the
1993 regular season.

The decision in <u>Freeman</u> on this issue stated:   "The Workmen's
Compensation for Freeman shall be an offset on a time basis for
the 1993 regular season...."

Article LIV (Workers' Compensation) of the CBA
provides, in relevant part:

*Section 1*. Benefits:  In any state where
workers' compensation coverage is not
compulsory, a Club will either voluntarily
obtain coverage under the compensation laws
of that state or otherwise guarantee
equivalent benefits to its players.  In the
event that a player qualifies for benefits
under this section, such benefits will be
equivalent to those benefits paid under the
compensation law of the state in which his
Club is located.

*               *               *

*Section 3*. Arbitration:  In any state where
a Club (e.g., Miami Dolphins/Florida) has
legally elected not to be covered by the
workers' compensation laws of that state,
the equivalent benefit, if any, to which a
player may be entitled under this Article
will be determined under the grievance
procedure of Article IX (Non-Injury
Grievance).

*       *       *

> *Section 6.* Preservation of Rights:  The
> NFLPA and the Clubs preserve their prior
> positions with regard to the legality of
> workers' compensation offset provisions
> under state law, and nothing in this Article
> shall prevent any player from claiming that
> an offset provision is not legally binding
> upon him or prevent any Club from asserting
> that an offset provision is legally binding
> upon a player.  In addition, neither party
> nor members of the NFLPA's bargaining unit
> will claim that the other party's agreement
> to this Article or the revised NFL Player
> Contract appended hereto affects the rights
> set forth above.

## NFLPA POSITION

The NFLPA asserts that the Clubs are not entitled to a
dollar-for-dollar offset under the plain terms of the
arbitration decisions interpreting Paragraph 10 of the NFL
Player Contract.  In addition to Freeman, the NFLPA cites two
earlier decisions:  Wandler v. Minnesota Vikings (Volz 1990) and
Green v. Washington Redskins (Stark 1992).  Each of these cases
found the purpose of Paragraph 10 was to avoid "double dipping"
during the period in which a player is receiving compensation
under his contract or the CBA by permitting a time offset only.
The same ruling was thereafter applied in Donald Smith NFL Arb.
(Malka 1996), *aff'd* Donald Smith NFL Arb. Appeal (Kagel 1997).
No arbitrator has since disagreed.

The NFLPA contends that <u>Freeman</u> and the other relevant
arbitration decisions have become part of the CBA and are
binding on all Clubs. Article II, Section 1 makes it clear that
there is a uniformity rule. All players have to be treated
alike, and all Clubs have to be treated the same. Article IX,
Section 8 specifically provides:

> The decision of the arbitrator will
> constitute full, final and complete
> disposition of the grievance, and will be
> binding upon the player(s) and Club(s)
> involved <u>and the parties to this</u>
> <u>Agreement</u>....
>                     (Emphasis added.)

All Clubs are parties to the CBA. The preclusive effect of such
arbitration is also required by basic principles of federal
labor law. Here, not only has Paragraph 10 never been annulled,
it was twice ratified and reaffirmed by the parties when the
1993 CBA was extended after the <u>Freeman</u> decision without any
change to Paragraph 10. <u>Freeman</u> is the law of the shop, fully
binding on each NFL Club, and state and federal courts and
administrative bodies are bound to follow it as such. Moreover,
the issue of whether the holding in <u>Freeman</u> is the law of the
shop and binding on all of the parties to the CBA is a decision
for the arbitrator, not for the courts.

The NFLPA insists that <u>Freeman</u> is indistinguishable
from the present consolidated grievances. Clearly, Arbitrator
Kagel held that the time offset in Paragraph 10 governed all
compensation payable to a player under any provision of the CBA

or NFL Player Contract.  Indeed, that result is required by the
plain language of Paragraph 10.  It makes no difference that in
the present consolidated case the Clubs reduced the workers'
compensation award, not the injury benefit, because the CBA
provides that injured employees are entitled to both contractual
injury benefits and workers' compensation.  See NFLPA v. Dallas
Cowboys and Houston Texans (Das 2005), hereinafter referred to
as Texas Workers' Comp.

