## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE
ARBITRATION BETWEEN

\-------------------------------------------------------------

THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION On Behalf of
Steve Harvey, David Alexander and Marlon
Kerner

and

THE NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL On Behalf of
THE BUFFALO BILLS and THE NEW
YORK JETS

\-------------------------------------------------------------

\-------------------------------------------------------------

THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION On Behalf of
Charles Smith, Dusty Renfro, Michael Swift
and Jason Peter

and

THE NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL On Behalf of
THE CAROLINA PANTHERS

\-------------------------------------------------------------

:
:
:          Civil Action No. 08-civ-3658 (PAC)
:
:
:
:          **SDNY ECF FILING**
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' OPPOSITION TO
PETITION TO CONFIRM AND MOTION TO DISMISS PETITION TO CONFIRM**

## TABLE OF CONTENTS

                                                                                    Page

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF FACTS ................................................................................2

    I.     The Underlying Arbitration ................................................................2

    II.    The Instant Action ................................................................................4

ARGUMENT ................................................................................................4

    I.     Standard of Review ................................................................................4

    II.    The Court Lacks Jurisdiction to Confirm the Award under the LMRA ..................5

    III.   The Petition Fails to State a Claim Under the LMRA ............................................9

CONCLUSION ................................................................................................11

# TABLE OF AUTHORITIES

**Cases:**                                                                    Page(s)

*Ackerman v. Local Union 363, Int'l Bhd. of Elec. Workers*, 423 F. Supp. 2d
    125 (S.D.N.Y. 2006) ....................................................................2

*Bethlehem Steel Corp. v. United Steelworkers of Am.*, Civ. No. JFM-90-3071,
    1991 WL 338553 (D. Md. Sept. 18, 1991) ..........................................6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ..........................2

*Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers
    Union Local 812*, 242 F.3d 52 (2d Cir. 2001) ......................................8

*Commer v. Am. Fed. of State, County & Mun. Employees*, 272 F. Supp. 2d 332
    (S.D.N.Y. 2003) ................................................................9, 10

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ..................................5

*Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484 (1st Cir. 1983) ......................5, 6

*Ernest Disabatino & Sons, Inc. v. Metro. Reg'l Council of Carpenters*, No.
    CIV. 04-187-SLR, 2005 WL 885165 (D.Del. Feb 28, 2005) ......................10

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ...............5

*Gary v. Roadway Express, Inc.*, 941 F. Supp. 94 (N.D. Ill. 1996) .....................10

*Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*,
    372 U.S. 517 (1963) ...........................................................9, 10

*Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir. 1992) .................5

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986) ..........................2

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ..............................4

*Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*,
    145 F.3d 85 (2d Cir. 1998) ........................................................9

*Local 1852 Waterfront Guard Ass'n of Port of Baltimore I.W.A. v. Amstar
    Corp.*, 363 F. Supp. 1026 (D. Md. 1973) ...........................................11

*Local 2414 of United Mine Workers of Am. v. Consolidation Coal Co.*, 682 F.
    Supp. 399 (S.D. Ill. 1998) .........................................................6

Page(s)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................5

*Maita v. Killeen*, 465 F. Supp. 471 (E.D. Pa. 1979) ......................................10

*Marchi v. Bd. of Coop. Educ. Serv. of Albany*, 173 F.3d 469 (2d Cir. 1999) ................5

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ......................5

*Montgomery Ward & Co. v. Warehouse, Mail Order, Office, Technical & Prof'l Employees Union*, 911 F. Supp. 1094 (N.D. Ill. 1995) ......................6, 7

*Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) ......................................4

*Preiser v. Newkirk*, 422 U.S. 395 (1975) ......................................7

*Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 Civ. 10088 (PKL), 2004 WL 1145830 (S.D.N.Y. May 21, 2004) ......................................5

*Serv. Employees Int'l. Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC*, 326 F. Supp.2d 550 (S.D.N.Y 2004) ......................................9

*Steris Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 489 F. Supp. 2d 501 (W.D. Pa. 2007) ......................................6

*Syracuse Supply Co. v. William A. English*, 1979 U.S. Dist. LEXIS 11410, No. 77-CV-230 & No. 78-CV-518 (N.D.N.Y. June 27, 1979) ......................................7

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. E.I. Dupont de Nemours & Co.*, No. 05-CV-533A(F), 2006 U.S. Dist. LEXIS 79384 (W.D.N.Y. July 26, 2006) ......................................8

*Yellow Freight Sys., Inc. v. Local Union 710, Int'l Bhd. Of Teamsters, AFL-CIO*, No. 93 C 7480, 1994 WL 665086 (N.D. Ill. Nov. 16, 1994) ......................................10

**Statutes:**

9 U.S.C. § 9 ......................................8

29 U.S.C. § 185(a) ......................................1, 9

Page(s)

**Rules:**

FED. R. CIV. P. 3 ..................................................................................................................8

**Treatises:**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1357 ..................................................................................................................2

Respondents National Football League Management Council ("NFLMC" or "Management Council"), Buffalo Bills, New York Jets, and Carolina Panthers, collectively "Respondents," hereby oppose Petitioner National Football League Players Association's ("NFLPA" or "Petitioner") amended petition ("Petition") to "confirm" an arbitration award rendered pursuant to the parties' collective bargaining agreement ("CBA"). Respondents further move to dismiss this action pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

As explained below, the Petition should be denied and this action should be dismissed on two independent grounds. First, Petitioner cannot satisfy the justiciability requirements of Article III of the United States Constitution, and its Petition should therefore be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). At its core, the NFLPA seeks to confirm an arbitration award in the absence of *any* dispute regarding the award or Respondents' compliance with its terms. Indeed, by agreement of the parties, the award itself will not become binding precedent until at least 2010, and, depending on the parties' future collective bargaining negotiations, it is entirely possible that the arbitration award may never become binding. Until the award becomes final and binding, no case or controversy exists as required to maintain a federal court action under Article III of the United States Constitution.