     The NFLPA maintains that arbitration decisions
interpreting Paragraph 10, like Freeman, preempt inconsistent
state laws.[1]  In particular, Texas Workers' Comp establishes that
where a state workers' compensation law conflicts with a
provision of the CBA, the CBA must control.  The NFL also cites
Tampa Bay Area NFL Football, Inc. v. Jarvis, 668 So. 2d 217
(Fla. Dist. Ct. App. 1996), which it states held that a dollar-
for-dollar workers' compensation offset provision in Florida law
was preempted by the limited time offset provision in Paragraph
10 of the NFL Player Contract.  Moreover, as in Texas Workers'
Comp, it is proper and appropriate for this arbitrator to decide
the preemption issue.

     The NFLPA asserts that the "Preservation of Rights"
provision in Article LIV, Section 6 of the CBA merely preserves
the parties' prior positions concerning the constitutionality
and preemption of state offset laws.  This is clear from the

_____

[1] The NFLPA relies on the *Machinists* preemption doctrine.  See
Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v.
Wis. Employment Relations Comm'n, 427 U.S. 132 (1976).

text and bargaining history of this section.  Nothing in this
section makes state offset laws part of the CBA, or vests state
tribunals or legislatures with the right to interpret or modify
the limited time offset provided for in Paragraph 10 of the NFL
Player Contract.  That provision, like the rest of the CBA,
remains subject to the exclusive jurisdiction of the parties'
arbitrators, who have conclusively decided what its meaning is.
Only they can decide what Paragraph 10 means.  Certainly, the
parties did not agree to delegate to the 23 states having NFL
Clubs the contractual "right" to interpret Paragraph 10, with
the end product being a patchwork of disparate decisions that
treat players unequally under a uniform CBA.

        The NFLPA requests the following remedy in this case:
(1) a damages award for any grieving player whose workers'
compensation benefits were reduced as a result of a Club
obtaining a greater offset than the time offset permitted by
Paragraph 10 of the NFL Player Contract; (2) a declaration that
Freeman establishes that Paragraph 10 is a time offset only, and
that it is a benefit or right to the player, as well as the Club
-- in that it defines the scope of the injury benefits provided
for in other provisions of the CBA -- and that Freeman is the
law of the shop, binding on all Clubs for salary continuance and
injury protection; and (3) a declaration that to the extent any
state statute purports to create a greater offset and,
therefore, diminishes a contractual benefit it is preempted.
The NFLPA stresses that it is not asking the arbitrator to order
state authorities to do anything, and it is not seeking an order

preventing or limiting the Clubs from making any arguments they
want in state proceedings.

        The NFLPA also contends that the Clubs' argument that
these grievances are untimely insofar as they seek monetary
damages is without merit.  The source of the injury to the
affected players was not the Club's arguing for a greater offset
than that provided in Paragraph 10, but the granting of an award
by the state tribunal which permitted such an offset and,
thereby, reduced the player's contractual injury benefit.  In
the case of all players, except Peter and Kerner, the grievance
was filed within 45 days of such an award, and, therefore, was
timely under Article IX, Section 2.  In Peter's case, there are
no damages yet, as the parties in that workers' compensation
proceeding have put the case on hold.  In Kerner's case, the
NFLPA -- which is not a party in any of the state proceedings --
did not know of the decision within 45 days of the award, but
filed an amended grievance to include Kerner -- a former player
who could not file a grievance on his own -- in the New York
grievance within 45 days of when the NFLPA did learn of the
award.

## CLUBS POSITION

        Initially, the Clubs argue that this arbitrator lacks
jurisdiction to resolve these grievances because they involve a
dispute over how state law should be interpreted and applied in
purely state law proceedings.  As recognized in Texas Workers'
Comp, state law, not the CBA, determines what benefits a player

who files a claim for workers' compensation benefits under state law is entitled to receive.  Any dispute over how such a claim is to be calculated, including the amount of any appropriate offset, always has been presented to, and resolved by, the respective state authorities.

In any event, the Clubs contend, the grievances are meritless because the CBA does not guarantee players any minimum level of workers' compensation benefits, but instead leaves the players' entitlement to such benefits for determination solely by state authorities in accordance with state law.