Moreover, the NFLPA does not state a claim for relief under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA" or "Section 301"). In particular, the NFLPA cannot demonstrate, as it must, that the arbitration award is "final and binding." The NFLPA also fails to identify any provision of the CBA breached by Respondents. To the contrary, the grievances underlying the arbitration award have been settled, and the decision

1

itself will not become binding precedent until at least 2010, if ever.  Accordingly, the Petition

should be dismissed for failure to state a claim upon which relief can be granted under Federal

Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS

### I.    The Underlying Arbitration

Respondent NFL Management Council is the sole and exclusive collective bargaining

representative of all 32 member clubs of the National Football League ("NFL").  *See* NFLPA

Petition at 2.  The NFLPA is the sole and exclusive bargaining representative of all NFL players.

*Id.*  Both parties and their members are bound by the NFL CBA.  *Id.* at 3.  The CBA contains

mandatory grievance and arbitration procedures.  *See id.*; *see also* Declaration of Stacey R.

Eisenstein ("Eisenstein Decl."), attached hereto, at Ex. 2.[1]

---

[1] The documents attached to the Declaration of Stacey R. Eisenstein may properly be considered in this motion to dismiss.  Portions of the NFL CBA are attached to and referenced in the Petition, and the NFLPA relies upon the CBA in making its application to the Court.  *See* Petition at 3; Declaration of Adam J. Kaiser in support of NFLPA Petition ("Kaiser Decl.") at Exs. A, B.  The parties' agreement to regarding the award, discussed *infra*, is also incorporated by reference in the Petition.  *See* Petition at 5 ("By agreement of the parties reached in summer 2006 in connection with their new CBA, however, the final award would not be delivered to any of the parties until July 2007, after the new CBA would be in effect."); *see also* Kaiser Decl. at Ex. D.  Therefore, the Court's consideration of these documents does not convert Respondent's motion to dismiss into one for summary judgment.  *See Ackerman v. Local Union 363, Int'l Bhd. of Elec. Workers*, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006) (proper to consider terms of a collective bargaining agreement where plaintiff "affirmatively pleads the existence and terms" of the agreement); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted) (explaining that a court may consider documents incorporated by reference or attached to the complaint without converting a motion to dismiss into a motion for summary judgment); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357.  Moreover, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court may refer to evidence outside the pleadings.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

On May 17, 2005, pursuant to the CBA's mandatory dispute resolution procedures, the NFLPA filed a grievance against the New York Jets and the Buffalo Bills, two NFL member clubs, on behalf certain NFL players (the "Grievants") who claimed they were denied workers' compensation benefits under the CBA. *See* Kaiser Decl. at ¶ 3. On September 14, 2005, the NFLPA filed a similar grievance on behalf of other NFL players against the Carolina Panthers, which was consolidated with the grievance filed against the Jets and the Bills ("Consolidated Grievances"). *Id.* at ¶¶ 5, 7. In the Consolidated Grievances, the NFLPA alleged that the Grievants had been denied certain workers' compensation benefits under the CBA as a result of the manner in which the Jets, Bills, and Panthers had claimed an "offset" for certain injury protection benefits already paid to the Grievants. *Id.* at Ex. C.

On January 10, 2006, in accordance with the mandatory procedures set forth in the CBA, the parties participated in an arbitration hearing in New York, New York before NFL Arbitrator Shyam Das. *See* Petition, at 5. On October 10, 2006, prior to the issuance of Arbitrator Das' opinion and award ("Award"), the parties agreed to settle the claims of all of the Grievants as part of an agreement to modify and extend the overall CBA. *See* Kaiser Decl. at ¶ 10; Eisenstein Decl. at Ex. 1. As part of that settlement, the Management Council and the NFLPA agreed that the decision in the underlying arbitration could not be used as precedent for future cases unless and until the CBA reached its "Final League Year." Eisenstein Decl. at Ex. 1. Thus, the agreement states that the forthcoming Award will "*not go into effect* until the beginning of the Final League Year, at which time . . . the opinion and award will constitute the full, final and complete disposition of the grievance and will be binding upon the Players and the Clubs . . . ."

*Id.* (emphasis supplied).  Under the terms of the current CBA, the Final League Year cannot occur before 2010.[2]

On February 14, 2007, the Arbitrator issued his Award in the Consolidated Grievances.

## II.    The Instant Action

More than one year later, on April 16, 2008, the NFLPA filed the instant Petition "pursuant to the Federal Arbitration Act."  *See* Original Petition, at 2.  Following the pre-motion conference before this Court, on June 17, 2008, the NFLPA amended its Petition to clarify that it was being brought "under and pursuant to" Section 301 of the LMRA.  In its Petition, the NFLPA asks that the Court "confirm" the Award and "enter a judgment declaring that Paragraph 10 of the NFL Player Contract provides only for a time offset, and not for a dollar-for-dollar offset."  *Id.* at 7.

## ARGUMENT

## I.    Standard of Review

The Second Circuit has recognized that the standard of review for motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) are "substantively identical."  *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir. 2003).  In considering a motion to dismiss under either provision, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party.  *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 285 (S.D.N.Y. 2005).  "The

---

[2] Under the parties' current CBA, "Final League Year" is defined as "the final [NFL] League Year of [the CBA] . . . . As of the date hereof, the Final League Year is the 2012 League Year."  *See* Eisenstein Decl. at Ex. 2.  The CBA further provides that either the NFLPA or the Management Council has the right to terminate the CBA prior to 2012.  *See* Eisenstein Decl. at Ex. 4.  In the event either party exercises that right, the Final League Year becomes 2010.  *See id.*

complaint, however, 'must include allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory.'" *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 Civ. 10088 (PKL), 2004 WL 1145830, *3 (S.D.N.Y. May 21, 2004) (citation omitted). The complaint should be dismissed if the plaintiff fails to allege the elements of its cause of action. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039-42 (2d Cir. 1992). Conclusions of law and vague, conclusory assertions need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771-72 (2d Cir. 1994).