Paragraph 10 of the NFL Players Contract gives Clubs the contractual right to be reimbursed for money paid to players that the parties deem to be an "advance payment" of workers' compensation.  Paragraph 10 confers no affirmative rights upon NFL players that could be subject to violation.  Past arbitration decisions have not created any player rights to a minimum level of workers' compensation benefits under state law. The holding in Freeman may be asserted as authority in a subsequent NFL arbitration in which a Club seeks to reduce a CBA benefit by the amount of a state workers' compensation award, but it cannot be extended to preclude Clubs from arguing how a claim for workers' compensation should be determined by state authorities under state law.  Donald Smith followed the Florida court's decision in Jarvis in interpreting Paragraph 10 to provide a time offset under Florida law.  State decisions in Ohio, Louisiana and Pennsylvania likewise considered Paragraph 10 in determining that laws in those states provided Clubs with

a full dollar-for-dollar offset for advance compensation paid to
players for their injuries.

        The Clubs insist this is not a case of *Machinists*
preemption.  A state's determination as to how a particular
workers' compensation award should be calculated under state law
does not in any way deprive a player of any collectively
bargained benefit.  The NFLPA's reliance on Freeman and the law
of the shop principles is inapposite.  The question is not
whether Freeman should be followed in a subsequent arbitration
involving substantially identical claims under the CBA, or even
whether that decision has become part of the CBA and may not be
relitigated.  The grievances at issue here do not concern a
claim, as in Freeman, for injury protection benefits under the
CBA.

        Neither Freeman nor any of the other arbitration
decisions cited by the NFLPA holds that Paragraph 10 only
permits a limited time offset and precludes a dollar-for-dollar
offset to workers' compensation.  Indeed, Arbitrator Kagel
himself issued two decisions prior to the 1993 CBA granting a
Club a dollar-for-dollar offset.  See Harris v. Los Angeles Rams
(Kagel 1989) and Miami Dolphins v. Bennett, et al. (Kagel 1990).

        The Clubs stress that since Freeman was decided in
1994, Clubs and players -- with the assistance of the NFLPA --
have been arguing in state proceedings over whether Freeman's
analysis should be adopted in determining the offset to be
provided under state law on the particular facts in issue.  This

shows that preemption does not apply, and that the practice
established under the CBA is that these issues are to be
resolved at the respective state level.

Indeed, the Clubs argue, the Preservation of Rights
provision in Article LIV, Section 6 of the CBA protects the
Clubs' right to make offset arguments to state authorities.
Ever since this provision was included in the CBA in 1993, both
parties have routinely argued to state workers' compensation
authorities regarding the legality of workers' compensation
offset provisions under state law, as Section 6 expressly
authorizes.

The Clubs assert that federal court decisions make
clear that a party to a CBA cannot obtain declaratory relief
precluding the other side from filing grievances or advancing
arguments that it believes already have been decided in
arbitration.  See, e.g., AG Communications Systems Corp. v.
Int'l Brotherhood of Electrical Workers, Local 21, 2005 WL731026
(N.D. Ill.).  Here the NFLPA seeks to bar the Clubs from ever
arguing about the offset issue not only in subsequent
arbitration, but even in a forum outside of the CBA under state
law.

The Clubs contend that there is no obligation that a
state apply state law in a manner consistent with Arbitrator
Kagel's decision in Freeman.  State authorities are not bound by
Freeman in how they interpret Paragraph 10 in the context of
applying state workers' compensation statutes.  An arbitrator

cannot tell states how they should interpret and apply their own
state statutes.

Finally, the Clubs maintain that to the extent the
NFLPA is seeking damages for the named players in these
grievances, the grievances are untimely.  The Clubs assert that
the conduct being challenged here is the argument the various
Clubs have made at the state level about the application of
state workers' compensation offset provisions.  The Clubs argue
that in each instance the NFLPA was well aware of that far more
than 45 days prior to the filing of the grievance.

### FINDINGS

In Freeman, the player had received an award of
workers' compensation benefits before he was found to be
entitled to injury protection benefits under the CBA.  After
concluding that he was entitled to injury protection, Arbitrator
Kagel granted the Club a time offset under Paragraph 10 of the
NFL Player Contract.[2]  In Freeman, the parties disagreed on
whether Paragraph 10 provided only for a time offset or for a
dollar-for-dollar offset.  Freeman squarely held that Paragraph
10 only provides for a time offset, and not for a dollar-for-
dollar offset.  While Freeman involved injury protection, not
salary continuance, neither the parties, nor Arbitrator Kagel

---

[2] Freeman is consistent with the two prior decisions, Wandler and
Green, in which arbitrators granted a club a time offset,
although it does not appear that the issue of a time offset
versus a dollar-for-dollar offset was raised in either case.

appeared to see any distinction between those contractual
benefits for purposes of the offset allowed by Paragraph 10.
That is perfectly understandable given the language of Paragraph
10.