## II.    The Court Lacks Jurisdiction to Confirm the Award under the LMRA

The Petition should be dismissed pursuant to Federal Rule 12(b)(1) because there is no justiciable case or controversy to sustain this Court's jurisdiction. It is well settled that Article III of the Constitution prohibits courts from exercising jurisdiction in the absence of an actual case or controversy. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "A hypothetical or abstract dispute does not present a case or controversy: The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." *Marchi v. Bd. of Coop. Educ. Serv. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (internal quotations omitted). The plaintiff bears the burden "to allege facts demonstrating that the case presents a justiciable controversy." *Id.*

In several cases, courts have rejected suits seeking confirmation of arbitration awards under the LMRA where, as here, the actions have failed to allege facts to demonstrate the existence of a case or controversy. *See, e.g., Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484 (1st

Cir. 1983); *Steris Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 489 F. Supp. 2d 501, 515 (W.D. Pa. 2007) (dismissing action for confirmation for lack of jurisdiction based on absence of dispute or controversy); *Montgomery Ward & Co. v. Warehouse, Mail Order, Office, Technical & Prof'l Employees Union*, 911 F. Supp. 1094, 1104 (N.D. Ill. 1995) (dismissing case for lack of federal jurisdiction because "at the present time, neither party to this lawsuit has taken any action inconsistent with the arbitral award giving rise to a concrete dispute"); *Local 2414 of United Mine Workers v. Consolidation Coal Co.*, 682 F. Supp. 399, 400 (S.D. Ill. 1998) ("to confirm these awards in the absence of any concrete dispute would merely serve to circumvent Congress' goal of eliminating the cost and complexity of litigation from labor disputes"); *Bethlehem Steel Corp. v. United Steelworkers of Am.*, Civ. No. JFM-90-3071, 1991 WL 338553, at *1 (D. Md. Sept. 18, 1991) (refusing to enter judgment enforcing arbitration award absent a "concrete dispute" between the parties).

These courts have recognized that, in order to satisfy the Constitutional case or controversy requirement, a party seeking to confirm or vacate an arbitration award pursuant to section 301 of the LMRA must show some action was taken inconsistent with the arbitrator's award. *See Derwin*, 719 F.2d at 491. In *Derwin*, for instance, the union brought an action under Section 301 seeking to confirm an arbitration award without alleging that the company had "repudiated or violated" the award in any manner. The court explained that the federal substantive law under Section 301 "subsumes the prudential values of Article III, which militate against ministerial confirmation of awards in the absence of a concrete dispute." *Derwin*, 719 F.2d at 492. The court therefore dismissed the complaint, finding it was "simply being asked to put its imprimatur upon an arbitral award in a vacuum." *Id.* at 491.

6

The facts here similarly warrant dismissal. All of the claims brought on the Grievants' behalf in the underlying arbitration proceeding have been settled by the parties. *See* Eisenstein Decl. at Ex. 1. The Management Council has not sought to vacate or otherwise challenge the Award. Neither the NFLPA's six-page Petition nor its accompanying four-page declaration identifies any dispute or failure to comply with the Award. Indeed, the NFLPA could not possibly assert that the Management Council has failed to comply with the Award given the parties' express agreement that it will not become binding precedent for any future grievances until at least 2010.[3] Rather, the Petition simply recites the facts surrounding the already-adjudicated and now-settled grievances, summarizes the arbitrator's Award, and asks for confirmation and "a judgment declaring that Paragraph 10 of the NFL Player Contract provides only for a time offset, and not for a dollar-for-dollar offset." NFLPA Petition at 6. Thus, it appears the NFLPA is concerned with a hypothetical grievance that may arise in the future. However, Article III of the Constitution prohibits courts from rendering such advisory opinions, and the NLFPA's petition should be dismissed for lack of jurisdiction. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975);[4] *Montgomery Ward & Co.*, 911 F. Supp. at 1104 (refusing to issue advisory opinion where plaintiff requested that court strike language in arbitration decision "in order to avoid some perceived threat relating to a presently nonexistent 'later grievance[ ].'").

---

[3] In fact, the Award may never become binding, depending on the outcome of the parties' collective bargaining negotiations. Specifically, in negotiating a new CBA, the parties may agree, as they did with the underlying claims here, to provisions regarding workers' compensation offset that would render the Award meaningless.

[4] Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a party may seek declaratory relief regarding a collective bargaining agreement under section 301 of the LMRA, "provided of course that the dispute presents a justiciable case or controversy within the meaning of Article III § 2 of the United States Constitution." *Syracuse Supply Co. v. William A. English*, 1979 U.S. Dist. LEXIS 11410, No. 77-CV-230 & No. 78-CV-518, at *3 n.2 (N.D.N.Y. June 27, 1979).

The NFLPA will likely argue that the Petition should be granted regardless of the absence of a concrete dispute because the instant action constitutes a routine summary confirmation proceeding. Thus, rather than initiating this action as a complaint under the LMRA, the NFLPA seeks to "borrow" the petition procedure set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, by styling the instant action as a "Petition to Confirm." *See* Amended Petition, at 1-2. The NFLPA asserts that "[b]ecause the LMRA does not set forth any specific procedures for confirmation of arbitration awards," this Court should "borrow the petition process outlined in Section 9 of the FAA . . . ." *Id.*