Under the holding in Freeman, a Club which has paid
salary continuance and/or injury protection to a player who
subsequently receives an award of workers' compensation would be
entitled to be reimbursed on a time offset basis under Paragraph
10.  For purposes of Paragraph 10 it would not seem to matter
whether such a time offset was factored into the workers'
compensation award itself or was repaid by the player after
receiving an award that did not include such an offset.

The Clubs have cited two other arbitration decisions
that preceded Freeman, both also decided by Arbitrator Kagel.
Bennett was a case decided under the special procedure
applicable to the Miami Dolphins who elected not to be covered
by the workers' compensation laws of Florida.  As Arbitrator
Kagel later stressed in Donald Smith, the ruling in Bennett was
that a Florida dollar-for-dollar offset statute applicable only
to professional athletes did not apply retroactively.  Harris
was decided on the basis of an individualized insurance
provision included in the player's contract which specifically
provided for a dollar-for-dollar offset.

Donald Smith can be viewed as implicitly acknowledging
that a state law can legitimately provide for a different offset
than Paragraph 10 in determining the amount of workers'

compensation to be awarded under state law to a player who has
also received contractual benefits, such as salary continuance
and/or injury protection, when it states that Jarvis not Freeman
was the appropriate precedent to consider. Donald Smith, like
Bennett, was decided under the special procedure applicable to
the Dolphins, which looks to Florida state law to determine the
"equivalent benefits" to be provided under Article LIV, Section
1. Jarvis was a Florida court decision which held that,
although Florida law provided for a dollar-for-dollar offset in
the case of professional athletes, Florida law also would
enforce a contract to provide greater benefits than otherwise
mandated by law. The court in Jarvis then read Paragraph 10 of
the NFL Player Contract as only providing for a time offset, and
determined that was controlling under Florida law. As I read
Jarvis, it applies state law, which in this instance looks to
the parties' agreement to see if they have agreed to greater
benefits than those provided by statute. There is no mention of
federal preemption in Jarvis. The only citation is to an
earlier Florida workers' compensation decision. Moreover, in
Jarvis the Florida court interpreted Paragraph 10 on its own,
without any reference to how that provision had been interpreted
in arbitration proceedings under the CBA.[3]

     Texas Workers' Comp held that the CBA does not define
what workers' compensation benefits a player is entitled to

---

[3] In that case, of course, the Florida court's interpretation
coincided with the prior interpretation by Arbitrator Kagel in
Freeman. Other courts in states such as Ohio and Pennsylvania
have interpreted Paragraph 10 as providing for a dollar-for-
dollar offset, contrary to the holding in Freeman.

receive under state law in a case where state workers'
compensation coverage applies.  That is a matter to be
determined under state law.  <u>Texas Workers' Comp</u> directed the
Texas Clubs not to require players to make an election between
contractual benefits guaranteed them under the CBA and workers'
compensation benefits under the Texas statute, even though the
statute directed the Clubs to do so, because that could place a
player in the position of waiving guaranteed contractual
benefits in order to receive workers' compensation benefits,
when the CBA clearly provides he is entitled to both.  The Texas
statute required an election be made only when the contractual
benefits were greater than the statutory benefits, and that part
of the state law was deemed to be preempted.

        <u>Texas Workers' Comp</u> involved an election imposed on
the players by the Clubs -- albeit in conformity with state law
-- not an offset.  That decision also recognized that the
arbitrator did not have the authority to determine what the
consequences of the decision would be in a state workers'
compensation proceeding.  That does not mean there would be no
consequences, but it does mean they would have to be determined
in a different forum.

        It is in the context of these prior NFL arbitration
decisions and the terms of the CBA that the issues raised in
this case must be decided.

        <u>Freeman</u> clearly decided that Paragraph 10 provides for
a time offset only.  Under Article IX, Section 8 the decision in

Freeman is binding "upon the player(s) and Club(s) involved and
the parties to this Agreement", which includes the NFLPA, the
NFLMC and all of the Clubs.  As the NFLPA contends, the CBA
contemplates a uniform "law of the shop".  Freeman's
interpretation of Paragraph 10 is the precedent in this shop.
Taking into account that the parties have twice renewed the
terms of Paragraph 10 without change since Freeman was decided,
Freeman is the law of the shop and is binding as such on all of
the Clubs, including those involved in these grievances.