However, the instant action, which contains no allegations warranting enforcement of the Award at this time and pertains to a now-settled arbitration proceeding that is not even binding on the parties, is far from routine. Moreover, courts in the Second Circuit have recognized that it is improper to use the FAA's "summary" confirmation procedure in enforcement proceedings under Section 301 of the LMRA. *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. E.I. Dupont de Nemours & Co.*, No. 05-CV-533A(F), 2006 U.S. Dist. LEXIS 79384, at *5-6 (W.D.N.Y. July 26, 2006). Indeed, it is settled law in the Second Circuit that "in cases brought under Section 301 of the Labor Management Relations Act . . . the FAA does not apply." *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 53 (2d Cir. 2001). Use of the summary confirmation procedure in the FAA is particularly improper in the instant case to the extent the NFLPA does not merely seek confirmation, but also requests that the Court "enter a judgment declaring that Paragraph 10 of the NFL Player Contract provides only for a time offset, and not for a dollar-for-dollar offset." Petition at 7; *see also* FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."). Even if the NFLPA could "borrow" the

summary confirmation procedure provided for under the FAA, use of this procedure would not

eliminate the case or controversy requirement clearly applicable to all federal cases, including

actions for enforcement under the LMRA.

**III.    The Petition Fails to State a Claim Under the LMRA**

Even assuming the Court did have jurisdiction over the instant action, the Petition

nevertheless must be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim

upon which relief can be granted.   Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce as
> defined in this chapter, or between any such labor organizations, may be
> brought in any district court of the United States . . . .

29 U.S.C. § 185(a).

Although Courts have interpreted Section 301 as vesting "federal courts with

jurisdiction over petitions brought to confirm labor arbitration awards," *Local 802,*

*Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir.

1998), arbitration awards may not be confirmed unless they are "final and binding" under

the governing collective bargaining agreement. *See Gen. Drivers, Warehousemen &*

*Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 520 (1963) ("if it should be

decided after trial that the grievance award involved here is not final and binding under

the collective bargaining agreement, no action under § 301 to enforce it will lie"); *Serv.*

*Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC*, 326 F. Supp.

2d 550, 555 (S.D.N.Y 2004).

Moreover, "at a minimum," a party bringing an action under Section 301 must

"cite the provision of the contract which the defendant is alleged to have breached and

explain how defendant breached the contract." *See Commer v. Am. Fed. of State, County*

9

& *Mun. Employees*, 272 F. Supp. 2d 332, 338 (S.D.N.Y. 2003) (citing *Maita v. Killeen*,

465 F. Supp. 471, 473 (E.D. Pa. 1979)).  In the context of confirmation proceedings under

the LMRA, "[a]bsent a refusal to comply with an award . . . there is no breach of a labor

agreement, and therefore no jurisdiction under Section 301." *Yellow Freight Sys., Inc. v.*

*Local Union 710, Int'l Bhd. of Teamsters, AFL*-CIO, No. 93 C 7480, 1994 WL 665086 at

*2 (N.D. Ill. Nov. 16, 1994).

 The Petition fails to satisfy these prerequisites.  As explained above, the award is

not final and binding and, as such, may not be confirmed at this time. *See Gen. Drivers,*

*Warehousemen & Helpers, Local Union No. 89*, 372 U.S. at 520; *Gary v. Roadway*

*Express, Inc.*, 941 F. Supp. 94, 96-97 (N.D. Ill. 1996) (rejecting 301 enforcement claim

where the arbitration award had not yet gone into effect); *Ernest Disabatino & Sons, Inc.*

*v. Metro. Reg'l Council of Carpenters*, No. CIV. 04-187-SLR, 2005 WL 885165, at *3

(D.Del. Feb 28, 2005) (granting motion to dismiss action to vacate arbitration award

under LMRA where award was not final).  Additionally, there is no allegation that

Respondents have breached the terms of the CBA by "refusing to comply" with the

Award; indeed, that would be impossible because *all* of the Grievants' underlying claims

have been settled.  The only possible dispute relating to the Award concerns its potential

future use by the parties as precedent for future arbitration proceedings.  Even then, such

a dispute may never occur.  At the earliest, there could be no dispute until 2010.  In that

event, the proper recourse for Petitioner would be to commence a grievance and to allow

the Arbitrator to decide this issue.

 Accordingly, because Petitioner has not demonstrated any refusal to comply with

the Award or resulting violation of the CBA, its petition must be dismissed for failure to

state a claim upon which relief can be granted. *See Local 1852 Waterfront Guard Ass'n of Port of Baltimore I.W.A. v. Amstar Corp.*, 363 F. Supp. 1026, 1030-31 (D. Md. 1973) (granting motion to dismiss LMRA complaint based on failure to allege nonperformance with any term of the CBA).

**CONCLUSION**

For the foregoing reasons, the Management Council requests that this Court deny the NFLPA's Petition to Confirm and dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: July 7, 2008          Respectfully submitted,
        New York, New York

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  /s/  Daniel L. Nash
     Daniel L. Nash
     Stacey R. Eisenstein
     *Admitted Pro Hac Vice*
     1333 New Hampshire Avenue, N.W.
     Washington, D.C. 20036
     (202) 887-4000 (Telephone)
     (202) 887-4288  (Facsimile)
     dnash@akingump.com
     seisenstein@akingump.com

     Sean E. O'Donnell (SO-5005)
     590 Madison Avenue
     New York, New York 10022-2524
     (212) 872-1000 (Telephone)
     (212) 872-1002 (Facsimile)
     sodonnell@akingump.com

     *Attorneys for Respondents The National
     Football League Management Council,
     Buffalo Bills,New York Jets, and Carolina
     Panthers*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Opposition to Petition to

Confirm and Motion to Dismiss Petition to Confirm was served this 7th day of July, 2008 via the

ECF filing system (registered users) on the following:

> Jeffrey L. Kessler
> Adam J. Kaiser
> Michelle Lo
> DEWEY & LEBOEUF LLP
> 1301 Avenue of the Americas
> New York, New York 10019-6092