          There is a separate issue, however, as to whether
Paragraph 10 limits the right of a state to provide a greater
offset in determining what workers' compensation benefits a
player is entitled to under state law.  Article LIV, Section 6
makes clear that the parties agreed to disagree over the
legality of state offset provisions, and preserved their rights
to assert their respective positions on that matter.  In
particular they agreed that the parties' agreement to Article
LIV and to Paragraph 10 would not be the basis of any claim that
either party was precluded from making such an assertion.  As
the NFLPA has stated, the legality question involved two issues
-- the constitutionality of state offset laws that provided for
a greater offset for NFL players or professional athletes, and
whether Paragraph 10 preempted state statutes providing for more
than a time offset.

          The CBA does not guarantee any particular level or
amount of workers' compensation benefits, but rather provides
that injured players are entitled to receive workers'

compensation benefits -- whatever they might be -- in addition
to contractual benefits.  The legality of provisions of state
workers' compensation laws is a mater to be decided in the
appropriate state or federal forum, not arbitration under the
CBA.  The parties seemed to have recognized this over the past
12 years during which those issues have been litigated in such
tribunals.  While neither the NFLPA nor the NFLMC has been a
party to such proceedings, they both have participated in
raising the respective positions which they preserved the right
to do in Article LIV, Section 6.

        This arbitrator cannot grant the damages sought by the
NFLPA in this case without in effect granting the affected
players a greater award of workers' compensation benefits than
they were deemed entitled to by a state tribunal applying state
law, which is not within my authority to do.  Indeed, if the
NFLPA believed such damages were available through the grievance
and arbitration procedure of the CBA it is difficult to
understand why they waited 12 years during which other players
were similarly affected by state offset laws before seeking such
a remedy.

        The issue of preemption can arise in a state workers'
compensation proceeding in a variety of contexts.  A state law
may grant a dollar-for-dollar offset in state workers'
compensation proceedings, regardless of what the parties have
agreed to regarding offsets in the CBA.  A state law may grant a
dollar-for-dollar offset unless the CBA provides for a lesser
offset (i.e., a greater benefit), as in the Florida cases --

Jarvis and Donald Smith.  In the latter situation, it would seem
that preemption would only be an issue if the state tribunal
concluded that the CBA provides for a dollar-for-dollar offset,
which was not the case in the Florida cases.  A state law may
grant a dollar-for-dollar offset only where that is provided for
in the parties' contract -- which apparently is the law in North
Carolina.

        Where the application of state law turns on what is
provided in the CBA, there is an issue as to whether a state
tribunal is free to interpret a provision in the CBA -- in this
case Paragraph 10 -- on its own without regard to what
arbitrators have held or to the law of the shop as determined by
arbitrators.  In each of these instances, however, the
preemption issue is one to be decided by the courts.

        What can appropriately be done here, however, is to
issue a declaration that:  Freeman holds that Paragraph 10 of
the NFL Player Contract provides only for a time offset, and not
for a dollar-for-dollar offset; that this is a benefit or right
to the player, as well as the Club; and that this is the law of
the shop under this CBA and is binding on all the Clubs.  In
light of the position taken by some Clubs and/or their workers'
compensation insurers in state proceedings -- where they argue,
among other things, that Paragraph 10 provides for a dollar-for-
dollar offset and/or that Freeman is not the law of the shop or
binding on all the Clubs -- the NFLPA has a legitimate interest
in obtaining such a declaration because the parties have agreed
that the arbitrator, not a court or other tribunal, is to be the

final determiner of what a provision in the CBA means and what
constitutes the law of the shop.

### AWARD

     1.  DECLARATION:  The decision in <u>Kyle Freeman v.</u>
<u>Oakland Raiders</u> (Kagel 1994) holds that Paragraph 10 of the NFL
Player Contract provides only for a time offset, and not for a
dollar–for–dollar offset; this is a benefit or right to the
player, as well as the Club; and this is the law of the shop
under this CBA and is binding on all the Clubs.

     2.  The NFLPA's request for other relief is denied for
the reasons stated in the above Findings.

Shyam Das, Arbitrator