> _/s/_
> Stacey R. Eisenstein

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE
ARBITRATION BETWEEN

------------------------------------------------------------

| | |
|---|---|
| **THE NATIONAL FOOTBALL LEAGUE** : | |
| **PLAYERS ASSOCIATION On Behalf of** : | |
| **Steve Harvey, David Alexander and Marlon** : | Civil Action No. 08-civ-3658 (PAC) |
| **Kerner** : | |
| : | **SDNY ECF FILING** |
| **and** : | |
| : | |
| **THE NATIONAL FOOTBALL LEAGUE** : | |
| **MANAGEMENT COUNCIL On Behalf of** : | |
| **THE BUFFALO BILLS and THE NEW** : | |
| **YORK JETS** : | |

------------------------------------------------------------
------------------------------------------------------------

**THE NATIONAL FOOTBALL LEAGUE** :
**PLAYERS ASSOCIATION On Behalf of** :
**Charles Smith, Dusty Renfro, Michael Swift** :
**and Jason Peter** :
                           :

**and** :
                           :

**THE NATIONAL FOOTBALL LEAGUE** :
**MANAGEMENT COUNCIL On Behalf of** :
**THE CAROLINA PANTHERS** :

------------------------------------------------------------

### DECLARATION OF STACEY R. EISENSTEIN IN SUPPORT OF RESPONDENTS'
### OPPOSITION TO PETITION TO CONFIRM
### AND MOTION TO DISMISS PETITION TO CONFIRM

I, Stacey R. Eisenstein, declare and state as follows:

1.      I am a counsel at Akin Gump Strauss Hauer & Feld LLP, attorneys for

Respondents National Football League Management Council, Buffalo Bills, New York Jets, and

Carolina Panthers. I am admitted *pro hac vice* to practice in this Court. I submit this declaration

in support of Respondents' Opposition to Petition to Confirm and Motion to Dismiss Petition to

Confirm.

2.      Attached hereto as Exhibit 1 is a true and correct copy of an agreement dated October 10, 2006 between the NFLPA and the NFL Management Council.  This agreement was entered into pursuant to the parties' collective bargaining negotiations.  *See* Kaiser Decl. at ¶ 10. Though not included in Petitioners' submissions to the Court, Petitioners make reference to this agreement and rely on its terms to demonstrate the timeliness of its action.  *See* Petition at 5-6 n.3; Kaiser Decl. at ¶ 10, Ex. D.

3.      Attached hereto as Exhibit 2 is a true and correct copy of Article I ("Definitions") of the 2006-2012 NFL Collective Bargaining Agreement ("CBA").

4.      Attached hereto as Exhibit 3 is a true and correct copy of Article IX ("Non-Injury Grievance") of the CBA.

5.      Attached hereto as Exhibit 4 is a true and correct copy Article LVIII ("Duration Of Agreement") of the CBA.

6.      I declare under penalty of perjury that the foregoing is true and correct.  Executed this 7th day of July in Washington, DC.

_____/s/_____
Stacey R. Eisenstein

# EXHIBIT 1

# DEWEY BALLANTINE LLP

1301 AVENUE OF THE AMERICAS
NEW YORK 10019-6092
TEL 212 259-8000  FAX 212 259-6333

JEFFREY L. KESSLER
TEL 212 259-8050
jkessler@deweyballantine.com

October 10, 2006

**BY HAND**

Harold R. Henderson
Executive Vice President for
  Labor Relations/Chairman NFLMC
280 Park Avenue
New York, New York 10017

Re:     **Workers' Compensation**

Dear Harold:

This letter reflects our agreement with respect to the opinion and award in the consolidated pending grievance before Arbitrator Das in the matter captioned <u>Alexander v. New York Jets, et al.</u> ("<u>Alexander</u>").  If you concur that this letter accurately reflects our agreement, please sign the enclosed copy and return it to me.

Arbitrator Das shall finalize his opinion and award in <u>Alexander</u> within the next 30 days, and will thereafter transmit in a sealed envelope the opinion and award to the Special Master.  The Special Master shall hold the sealed envelope until July 1, 2007, at which time he will unseal the envelope and provide copies of the opinion and award in <u>Alexander</u> to both the NFLPA and NFLMC.

The NFMLC and the NFLPA agree that the underlying cases consolidated in <u>Alexander</u> shall be treated as "pending cases" under Article LIV of the CBA, as amended.  As for those cases consolidated in <u>Alexander</u> that have not as of the date of this letter been settled, such cases shall be settled in accordance with Article LIV of the CBA, as amended, without regard to the fact that the parties agree to delay issuance of the opinion and award in <u>Alexander</u>.

The opinion and award in <u>Alexander</u> will not go into effect until the beginning of the Final League Year, at which time, notwithstanding the provisions of art. LIV, sec. 5 of the CBA, as amended, the opinion and award will constitute the full, final and complete disposition of the grievance and will be

NEW YORK   WASHINGTON, D.C.   LOS ANGELES   EAST PALO ALTO   HOUSTON   AUSTIN
LONDON     WARSAW     FRANKFURT     MILAN     ROME     BEIJING

Harold R. Henderson
October 10, 2006
Page 2

binding upon the Players and Clubs and the parties to this Agreement as set forth in CBA art. IX, sec. 8, as amended.

In the event Arbitrator Das dies or for any other reason is incapable of serving as an arbitrator under the CBA on or after July 1, 2007, both parties waive their right to challenge the opinion and award in Alexander on the basis that Arbitrator Das is no longer able to serve as an arbitrator.

\*     \*     \*

This agreement will not be used for any purpose other than to interpret and to apply the specific terms of the SSA and the CBA to which they pertain. It may not be used to support or oppose an interpretation of any provisions of the SSA and CBA other than the interpretation expressly resolved by this letter. This agreement is being entered into without prejudice to any party's position on any issue other than those specifically resolved here.

Sincerely,

Jeffrey L. Kessler

Seen and Agreed:

On behalf of the NFLMC

Seen and Agreed:

On behalf of the NFLPA

cc:   Gene Upshaw
      Richard Berthelsen

# EXHIBIT 2



# NFL COLLECTIVE BARGAINING AGREEMENT

## 2006 - 2012



**NFL PLAYERS**
ASSOCIATION

4

# ARTICLE I
# DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

**Section 1. General Definitions:**

(a) "Agreement" means this Collective Bargaining Agreement.

(b) "Class Counsel" means the law firm of Weil, Gotshal & Manges, 767 Fifth Avenue, New York, New York 10153, the law firm of Dewey Ballantine, LLP, 1301 Avenue of the Americas, New York, New York 10019, and the law firm of Lindquist & Vennum, 4200 IDS Center, Minneapolis, Minnesota 55402.

(c) "Club" or "Team" or "Member," used interchangeably herein, means any entity that is a member of the NFL or operates a franchise in the NFL at any time during the term of this Agreement.

(d) "Club Affiliate" or "Team Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a Club or any owner of a Club.

(e) "Commissioner" means the Commissioner of the NFL.

(f) "Impartial Arbitrator" means the person authorized to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

(g) "League Year" means the period from March 1 of one year through and including the last day of February of the following year, or such other one year period to which the NFL and the NFLPA may agree.

(h) "NFL Player Contract" means the form of Player Contract utilized in the NFL.

(i) "NFL Rules" means the Constitution and Bylaws, rules, and regulations of the NFL and/or the Management Council.

(j) "Player Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a player

(k) "Salary" means any compensation of money, property, investments, loans, or anything else of value that a Club pays to, or is obligated to pay to, a player or Player Affiliate, or is paid to a third party at the request of and for the benefit of a player or Player Affiliate, during a League Year, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary; Salary Cap & Minimum Team Salary).

(l) "Settlement Agreement" means the Stipulation and Settlement Agreement, dated February 26, 1993, as amended.

(m) "Special Master" means the special master appointed and authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

5

**Section 2. Free Agency Definitions:**

(n) "Accrued Season" means any playing season for which a player received credit with respect to his qualifications for Unrestricted Free Agency or Restricted Free Agency, as described in Article XIX (Veteran Free Agency).

(o) "Compensatory Draft Selection" means an additional Draft choice awarded to a Club as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players).

(p) "Draft" or "College Draft" means the NFL's annual draft of Rookie football players as described in Article XVI (College Draft).

(q) "Draft Choice Compensation" means the right of any Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players), to receive draft pick(s) from any other Club.

(r) "Drafted Rookie" means a person who is selected in the current League Year's Draft or whose Draft rights are held, or continue to be held, consistent with this Agreement, by an NFL Club that selected the Rookie in a prior Draft.

(s) "Final Eight Plan" means the rules whereby signings of Unrestricted Free Agents are limited in Uncapped Years for the final eight playoff Clubs, under the limited circumstances described in Article XXI (Final Eight Plan).

(t) "Free Agent" means a player who is not under contract and is free to negotiate and sign a Player Contract with any NFL Club, without Draft Choice Compensation or any Right of First Refusal.

(u) "Minimum Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player not on any Active list, and not on the Inactive list, pursuant to this Agreement.

(v) "Minimum Active/Inactive List Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player on any Active list, or on the Inactive list, pursuant to this Agreement.

(w) "Negotiate" means, with respect to a player or his representatives on the one hand, and an NFL Club or its representatives on the other hand, to engage in any written or oral communication relating to efforts to reach agreement on employment and/or terms of employment between such player and such Club.

(x) "New Club" means any Club except the Prior Club (as defined below).

(y) "Player Contract" means a written agreement or series of such agreements executed at or about the same time between a person and an NFL Club pursuant to which such person is employed by such Club as a professional football player.

(z) "Prior Club" means the Club that contracted with or otherwise held the NFL playing rights for the player for the previous NFL League Year.

(aa) "Prior Year Salary" means the total of the Paragraph 5 Salary, roster and reporting bonuses, pro-rata portion of signing bonus, and other

payments to a player in compensation for the playing of professional football for the last League Year of the player's most recently negotiated Player Contract, except for performance bonuses other than roster and reporting bonuses. Prior Year Salary shall also include any unrepaid loans made, guaranteed or collateralized by a Team or its Team Affiliate to a player or Player Affiliate.

(ab)    "Renegotiate" means any change in Salary or the terms under which such Salary is earned or paid, or any change regarding the Club's right to trade the player, during the term of a Player Contract.

(ac)    "Required Tender" means a Player Contract tender that a Club is required to make to a player pursuant to this Agreement, in order to retain a right with respect to the player, or to receive Rights of First Refusal, Draft Choice Compensation and/or other rights with respect to the player, as specified in this Agreement.

(ad)    "Restricted Free Agent" means a Veteran who has three or more Accrued Seasons and who completes performance of his Player Contract, but who is still subject to a Right of First Refusal and/or Draft Choice Compensation in favor of his Prior Club.

(ae)    "Right of First Refusal" means the right of an NFL Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players) to retain the services of certain Veteran players by matching offers made to those players.

(af)    "Rookie" means a person who has never signed a Player Contract with an NFL Club.

(ag)    "Undrafted Rookie" means a Rookie who was eligible for but not selected in a College Draft.

(ah)    "Unrestricted Free Agent" means a Veteran who completes performance of his Player Contract, and who is no longer subject to any exclusive negotiating rights, Right of First Refusal, or Draft Choice Compensation in favor of his Prior Club.

(ai)    "Veteran" means a player who has signed at least one Player Contract with an NFL Club.

(aj)    "Guaranteed League-wide Salary" means the minimum amount that the Teams in the NFL must pay in Player Costs during a League Year, if

**Section 3. Salary Cap Definitions:**

(a)    "Benefits" or "Player Benefit Costs" means the specific benefits paid to players set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), in effect.

(ak)    "Capped Year" means any League Year for which a Salary Cap is in effect.

(al)    "Total Revenues" or "TR" means all of the League and Team revenues that are included within the definition of Total Revenues, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(am)    "Guaranteed League-wide Salary" means the minimum amount

applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(an)    "Minimum Team Salary" means the minimum amount that each Team must pay in Salaries during a League Year, if applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 5.

(ao)    "Paragraph 5 Salary" means the compensation set forth in paragraph 5 of the NFL Player Contract, or in any amendments thereto.

(ap)    "Player Costs" means the total Salaries and Benefits attributable to a League Year for all NFL Teams under all of the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), but not including loans, loan guarantees, unpaid grievances attributions, and unearned incentives.

(aq)    "Projected Benefits" means the amount of Benefits projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ar)    "Projected Total Revenues" means the amount of Total Revenues projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(as)    "Room" means the extent to which a Team's then-current Team Salary is less than either the Salary Cap or Entering Player Pool, as applicable.

(at)    "Salary Cap" means the absolute maximum amount of Salary that each Club may pay or be obligated to pay or provide to players or Player Affiliates, or may pay or be obligated to pay to third parties at the request of and for the benefit of Players or Player Affiliates, at any time during a particular League Year, in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), if applicable.

(au)    "Team Salary" means the Team's aggregate Salary for Salary Cap purposes, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(av)    "Uncapped Year" means any League Year for which a Salary Cap is not in effect.

**Section 4. Further Definitions:**

(aw)    "Final League Year" means the League Year which is scheduled prior to its commencement to be the final League Year of this Agreement. As of the date hereof, the Final League Year is the 2012 League Year. The Final League Year shall always be an Uncapped Year.

(ax)    "Final Capped Year" means the League Year immediately prior to the Final League Year. The Final Capped Year shall be Capped unless the Salary Cap is removed pursuant to Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 2(b).

# EXHIBIT 3

# ARTICLE IX
# NON-INJURY GRIEVANCE

**Section 1. Definition:** Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement, and except wherever the Settlement Agreement provides that the Special Master, Impartial Arbitrator, the Federal District Court or the Accountants shall resolve a dispute.

**Section 2. Initiation:** A grievance may be initiated by a player, a Club, the Management Council, or the NFLPA. A grievance must be initiated within forty-five days from the date of the occurrence or non-occurrence upon which the grievance is based, or within forty-five days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

**Section 3. Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail or fax with the Management Council and furnishing a copy of such notice to the Club(s) involved, a Club or the Management Council may initiate a grievance by filing written notice by certified mail or fax with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA. The party to whom a non-injury grievance has been presented will answer in writing by certified mail or fax within seven days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or Club(s) involved and the NFLPA or the Management Council as may be applicable.

**Section 4. Ordinary and Expedited Appeal:** If a grievance is not resolved after it has been filed and answered, either the player(s) or Club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken,

23

and either the NFLPA or the Management Council as may be appropriate. If the grievance involves a suspension of a player by a Club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within seven days of the filing of the grievance. In addition, the NFLPA and the Management Council will each have the right of immediate appeal and hearing within seven days with respect to four grievances of their respective choice each calendar year. The arbitrator(s) designated to hear such grievances will issue their decision(s) within five days of the completion of the hearing. Prehearing briefs may be filed by either party and, if filed, will be exchanged prior to hearing.

**Section 5. Discovery:** No later than ten days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the dispute. Failure to submit such documents, reports and records no later than ten days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it desires into evidence, except that relevant documents submitted to the opposing party less than ten days before the hearing will be admissible provided that the proffering party and the custodian(s) of the documents made a good faith effort to obtain (or discover the existence of) said documents or that the document's relevance was not discovered until the hearing date. In the case of an expedited grievance pursuant to Section 4, such documentary evidence shall be exchanged on or before two days prior to the hearing unless the arbitrator indicates otherwise.

**Section 6. Arbitration Panel:** There will be a panel of four arbitrators, whose appointment must be accepted in writing by the NFLPA, and the Management Council. The parties will designate the Notice Arbitrator within ten days of the execution of this Agreement. In the event of a vacancy in the position of Notice Arbitrator, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two business days to discharge any other arbitrator. If the parties are unable to agree on a new arbitrator within thirty days of any vacancy, the Notice Arbitrator shall submit a list of ten qualified and experienced arbitrators to the NFLPA and the Management Council. Within fourteen days of the receipt of the list, the NFLPA and the Management Council shall select one arbi-

trator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

**Section 7. Hearing:** Each arbitrator will designate a minimum of twelve hearing dates per year, exclusive of the period July 15 through September 10 for non-expedited cases, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for such ensuing period, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator thirty days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date in the Club city unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the thirty-day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, and subject to Section 5, any evidence relevant to the grievance. All hearings will be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty days after the hearing date unless mutually extended notwithstanding any party's failure to present posthearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call. If either party requests post-hearing briefs, the parties shall prepare and simultaneously submit briefs except in grievances involving non-suspension Club discipline where less than $25,000 is at

issue, in which cases briefs will not be submitted. Briefs must be submitted to the arbitrator postmarked no later than sixty days after receipt of the last transcript.

**Section 8. Arbitrator's Decision and Award:** The arbitrator will issue a written decision within thirty days of the submission of briefs, but in no event shall he consider briefs filed by either party more than sixty days after receipt of the last transcript, unless the parties agree otherwise. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell/Pete Rozelle NFL Player Retirement Plan, or any award under the specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XIII (Committees), Section 1(c).

**Section 9. Time Limits:** Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon in writing, either the player, the NFLPA, the Club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

**Section 10. Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a Club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

**Section 11. Costs:** All costs of arbitration, including the fees and expenses of the arbitrator and the transcript costs, will be borne equally between the parties. Notwithstanding the above, if the hearing occurs in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall

---

award the player reasonable expenses incurred in traveling to and from his residence to the Club city and one night's lodging.

**Section 12. Payment:** If an award is made by the arbitrator, payment will be made within thirty days of the receipt of the award to the player or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty days, interest will be assessed against the Club from the date of the decision. Interest shall be calculated at double the one-year Treasury Note rate published in *The Wall Street Journal* as of February 1 (or next date published) of each year, and such rate shall apply to the interest awarded during each subsequent twelve-month period in lieu of continuation of any pre-award interest. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.

**Section 13. Grievance Settlement Committee:** A grievance settlement committee consisting of the Executive Director of the NFLPA and the Executive Vice President for Labor Relations of the NFL, shall have the authority to resolve any grievance filed under this Article. This committee shall meet periodically to discuss and consider pending grievances. No evidence will be taken at such meetings, except parties involved in the grievance may be contacted to obtain information about their dispute. If the committee resolves any grievance by mutual agreement of the two members, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and the Club(s) involved and the parties to this Agreement. Consideration of any grievance by this committee shall not in any way delay its processing through the non-injury grievance procedure described in this Article, and no grievance may be resolved pursuant to this Section once an arbitration hearing has been convened pursuant to Section 7 hereof.

# EXHIBIT 4

Case 1:08-cv-03658-PAC    Document 18-8    Filed 07/07/2008    Page 2 of 3

# ARTICLE LVIII
# DURATION OF AGREEMENT

**Section 1.** [No longer applicable]

**Section 2.    Effective Date/Expiration Date:** Except as provided in Section 3 below, this Agreement shall be effective from March 8, 2006 until the last day of the 2012 League Year, except for the provisions relating to the Draft, Article XVI (College Draft), which shall expire in the League Year immediately following the expiration or termination of this Agreement.

**Section 3.    Termination Prior to Expiration Date:**

(a)    Either the NFLPA or the Management Council may terminate both of the final two Capped Years (2010 and 2011) by giving written notice to the other on or before November 8, 2008. In that event, the 2010 League Year would be the Final League Year, and the Agreement would continue in full force and effect until the last day of that League Year, except for the provisions related to the Draft, which would expire as prescribed in Article XVI, Section 1.

(b)    Either the NFLPA or the Management Council may terminate the final Capped Year of this Agreement (2011) by giving written notice to the other on or before November 8, 2009. In that event, the 2011 League Year would be the Final League Year, and the Agreement would continue in full force and effect until the last day of that League Year, except for the provisions related to the Draft, which would expire as prescribed in Article XVI, Section 1.

(c)    **Provision Invalidated:** If at any time after Court Approval during the term of this Agreement, any provision of this Agreement is enjoined, declared null and void, rendered unenforceable or otherwise invalidated by a court of competent jurisdiction, and such court's order having become final and all appeals through the Court of Appeals having been exhausted, the provision in question shall be severed from the Agreement, and the remainder of the Agreement shall remain in full force and effect. Notwithstanding anything in this Subsection (c), either the NFL or the NFLPA shall have the right to terminate this Agreement if one or more of the following provisions is rendered invalid, null and void, or unenforceable: Articles XVI (College Draft), XIX (Veteran Free Agency), XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), LVI (Final League Year), XVIII (Anti-Collusion), and LVII (Mutual Reservation of Rights; Labor Exemption). If either the NFL or the NFLPA wishes to exercise its option to terminate, it may do so by serving upon the other parties written notice of termination within thirty days of the date of such determination and any appeals relating thereto.

(d)    **Termination Due to Collusion:** If at any time the conditions of Article XXVIII (Anti-Collusion), Section 16(a), (b) or (c) are satisfied, the

NFLPA shall have the right to terminate this Agreement. To execute such a termination, the NFLPA shall serve upon the NFL written notice of termination within thirty days after the Special Master's report finding the requisite conditions becomes final and any appeals thereto to the District Court have been exhausted. The Parties agree, however, that such termination shall be stayed if Party appeals such finding to the Court of Appeals. All Parties agree to seek and accept expedited review in any appeal of a collusion determination, with all the procedural limitations thereof. Thirty days after any expedited review by the Court of Appeals, and in the absence of a stay by the U.S. Supreme Court within ten days thereof, the termination shall be effective, unless the Parties agree otherwise. The Parties shall confer in person or by telephone during the thirty-day period to attempt to resolve the dispute.

(e)    **No Waiver:** Any failure of the NFL or the NFLPA to exercise its right to terminate this Agreement with respect to any League Year in accordance with this Article shall not be deemed a waiver of or in any way impair or prejudice any right of any such party, if any, to terminate this Agreement in accordance with this Article with respect to any succeeding League Year.

**Section 4.    Effect of Early Termination on Player Contracts:**

(a)    If otherwise in compliance with this Agreement upon execution prior to notice of early termination, a Player Contract may not be found to violate this Agreement solely by reason of a subsequent early termination of this Agreement. For example, a Player Contract that, upon execution, complies with the 30% Rule set forth in Article XXIV, Section 8(b), may not be found to violate the 30% Rule solely by reason of a subsequent early termination, although neither the Player nor the Club may, after notice of early termination of this Agreement, exercise any options, or otherwise exercise rights or take actions that would, upon exercise or implementation, cause the Player Contract to violate the 30% Rule.

(b)    Except as otherwise provided in Article XXV, the Salary Cap accounting treatment accorded to Player Contracts executed, or any options or other rights exercised, prior to any notice of early termination of this Agreement will not change, and such contracts will not be re-valued, solely by reason of such early termination.

**Section 5.    Ratification:** This Agreement is subject to ratification by the NFLPA and the Management Council in accordance with their internal pro-



Article LVIII. Duration of Agreement

cedures before it becomes effective. In the event of failure of ratifications by either party, then this Agreement will not become effective and neither party, nor any of its members, will possess or assert any claim whatsoever against the other party because of the failure of ratification of this Agreement.