**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN THE MATTER OF THE
ARBITRATION BETWEEN

THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION On Behalf of
Steve Harvey, David Alexander and Marlon
Kerner

**and**

THE NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL On Behalf of
THE BUFFALO BILLS and THE NEW
YORK JETS

Civil Action No. 08-cv-3658 (PAC)

SDNY ECF FILING

THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION On Behalf of
Charles Smith, Dusty Renfro, Michael Swift
and Jason Peter

**and**

THE NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL On Behalf of
THE CAROLINA PANTHERS

**NFLPA'S MEMORANDUM OF LAW (1) IN FURTHER SUPPORT OF ITS**
**AMENDED PETITION TO CONFIRM ARBITRATION AWARD AND (2)**
**IN OPPOSITION TO THE NFL'S MOTION TO DISMISS PETITION**

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019-6092
*Attorneys for the National Football League*
*Players Association*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT ......................................................................................................................7

I.      CONFIRMATION UNDER SECTION 301 IS A SUMMARY
PROCEDURE.............................................................................................7

II.     COMPLIANCE WITH THE AWARD DOES NOT DEFEAT
CONFIRMATION........................................................................................9

III.    THE NFL'S CURRENT POSITION THAT NON-COMPLIANCE IS A
PRECONDITION OF CONFIRMATION UNDER SECTION 301 IS
COMPLETELY INCONSISTENT WITH THE POSITION IT
SUCCESSFULLY ASSERTED IN A PRIOR CONFIRMATION
PETITION.................................................................................................18

IV.    THE AWARD IS FINAL AND BINDING................................................21

CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

1199 SEIU, New York's Health & Human Servs. Union v. St. Luke Residential Health
    Care Facility, Inc., No. 04CV1463(NAM/DEP), 2005 WL 1828762 (N.D.N.Y.
    July 26, 2005)...................................................................................... 11-12

Am. Nursing Home v. Local 144 Hotel, Hosp., Nursing Home & Allied Servs. Union,
    SEIU, AFL-CIO, No. 89 Civ. 1704 (DNE), 1992 WL 47553
    (S.D.N.Y. Mar. 4, 1992) ..................................................................... 8, 10-11

Bethlehem Steel Corp. v. United Steelworkers of Am.,
    1991 WL 338553 (D. Md. Sept. 18, 1991) ...................................................17

Brown v. Witco Corp., 340 F.3d 209 (5th Cir. 2003)............................................20

Comer v. Am. Fed'n of State, County & Mun. Employees,
    272 F. Supp. 2d 332 (S.D.N.Y. 2003)........................................................23

Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union
    Local 812, Int'l Bhd. of Teamsters, 242 F.3d 52 (2d Cir. 2001) .................20

Consol. Vultee Aircraft Corp. v. UAW Local 904, 167 P.2d 725 (Cal. 1946)........14

Derwin v. Gen. Dynamics Corp., 719 F.2d 484 (1st Cir. 1983)...................... *passim*

Dist. Council No. 9 v. APC Painting, Inc., 272 F. Supp. 2d 229 (S.D.N.Y. 2003) .................11

Ernest Disabatino & Sons, Inc. v. Metro. Reg'l Council of Carpenters,
    2005 WL 885165 (D. Del. Feb. 28, 2005) ...................................................23

Gary v. Roadway Express, 941 F. Supp. 94 (N.D. Ill. 1996) .................................23

General Drivers, Warehouseman & Helpers, Local Union No. 89 v. Riss & Co.,
    372 U.S. 517 (1963)........................................................................... 22-23

Hall St. Assocs., L.L.C. v. Mattel, Inc., 128 S. Ct. 1396 (2008) ...........................16

Harry Hoffman Printing, Inc. v. Graphic Cmmc'ns, Int'l Union, Local 261,
    912 F.2d 608 (2d Cir. 1990)....................................................................17

Houston Ref. LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.
    & Serv. Workers Int'l Union, Civ. No. H-07-2560, 2005 WL 6147965 (S.D. Tex.
    June 4, 2005) ..................................................................................... 20-21

HRH Constr., L.L.C. v. Local No. 1, Int'l Union of Elevator Constructors, AFL-CIO,
    No. 03 Civ. 8944 (DC), 2005 WL 31948 (S.D.N.Y. Jan. 5, 2005)................8

In the Matter of the National Football League Players Association and The National
    Football League Management Council, The Dallas Cowboys and The Houston
    Texans, Civ. No. 3-05-2298G (N.D. Tex. Nov. 23, 2005) ......................................2, 19

Jamaica Buses, Inc. v. Transp. Workers' Union, AFL-CIO, Local 100,
    No. 02CV2533(SJ), 2003 WL 1621026 (S.D.N.Y. Mar. 26, 2003) ...........................12

Local 2414 of the Mine Workers of Am. v. Consol. Coal Co.,
    682 F. Supp. 399 (S.D. Ill. 1988)...............................................................................17

Local 802 Assoc. Musicians of Greater New York v. Parker Meridian Hotel,
    145 F.3d 85 (2d Cir. 1998)...........................................................................................7

Montgomery Ward & Co., Inc. v. Warehouse, Mail Order, Office, Technical & Prof'l
    Employees Union, 911 F. Supp. 1094 (N.D. Ill. 1995) ...............................................18

New York City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.,
    No. 03 Civ. 5122(DAB), 2003 WL 22773355 (S.D.N.Y. Nov. 21, 2003) ...................7

New York's Health & Human Serv. Employees Union, 1199/SEIU, AFL-CIO v.
    Grossman, No. 02 CV 6031 (SLT) (JMA), 2007 WL 2907386 (E.D.N.Y. Oct. 3,
    2007) ...........................................................................................................................17

Ono Pharm. Co., Ltd. v. Cortech, Inc.,
    No. 03 Civ. 5840 SAS, 2003 WL 22481379 (S.D.N.Y. Nov. 3, 2003).................11, 18

Otis Elevator Co. v. Local 1, Int'l Union of Elevator Constructors,
    No. 03 Civ. 8862 (DAB), 2005 WL 2385849 (S.D.N.Y. Sept. 23, 2005)...........8, 9, 11

Ottley v. Schwartzberg, 819 F.2d 373 (2d Cir. 1987).........................................................9-10

Scott v. Snelling & Snelling, Inc., 732 F. Supp. 1034 (N.D. Cal. 1990)................................15

Serv. Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., L.L.C.,
    326 F. Supp. 2d 550 (S.D.N.Y. 2004)........................................................................23

Steris Corp. v. Int'l Union, United Automobile, Aerospace & Agric. Implement Workers
    of Am., 489 F. Supp. 501 (W.D. Penn. 2007) ..........................................................17

Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.,
    545 F. Supp. 2d 260 (E.D.N.Y. 2008) ..........................................................................8

United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,
    484 U.S. 29 (1987) ........................................................................................................8

United Steel Workers AFL-CIO v. Murphy Oil USA, Inc.,
    541 F. Supp. 2d 824 (E.D. La. 2007)....................................................................16, 23

United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers
 Int'l Union v. E.I. Dupont de Nemours & Co., No. 05-CV-533A(F), 2006 U.S.
 Dist. LEXIS 79384 (W.D.N.Y. July 26, 2006)............................................................8

United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers
 Int'l Union v. E.I. Dupont de Nemours & Co., No. 05-CV-533A, 2006 U.S. Dist.
 LEXIS 79383 (W.D.N.Y. Oct. 20, 2006) .....................................................................9

Yellow Freight Systems, Inc. v. Local Union 710, Int'l Bhd. of Teamsters, AFL-CIO,
 1994 WL 665086 (N.D. Ill. Nov. 16, 1994) ..............................................................17

**STATUTES**

9 U.S.C. § 9......................................................................................................................15

9 U.S.C. § 13....................................................................................................................15

29 U.S.C. § 185(a) ...........................................................................................................20

The National Football League Players Association ("NFLPA") submits this Memorandum of Law (1) in further support of its Amended Petition to confirm an arbitration award and (2) in opposition to the National Football League's ("NFL") motion to dismiss the Petition.

## PRELIMINARY STATEMENT

This is a routine action under Section 301 of the Labor Management Relations Action ("LMRA") brought by a labor union, the NFLPA (which represents all players in the NFL), to confirm an arbitration award. The NFL does not argue that the award is incorrect. Nor does the NFL contend that the Petition is untimely. Rather, relying upon scattershot cases from other jurisdictions, the NFL contends that the Petition violates both Article III of the U.S. Constitution and the LMRA because, according to the NFL, no arbitration award may be confirmed unless there is noncompliance with the award. The NFL is mistaken. As set forth below, the NFL has ignored the settled law in this circuit, which is clear that an arbitral award may be confirmed under Section 301 regardless of whether the parties have complied with it.

The few cases from other jurisdictions cited by the NFL are erroneous, inapposite or easily distinguishable. One case cited by the NFL, a Magistrate's report, was in fact reversed by the District Court, although that is not noted in the NFL's brief. Other cases cited by the NFL do not even address confirmation. The key case upon which the NFL relies, Derwin v. General Dynamics Corp., 719 F.2d 484 (1st Cir. 1983), notes that its holding (to wit, that noncompliance with an award is a condition of confirmation) conflicts with other courts' interpretations of Section 301 -- specifically, federal courts in New York and California. Indeed, Derwin, with its rigid limitations on

confirmation urged by the NFL here, has been rejected by courts in this district. Moreover, Derwin is specifically predicated on Massachusetts's indefinite limitations period for confirmation of awards, and as the court in Derwin itself acknowledged, its reasoning would be inapplicable if there were a shorter limitations period.  In New York, the statute of limitations to confirm an arbitration award is one year, and hence, applying Derwin in this district would make no sense.  Derwin, which conflicts with settled law in this circuit, is not controlling and should be rejected here.

Significantly, while the NFL now laments that it is both unconstitutional and a violation of the LMRA to confirm an award in the absence of a breach or repudiation of that award, the NFL itself has, recently, successfully sought the exact same relief.  In In the Matter of the National Football League Players Association and The National Football League Management Council, The Dallas Cowboys and The Houston Texans, Civ. No. 3-05-2298G (N.D. Tex. Nov. 23, 2005), the NFL and NFLPA (both through the same counsel appearing here) filed a "Joint Petition" under Section 301 of the LMRA and Section 9 of the Federal Arbitration Act ("FAA") to confirm an arbitral award dealing with workers' compensation benefits under Texas law ("TWC Petition").  Neither party had repudiated that arbitral award; to the contrary, the NFL and NFLPA jointly sought confirmation.  According to the NFL now, however, the NFL's own TWC Petition was unconstitutional and a violation of the LMRA.  The NFL's flip-flop is obvious.

Confirmation is a summary procedure, and arbitration awards are confirmed all the time.  As the NFL's only objections to confirmation are legally unsound

and wholly contrary to the NFL's own prior legal position, the NFLPA's Petition should be granted without further delay.

## **STATEMENT OF FACTS**

NFL players who are injured and unable to play are entitled to certain injury-related benefits under the Collective Bargaining Agreement ("CBA") between the NFLPA and the NFL, and the NFL Standard Player Contract, the form employment contract that each player and NFL Club enter into.  See NFL CBA 2006-2012, at Art. XII, attached as Exhibit A to the Declaration of Michelle Lo dated August 4, 2008 ("Lo Decl."); Kaiser Decl. ¶ 2, Exh. B.[1]  These benefits include (1) "injury protection" under Article XII of the CBA (limited salary for the season following the season of injury) and (2) salary continuance under Paragraph 9 of the NFL Standard Player Contract (full salary for the season of injury).  Lo Decl. ¶ 2, Exh. A; Kaiser Decl. ¶ 2, Exh. B.

The underlying arbitration in this case involved the "offset" or "credit" that an NFL Club may be entitled to where an injured player receives both injury-related benefits under the CBA and/or Standard Player Contract, and state workers' compensation benefits.  In such cases, NFL Clubs often maintain that they are entitled to a "credit" for benefits provided under the CBA, such that state workers' compensation awards should be reduced by the amount of the CBA benefits the injured player receives. This is also referred to as an "offset" -- the amount of the workers' compensation award is offset (reduced) by the amount of the CBA benefits.

---

[1]  The "Kaiser Declaration" refers to the Declaration of Adam J. Kaiser in Support of NFLPA's Amended Petition for Order Confirming Arbitration Award and Entry of Judgment Thereon, filed with this Court on June 17, 2008.

Paragraph 10 of the NFL Standard Player Contract, entitled "Workers' Compensation," governs any "credit" or "offset" to which a Club may be entitled to against any award of workers' compensation benefits received by a player:

> Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.

Kaiser Decl. ¶ 2, Exh. B.

In May 2005, invoking the arbitration procedures in Article IX of the CBA, the NFLPA filed a "non-injury grievance" (the CBA's term for an arbitration) against the Buffalo Bills, the New York Jets, and the NFL Management Council, based on claims asserted in state courts by the Buffalo Bills and the New York Jets to offset against any workers' compensation award the "injury protection" and "salary continuation" benefits paid to NFL players Steve Harvey and David Alexander, respectively.[2] Id. ¶ 3. The result of the offset sought by the Clubs in those cases (referred to as a "dollar-for-dollar" offset) would be as follows: the injured players would receive no workers' compensation benefits because the "injury protection" and "salary continuation" benefits available under the CBA exceeded the available monetary workers' compensation benefits. In other words, the Clubs would be able to claim a credit, on a "dollar-for-dollar" basis, for all of the CBA benefits received by the players on account of the injury, thus effectively wiping out the workers' compensation award.

---

[2] Player Marlon Kerner was added as an additional grievant on September 14, 2005. See Kaiser Decl. ¶ 6.

The NFLPA asserted in the grievance that the Clubs' claims for the "dollar-for-dollar" offset violated the express language of Paragraph 10 of the Standard Player Contract. <u>Id.</u> The NFLPA claimed that Paragraph 10 permitted Clubs to take only a limited offset for the amount of workers' compensation benefits due and payable during the same exact period of time in which a player is deemed to be entitled to his salary under the Standard Player Contract (<u>i.e.</u>, a "time" offset). <u>Id.</u> ¶ 4.

The NFLPA's grievance proceeded to arbitration before Arbitrator Shyam Das ("Arbitrator Das"), an arbitrator mutually selected by the NFLPA and the NFL. <u>Id.</u> ¶ 7. The NFLPA's grievance against the Bills and the Jets was consolidated for the purposes of arbitration with a separate non-injury grievance that the NFLPA had filed against the Carolina Panthers arising out of the Panthers' claim for a "dollar-for-dollar" offset. <u>Id.</u> ¶¶ 5, 7.

The arbitration hearing took place on January 10, 2006. <u>Id.</u> ¶ 8. Following the close of the hearing, but prior to the issuance of the Award, the NFL and NFLPA commenced negotiations for an extension of their CBA, during which time the parties agreed that no decision on the NFLPA's grievance be rendered.[3] <u>Id.</u> ¶ 10. The parties eventually agreed upon a new CBA, and as part of that process, all NFL Clubs were precluded from seeking or obtaining the "dollar-for-dollar" offset. <u>See</u> Lo Decl. ¶ 3, Exh. B. Under the new CBA, Clubs are now only entitled to the limited "time" offset. <u>Id.</u> Section 4 of Article LIV of the new CBA, entitled "Workers' Compensation Offset Provisions," provides:

---

[3] CBA Article IX, Section 8 requires the Arbitrator to issue a decision within 30 days, but Article IX, Section 9 permits the parties to extend all time limits on mutual consent, which was done here for the award.

> **Workers' Compensation Offset Provisions**:  The parties agree that the following provisions shall exclusively govern any and all rights Clubs have with respect to workers' compensation credits or offsets during the remaining Capped Years of this Agreement.
>
> (i) **"Dollar-for-Dollar" Credits or Offsets.**  <u>No Club shall be entitled to claim or receive any dollar-for-dollar credit or offset for salary, benefits, or other compensation paid or payable to a Player against any award or settlement of workers' compensation benefits</u>, either pursuant to Paragraph 10 of the NFL Player Contract or any provision of state law.
>
> (ii) **"Time" Credits or Offsets.**  All Clubs are instead entitled only to a "time" credit or offset under Paragraph 10 of the NFL Player Contract or state law . . . .  This "time" credit or offset shall in all cases be expressed or granted as a reduction in the number of weeks of a Player's workers' compensation award or settlement that is attributable to the same period of weeks in which the Player is deemed entitled to salary payments or CBA benefits as described in this Section.  . . .

<u>Id.</u> at Art. LIV, Sec. 4 (emphasis added).

On February 14, 2007, Arbitrator Das issued a written final award ("Award") in the underlying arbitration.  <u>See</u> Kaiser Decl. ¶ 9, Exh. C.  By agreement of the parties in the summer of 2006, the final Award was not to be delivered to any of the parties until July 2007, a year after the new CBA went into effect.  <u>Id.</u> ¶ 10.[4]  Due to scheduling considerations, and with the agreement of the parties, the Award was unsealed and delivered to both the NFLPA and the NFL on June 6, 2007.  <u>Id.</u> ¶ 11.  The NFLPA won the grievance.  The Arbitrator ruled that NFL Clubs would not be entitled to a

---

[4]  The parties agreed to delay the issuance and delivery of the Award because they agreed that it would have impeded negotiations over the workers' compensation articles of the new CBA to know in advance who won the grievance.  That would have undoubtedly tipped the scales one way or the other at the bargaining table and made it more difficult to reach an agreement that both sides deemed fair.

"dollar-for-dollar" offset, and would be limited to claiming the "time" offset.

As set forth above, under the new CBA, NFL Clubs may not claim or receive a "dollar-for-dollar" offset, and are instead limited to a "time" offset. The parties also agreed during their collective bargaining negotiations that the Award would "not go into effect until the beginning of the Final League Year." See Eisenstein Decl. Exh. 1.[5] Under the parties' current CBA, the Final League Year is defined as "the 2012 League Year." Id. Exh. 2. On May 20, 2008, NFL owners voted to shorten the length of the CBA by two years, which would terminate the current CBA after the 2010 season. See Lo Decl. ¶ 4, Exh. C. Hence, the Award will go into effect in the 2010 season.

## ARGUMENT

### I.    CONFIRMATION UNDER SECTION 301 IS A SUMMARY PROCEDURE

It is well settled that federal courts have jurisdiction to confirm arbitration awards under Section 301 of the LMRA. See Local 802 Assoc. Musicians of Greater New York v. Parker Meridian Hotel, 145 F.3d 85, 88 (2d Cir. 1998) ("Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards"). "Confirmation of a labor arbitration award under Section 301 of the LMRA . . . and Section 9 of the FAA . . . is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court.'" New York City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc., No. 03 Civ. 5122(DAB), 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003). Moreover, because Section 301 does not set forth a particular procedure for confirming arbitration awards,

---

[5] While the NFLPA hoped (and still hopes) that the new workers' compensation Article of the CBA would become a permanent fixture, the parties retained the right to terminate the CBA early, which the NFL did.

courts often look to the confirmation procedures set forth in the FAA and borrow the

FAA's procedures in Section 301 confirmation actions.  See, e.g., HRH Constr., L.L.C. v.

Local No. 1, Int'l Union of Elevator Constructors, AFL-CIO, No. 03 Civ. 8944 (DC),

2005 WL 31948, at *4 (S.D.N.Y. Jan. 5, 2005) (collecting cases); Otis Elevator Co. v.

Local 1, Int'l Union of Elevator Constructors, No. 03 Civ. 8862 (DAB), 2005 WL

2385849, at *4 (S.D.N.Y. Sept. 23, 2005) ("Particularly in the context of a petition to

confirm or vacate an arbitration award, '[t]he policies of [S]ection 301 and the FAA are

analogous' . . . .  As such, the Court considers the instant case in light of the body of law

developed under Section 301 and draws on the FAA for guidance") (citations omitted).[6]

        This law is settled, yet the NFL speciously claims that "courts in the

Second Circuit have recognized that it is improper to use the FAA's 'summary'

confirmation procedure in enforcement proceedings under Section 301 of the LMRA."

See NFL Br. at 8.  The only case cited by the NFL for this proposition is United Steel,

Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers

Int'l Union v. E.I. Dupont de Nemours & Co., No. 05-CV-533A(F), 2006 U.S. Dist.

LEXIS 79384, at *5-6 (W.D.N.Y. July 26, 2006).  Putting aside that the decision does not

stand for the proposition the NFL cites it for, it is a Magistrate's Report and

Recommendation that was expressly rejected in all respects by the District Court, a fact

---

[6]  See also Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc., 545
F. Supp. 2d 260, 263 n.3 (E.D.N.Y. 2008) ("Under the FAA, parties to an arbitration
agreement may make an application to a federal district court for an order confirming an
arbitration award.  In the present case, the FAA is not applicable since in cases brought
pursuant to Section 301 of the LMRA, the FAA does not apply.  However, 'federal courts
have often looked to the Act for guidance in labor arbitration cases'"), citing United
Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 41 n.9 (1987); Am.
Nursing Home v. Local 144 Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU,
1992 WL 47553 (S.D.N.Y. Mar. 4, 1992) (applying Section 9 of the FAA in a Section
301 confirmation proceeding).

conveniently ignored by the NFL.[7]

## II.    COMPLIANCE WITH THE AWARD DOES NOT DEFEAT CONFIRMATION

The gist of the NFL's argument is that there is no justiciable controversy under Article III of the United States Constitution, or federal subject matter jurisdiction under Section 301, unless there is noncompliance with the Award.  The NFL's argument is without merit.  It is settled law in this circuit that the federal courts have subject matter jurisdiction under Section 301 to confirm labor arbitration awards regardless of whether the parties have complied with the award:

> Contrary to Respondent's argument that the Court lacks jurisdiction because Respondent has complied with the arbitration award, Section 301's jurisdiction provision is not contingent upon a party's non-compliance.

Otis Elevator Co., 2005 WL 2385849, at *4 n.2, citing Ottley v. Schwartzberg, 819 F.2d 373 (2d Cir. 1987).

Ottley is the controlling authority in this circuit.  There, a union and one of its members (Ottley) commenced arbitration against the employer under the collective bargaining agreement.  The union and the employer agreed during the arbitration that the employer owed $360,000, and the employer consented to an arbitration award in that amount.  Ottley contended that the employer failed to pay the amounts owed, and he filed a petition to confirm the award.  The employer argued that "the petition to confirm was inappropriate inasmuch as the alleged default had been cured."  Ottley, 819 F.2d at 375.

---

[7]  See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Service Workers Int'l Union v. E.I. Dupont de Nemours & Co., No. 05-CV-533A, 2006 U.S. Dist. LEXIS 79383, at *1 (W.D.N.Y. Oct. 20, 2006) ("Upon a de novo review of the Report and Recommendation, and after reviewing the submissions of the parties and hearing argument from counsel, the Court declines to adopt the proposed findings of the Report and Recommendation").

The district court denied the petition to confirm and remanded the case to the arbitrator to determine whether the employer had complied with the award.

The Second Circuit reversed. Significantly, the court ruled that the parties' compliance with the award was irrelevant.[8] Id. at 376. Indeed, noting that the "showing required to avoid summary confirmation is high," the court held that it was improper to remand to the arbitrator to determine compliance, see id., because it was irrelevant whether the parties had complied with the award:

> Actions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated. "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."

Id. at 377, citing Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984).

Following Ottley, courts in this circuit have consistently held that the parties' compliance or non-compliance with the arbitral award is irrelevant in a suit brought under either the LMRA or FAA to confirm the award. In American Nursing Home v. Local 144 Hotel, Hospital, Nursing Home & Allied Services Union, SEIU, AFL-CIO, No. 89 Civ. 1704 (DNE), 1992 WL 47553 (S.D.N.Y. Mar. 4, 1992), for example, the union sought confirmation of an award. Although the petition to confirm was brought under Section 301, the court borrowed the confirmation procedures set forth in the FAA, as the Ottley court apparently did. In any event, the employer contended that confirmation should be denied because it had complied with the award. Relying upon Ottley, the court rejected the employer's argument:

---

[8]  The court analyzed confirmation under the FAA, even though the award was entered in a labor arbitration pursuant to a collective bargaining agreement between a union and the employer governed by the LMRA. See Ottley, 819 F.2d at 375.

> The issues of compliance and confirmation are distinct
> from each other.  A court may confirm an arbitration award
> even in the absence of a showing of non-compliance.  This
> is because "[t]he confirmation of an arbitration award is a
> summary proceeding that merely makes what is already a
> final arbitration award a judgment of the court."
> Confirmation, therefore, is not a novel inquest into the
> merits of the award or compliance with it; in the absence of
> unique, statutorily prescribed circumstances, confirmation
> is appropriate.

Id. at *2 (emphasis added; internal citations omitted).

The cases in this circuit applying this principle -- all of which have been

ignored by the NFL -- are, frankly, legion.  See Otis Elevator Co., 2005 WL 2385849, at

*4 n.2; Ono Pharm. Co., Ltd. v. Cortech, Inc., No. 03 Civ. 5840 SAS, 2003 WL

22481379, at *3 (S.D.N.Y. Nov. 3, 2003) ("Cortech further contends that, because neither

party is currently refusing to honor the arbitral award, 'Ono's petition for confirmation by

this Court is neither needed nor justified.'  Cortech cannot, however, muster any Second

Circuit precedent holding that a party must refuse to honor an arbitral award before the

award can be confirmed.  Cortech sets forth no basis for vacatur or modification of the

Award; indeed Cortech's purported willingness to abide by the strictures of the Award

supports the position that no such basis exists.  Absent a valid basis for refusing to do so,

this Court must affirm the Award"); Dist. Council No. 9 v. APC Painting, Inc., 272 F.

Supp. 2d 229, 239 (S.D.N.Y. 2003) ("The defendants [opposing confirmation] also assert

that the awards . . . have been satisfied.  But whether the awards have been satisfied . . .

has no bearing on whether the arbitration awards should be confirmed.  . . .  Indeed, as

the defendants themselves have pointed out subsequent to the briefing, a court may

confirm as arbitration award against a party even when the party has complied with that

award"); 1199 SEIU, New York's Health & Human Servs. Union v. St. Luke Residential

Health Care Facility, Inc., No. 04CV1463(NAM/DEP), 2005 WL 1828762, at *3 (N.D.N.Y. July 26, 2005) ("This Court agrees with the position taken by the Court in Ono Pharm. Co. and, accordingly, denies the employer's motion to dismiss [the] union's cases on the basis that the union has not alleged that the employer is not complying with the award in question"); Jamaica Buses, Inc. v. Transp. Workers' Union, AFL-CIO, Local 100, No. 02CV2533(SJ), 2003 WL 1621026, at *2-3 (S.D.N.Y. Mar. 26, 2003) ("As Defendant notes, there is ample caselaw in which federal courts have relied on jurisdiction pursuant to § 301 of the LMRA to confirm or vacate an arbitration award. Plaintiff argues, however, that where jurisdiction under § 301 is not grounded in a party's assertion that there is a 'violation' of the bargaining agreement, § 301 does not operate to provide federal court jurisdiction. The Court disagrees. 'The [LMRA] provides that final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.' The current motion seeks to confirm, or alternatively, vacate, an arbitration award which most certainly resulted from an application of the CBA") (emphasis original; citations omitted).

        Notwithstanding the settled law in this circuit, all of which the NFL ignores, the NFL asks this Court to adopt a contrary rule, to wit, that jurisdiction under Section 301 is lacking where the parties have complied with the award. The Court, respectfully, should not muddy the waters in this area of the law by rejecting all of the authority in this circuit that came before this case, and adopting a rule so plainly and completely at odds with all existing precedent. The NFL has provided no basis for this Court to do so. To the contrary, the NFL has not even acknowledged the existing law.

The NFL's primary authority is <u>Derwin v. General Dynamics Corp.</u>, 719 F.2d 484 (1st Cir. 1983). This Court should not follow <u>Derwin</u>, however, because it conflicts with the Second Circuit's decision in <u>Ottley</u>, <u>supra</u>, and, as explained below, is erroneous on the law and would be completely unworkable in New York.

In <u>Derwin</u>, the union brought an action to confirm an award, and the district court held that the confirmation application was barred by the one-year statute of limitations set forth in the FAA. The appellate court reversed, holding that the state statute of limitations governed in an action under the LMRA. <u>Id.</u> at 489. The court also ruled that because under Massachusetts law there is "no limit on the time for filing suits to confirm," the union's petition, brought three years after the award was issued, was timely. <u>Id.</u> The court reasoned that the Massachusetts law, with its infinite limitations period, "encourages the parties voluntarily to treat the award as final and binding, foregoing judicial proceedings altogether." <u>Id.</u> Indeed, the court noted that imposing any time limitation to enforce an award "would force the prevailing party to undergo the expense and delay of suing to confirm the award, even where the other party had agreed in good faith that the award was final and binding." <u>Id.</u> at 490.

Having decided the precise issue before it -- whether the district court erred in dismissing the petition on the basis of the FAA's one-year statute of limitations -- the court then decided, "in the interests of judicial economy," and because it was "integral to our views on the statute of limitations," whether the petition to confirm should be granted. <u>Id.</u> at 490. The court denied confirmation, reasoning that unless a party repudiated or breached the award, there would be no basis to confirm it. The only case cited by the court for its holding was a California state court case from 1947 that is

not even remotely relevant.[9]  In so ruling, the court in <u>Derwin</u> noted that other courts --

particularly in New York and California -- disagreed with the court's analysis, and indeed

permitted confirmation in the absence of noncompliance.  <u>Id.</u> at 491.  Noting that the

New York and California approach represented a "possible procedure," the court rejected

such an approach on several confusing grounds.

        <u>First</u>, the court found it inappropriate to be "asked to put its imprimatur

upon an arbitral award in a vacuum."  <u>Id.</u>  That reasoning is the <u>exact</u> <u>opposite</u> of that

employed by the Second Circuit:  "[T]he confirmation of an arbitration award is a

summary proceeding that merely makes what is already a final arbitration award a

judgment of the court."  <u>Ottley</u>, 819 F.2d at 377, citing <u>Florasynth, Inc. v. Pickholz</u>, 750

F.2d 171, 176 (2d Cir. 1984).  In <u>this</u> circuit, confirmation serves the very purpose of

placing the court's imprimatur on the award, the precise thing the First Circuit found so

troubling.  The Second Circuit's precedent controls here, of course, but more importantly

perhaps, the First Circuit's reasoning is, respectfully, wrong.  Judicial confirmation of an

arbitral award is important precisely because, without such confirmation, the award

would not have the force of law, but rather, would only create contract rights in the event

the award was breached.  Arbitration would be meaningless, however, if the creation of

---

[9]  <u>Consolidated Vultee Aircraft Corp. v. UAW Local 904</u>, 167 P.2d 725 (Cal. 1946), cited
at <u>Derwin</u>, 719 F.2d at 492, involved a CBA that was to expire after the longer of June 1,
1943 or ninety days after World War II ended.  The parties entered into a new CBA after
World War II ended in 1945.  At issue in the arbitration was whether the parties to the
CBA should add certain language to the CBA.  The arbitrator ultimately ruled for the
employer, that the language should not be added.  While on appeal, the new CBA was
entered into, and the court dismissed the appeal as moot:  "the appeals have become moot
because the new agreement has superseded the agreement that was to be amended under
the award . . .  Since the amendment to which the award relates has become obsolete, a
confirmation of the award would be meaningless."  <u>See</u> <u>Consolid. Vultee</u>, 167 P.2d at
727.  <u>Consolidated Vultee</u> hardly supports the conclusion in <u>Derwin</u>.

further contract rights in favor of the victor were its ultimate goal.  But that is not the ultimate goal.  Rather, the point of arbitration is not only to allow the parties to privately resolve a legal dispute, but also to have the legitimacy of that resolution be on par with a judicial resolution.  That is why the FAA specifically provides for confirmation of any arbitral award (without regard to "compliance"), and further provides that a confirmed award has the same effect as a judgment of the court.  See 9 U.S.C. §§ 9, 13.  As recognized in the FAA, without confirmation of arbitral awards, issues decided by arbitration may lack preclusive effect, and consequently, the utility and desirability of arbitration as a means to fully and finally settle a dispute between the parties would be greatly diminished.[10]

Second, the court in Derwin ruled that permitting confirmation in the absence of noncompliance could be "misleading" and "result in unpredictable pressure and aspersions upon the party against whom the order runs" because "[e]ntry of a declaration 'confirming' the award may be taken to imply that the defendant is in violation of it."  Derwin, 719 F.2d at 491.  But a hypothetical concern for the losing party's "reputation" resulting from judicial confirmation of an arbitral award is a flimsy rationale for denying confirmation.

Third, while the analysis in Derwin touches upon Article III of the Constitution, it cannot be the law that the Constitution requires noncompliance with an award as a condition of confirmation.  Section 9 of the FAA permits summary confirmation without evidence of noncompliance.  Were it the case that Article III

---

[10]  Under Section 13 of the FAA, a confirmed award has the same effect as a judgment of the court.  In some jurisdictions, an unconfirmed award has no collateral estoppel or *res judicata* effect, highlighting the importance of converting the award into a judgment. See, e.g., Scott v. Snelling & Snelling, Inc., 732 F. Supp. 1034, 1039 (N.D. Cal. 1990).

required evidence of noncompliance as a precondition to confirmation, because without

such noncompliance there is no case or controversy, then Section 9 of the FAA would on

its face be unconstitutional.  No court has ever so held, and such a conclusion would

clearly conflict with recent Supreme Court jurisprudence in this area.[11]

Moreover, and importantly, as the <u>Derwin</u> court itself made clear, refusing

confirmation absent evidence of noncompliance only makes sense where, as in

Massachusetts, there is an indefinite or very long statute of limitations to confirm an

award.[12]  Indeed, the court felt that it was "most compelling" to conclude that "[i]f there

were a strict limitations period for actions to confirm, one could reasonably argue that,

even in the absence of any current dispute over an award's effect, a party should be

entitled to obtain judicial confirmation in order to protect its rights under the award from

lapse due to the passage of time."  <u>Id.</u> at 492.[13]  This action is pending in New York,

---

[11]  Indeed, the Supreme Court recently held that an application for an order confirming an arbitration award "will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court."  <u>See</u> <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 128 S. Ct. 1396, 1402 (2008) ("Under the terms of § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.").  In reviewing the command of § 9, the Supreme Court emphasized that "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."  <u>Id.</u> at 1405.

[12]  The court noted that the Massachusetts limitations period was either indefinite, 20 years or 6 years, and opted not to decide that issue, although the opinion seems to indicate that the court believed the period to be indefinite.  <u>Derwin</u>, 719 F.2d at 490 n.6.

[13]  <u>See</u> <u>also</u> <u>United Steel Workers AFL-CIO v. Murphy Oil USA, Inc.</u>, 541 F. Supp. 2d 824, 832 (E.D. La. 2007) ("In most cases after an award is issued, it would be hoped that resort to an enforcement action in federal court will not be necessary.  But if courts applied a shorter statute of limitations … successful parties to arbitration would be forced, often unnecessarily, to run to the courts for enforcement of the award whenever there was even a slight doubt the other party would fulfill its obligations under the award … <u>With a brief limitations period, rather than attempting to work with the other party, a successful party would instead find it prudent to quickly commence litigation.</u>

where the statute of limitations is one year from delivery of the award.[14]  Hence, even

accepting Derwin's questionable analysis as sound, the difference between

Massachusetts's infinite (or very long) limitations period and New York's one-year

period would require this Court to grant confirmation "in order to protect its rights under

the award from lapse due to the passage of time."[15]  Id.

        Four of the other cases cited by the NFL are expressly based on Derwin.[16]

These cases are thus likewise flawed and, being completely contrary to the law of this

---

Conversely, a displeased party would need only feign cooperation and wait out a brief period in order to avoid fully complying with the award") (emphasis added).

[14]  It is a "well established rule that state statutes of limitations govern actions brought under LMRA section 301."  Harry Hoffman Printing, Inc. v. Graphic Cmmc'ns, Int'l Union, Local 261, 912 F.2d 608, 612-13 (2d Cir. 1990).  The appropriate statute of limitations for petitions to confirm arbitration awards is C.P.L.R. § 7510, which provides that a petition to confirm an arbitration award is timely if filed within one year of delivery of the award.  New York's Health & Human Serv. Employees Union, 1199/SEIU, AFL-CIO v. Grossman, No. 02 CV 6031 (SLT) (JMA), 2007 WL 2907386, at *6 (E.D.N.Y. Oct. 3, 2007).

[15]  The Derwin court opined that "[t]he more economical approach is to allow a substantial, or even unlimited, time period for filing actions to confirm (and enforce) awards …"  Derwin, 719 F.2d at 492.  The New York legislature, however, has decided otherwise, imposing a one-year period.  Congress has also implicitly rejected the Derwin court's analysis, by not creating a lengthy federal statute of limitations as exists in Massachusetts, but by allowing federal courts to borrow state statutes of limitations which are, as in New York, often very short.  The court in Derwin seems to apply a "policy" analysis that is not only more suitable for a legislature than a court, and in fact embraces a policy in conflict with the statutes of many states that, unlike Massachusetts, have not granted infinite or extremely long limitations periods for confirmation actions.

[16] Steris Corp. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 489 F. Supp. 2d 501, 515 (W.D. Penn. 2007), Local 2414 of the Mine Workers of America v. Consolidated Coal Co., 682 F. Supp. 399 (S.D. Ill. 1988), Bethlehem Steel Corp. v. United Steelworkers of America, 1991 WL 338553 (D. Md. Sept. 18, 1991), and Yellow Freight Systems, Inc. v. Local Union 710, International Brotherhood of Teamsters, AFL-CIO, 1994 WL 665086, at *2 (N.D. Ill. Nov. 16, 1994), all cited on pp. 6 or 9 of the NFL's brief, expressly adopt Derwin, without any discussion of the contrary approach followed in New York, or any analysis of how Derwin is expressly predicated on Massachusetts's infinite limitations period.

circuit, are without effect.[17]  The remainder of the cases cited by the NFL simply state

basic legal principles about justiciability, but none of those cases are relevant to the

dispute at hand.[18]

    The law in this area is settled in this Circuit:  confirmation of labor

arbitration awards under Section 301 is a summary procedure, and the parties'

compliance with the award is irrelevant to confirmation.  Consequently, the NFLPA's

Petition should be granted, and the NFL's motion to dismiss should be denied.

### III. THE NFL'S CURRENT POSITION THAT NON-COMPLIANCE IS A PRECONDITION OF CONFIRMATION UNDER SECTION 301 IS COMPLETELY INCONSISTENT WITH THE POSITION IT SUCCESSFULLY ASSERTED IN A PRIOR CONFIRMATION PETITION

    Putting aside that, as demonstrated in Points I and II, supra, the NFL's

legal position is frivolous, it is worth noting that it is also completely inconsistent with

---

[17]  The one court in this circuit to analyze Derwin has severely limited its application.  In Ono Pharmaceutical Co., 2003 WL 22481379, at *3, the court applied the familiar rule in this circuit that confirmation is appropriate regardless of the parties' compliance with the award.  The defendant, Cortech, urged the court to apply Derwin, as does the NFL here.  Id. at *3 n.42.  The court did not recognize the "limiting standard" of Derwin, but noted that even under Derwin's analysis, confirmation is proper "'where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand.'"  Id., quoting Derwin, 719 F.2d at 491.  The court held that the second prong would be satisfied so long as the award "explicitly governs matters of ongoing dispute between the parties."  Id.  This modest standard would be easily met here.  The Award is designed to be prospective, and it will explicitly govern all future workers' compensation matters between players and NFL Clubs.

[18]  The NFL also relies upon Montgomery Ward & Co., Inc. v. Warehouse, Mail Order, Office, Technical & Professional Employees Union, 911 F. Supp. 1094 (N.D. Ill. 1995), but that case did not involve confirmation, and hence, is utterly irrelevant.  Montgomery Ward involved "a rather unusual factual scenario:  namely, the party that prevailed at arbitration asks this Court to vacate what can only be described as unfavorable dicta in an arbitration decision."  Id. at 1101.  The court addressed this "question of first impression" (id.) and ultimately ruled that a prevailing party cannot bring such an action.  That decision is irrelevant to the situation here, to wit, a routine application to confirm an award.

the NFL's prior legal position in an identical context.  In <u>In the Matter of the National Football League Players Association and The National Football League Management Council, The Dallas Cowboys and The Houston Texans</u>, Civ. No. 3-05-2298G (N.D. Tex. Nov. 23, 2005), the NFL and NFLPA (both through the same counsel appearing here) filed on November 22, 2005 a "Joint Petition" under Section 301 of the LMRA and Section 9 of the FAA to confirm an arbitral award dealing with workers' compensation benefits under Texas' statutory regime ("<u>TWC</u> Petition").  Lo Decl. ¶ 5, Exh. D.  Neither party had repudiated or breached the award; to the contrary, the NFL and NFLPA jointly sought confirmation, and the Northern District of Texas granted confirmation on November 23, 2005.  <u>Id.</u>, Exhs. D & E.

The <u>TWC</u> Petition, prepared by the NFL, was brought under both Section 301 and "pursuant to the" FAA.  <u>Id.</u>, Exh. D at ¶¶ 4, 6.  The reason confirmation sought was as follows:  "Because compliance with the arbitrator's award could be interpreted as contrary to the provisions of the Texas Workers' Compensation Election [of remedies] Regulations, the parties jointly seek a judgment by this Court confirming its holding."  <u>Id.</u>, Exh. D at ¶ 19.  The same of course is true here.  The Award declares that the CBA and Standard Player Contract pre-empt state's laws allowing for employers to offset post-injury salary from workers' compensation benefits.

The NFL's flip-flop is obvious.  In <u>TWC</u>, the NFL urged confirmation in the absence of any evidence of noncompliance with the award.  Now, in total contrast, the NFL contends that noncompliance is a precondition to confirmation.  The NFL's current reasoning would require the absurd conclusion that its own <u>TWC</u> Petition was unconstitutional and violative of Section 301.

The NFL has also flip-flopped with respect to its position regarding the applicability of the FAA. The NFL's initial pre-motion letter to the Court dated May 9, 2008, sought dismissal of this Petition on the grounds that it was improperly brought under the FAA, and not the LMRA. The NFL's position was patently frivolous.[19] In any event, at the pre-motion hearing, the NFLPA's counsel made clear that the NFL had previously filed the TWC Petition, which as in this case, sought confirmation under Section 301 pursuant to the FAA's summary procedures. See Lo Decl. ¶ 6, Exh. F at 8:2-9:2. Indeed, the jurisdictional and venue provisions of the TWC Petition and the initial Petition are identical, the latter having been copied from the former. Id. The NFL sought to explain at the conference why its FAA argument in this case was not inconsistent with its own use of the FAA's summary confirmation procedures in TWC, as follows: "there's a split in the circuits and, unlike the Second Circuit, I believe that the Fifth Circuit does not hold that the FAA is not applicable to actions for enforcement brought pursuant to 301, whereas the Second Circuit has squarely held that it is prohibited under the FAA." Id., Exh. F at 12:22-13:3. The NFL's statement of the law was simply wrong.

---

[19] The initial Petition made clear, on p. 2, that the action was brought "pursuant to 29 U.S.C. § 1331, in that it arises under Section 301 of the [LMRA]." The initial Petition also stated that it was "brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 9," but the second sentence did not void the first one. The NFL simply misread the Petition, excising from its argument the explicit language therein making clear that confirmation was, indeed, sought under Section 301. As the Court noted at the pre-motion conference, "And they [the NFL] skipped the first sentence" referencing Section 301. See Lo Decl. ¶ 6, Exh. F at 7:16. Nonetheless, the NFL still contends, though preposterously, that the initial Petition was improperly brought pursuant to the FAA. See NFL Br. at 4. The NFLPA has since filed an Amended Petition, making clear that it is filed solely under Section 301, but, in accordance with settled law, requesting that the Court borrow the summary confirmation procedures set forth in the FAA.

The law in the Second and Fifth Circuits is the same: the FAA provides guidance in Section 301 proceedings, but does not govern them.[20]

In short, it is unmistakably true that the NFL's position in this case is directly contrary to its position in TWC, both in terms of confirmability in the absence of any noncompliance, as well as the usefulness and applicability of Section 9 of the FAA in proceedings to confirm awards under Section 301 of the LMRA. The NFL appears to be playing fast and loose with the law.

## IV.    THE AWARD IS FINAL AND BINDING

The NFL's final dodge is to argue that the Award should not be confirmed because it is not "final and binding," but this too is completely wrong. Pursuant to both the CBA and the Letter Agreement, the Award will go into effect during the last year of the CBA, which, as noted by the NFL, is the 2010 season. The Award itself is final, leaving for no further proceedings. There is nothing left for the arbitrator to do. Indeed, the 2006 Letter Agreement trumpeted by the NFL makes clear, on the first page, that the Arbitrator is to "finalize his opinion and award," which he did. See Eisenstein Decl. Exh. 1. (emphasis added). So much for the NFL's "finality" argument.[21]

---

[20]  Compare Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812, Int'l Bhd. of Teamsters, 242 F.3d 52, 54-55 (2d Cir. 2001) with Brown v. Witco Corp., 340 F.3d 209, 217-28 (5th Cir. 2003) and Houston Ref. LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Civ. No. H-07-2560, 2005 WL 6147965, at *4 (S.D. Tex. June 4, 2005).

[21]  Moreover, the 2006 Letter Agreement makes clear that the agreement "will not be used for any purpose other than to interpret and to apply the specific terms of the SSA and CBA to which they pertain. It may not be used to support or oppose an interpretation of any provisions of the SSA and CBA other than the interpretation expressly resolved by this letter. Eisenstein Decl. Exh. 1. This agreement is being entered into without prejudice to any party's position on any issue other than those specifically resolved here." Under its express terms, therefore, it is inappropriate for the NFL to invoke the letter as a basis to deny confirmation.

In reality, the parties to the CBA have merely agreed to delay the implementation of the Award, but it is final and binding in every respect. It is true, as the NFL suggests, that the parties to the CBA may negotiate a new CBA that would further delay the effect of the Award or even render it void, but absent such a novation, it will under the parties' existing CBA go into effect in 2010. This is no different from an arbitration award requiring one party to make yearly payments to the other: while the payments will occur in the future, the obligation to make them is set. So too here, the Award will not go into effect until the 2010 season, but the obligation to abide by the Award at that time has been established by a final and binding Award. It is ridiculous for the NFL to intimate that the Award is somehow not "final" or "binding," when the parties agreed it was final and binding and would be followed in the final league year.

None of the cases cited on pp. 9-10 of the NFL's brief are even remotely on point. The issue in General Drivers, Warehouseman and Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 518-19 (1963), was whether the determination of the "Committee" constituted an arbitration award, as the collective bargaining agreement in that case did not expressly use the term "arbitration." The Supreme Court held that the trial court should determine whether the Committee's decision constituted a final arbitration award, and if so, confirm it. The quote taken completely out of context on p. 9 of the NFL's brief simply means that if the district court held that no cognizable arbitration took place, the award should not be confirmed.

General Drivers is thus irrelevant, except to this extent. The Supreme Court made clear that "if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under Section

- 22 -

301." Id. at 519.  The court emphasized that "the policy of the Labor Act 'can be

effectuated only if the means chosen by the parties for settlement of their differences

under a collective bargaining agreement is given full play.'"  Id.  Here, the "means

chosen by the parties" to resolve these issues was to have the decision finalized by

Arbitrator Das but delivered to the parties only after the new CBA went into effect.  The

parties further agreed to delay implementation of Arbitrator Das's final Award until the

final league year of the CBA.  That is the parties' deal, and since that is the "chosen

instrument" for resolving this arbitration, General Drivers commands confirmation.[22]

  Finally, denying confirmation here would be unjust.  In the event this

Court denies confirmation now, the NFLPA may lose the ability to seek confirmation

---

[22]  The remaining cases cited by the NFL are equally inapposite.  Service Employees Int'l
Union, Local 32BJ, AFL-CIO v. Stone Park Associates, L.L.C., 326 F. Supp. 2d 550, 555
(S.D.N.Y. 2004), see NFL Br. at 9, does mention the words "final and binding" in
passing, but the case deals with the proper rate of prejudgment interest and has no
relevance here.  The quote on p. 9 of the NFL's brief from Comer v. American
Federation of State, County and Municipal Employees, 272 F. Supp. 2d 332 (S.D.N.Y.
2003), cited at NFL Br. 9-10, is accurate enough, however, the case did not even involve
confirmation of an arbitral award and is in no way relevant to the case at bar.  Gary v.
Roadway Express, 941 F. Supp. 94, 96-97 (N.D. Ill. 1996), cited at NFL Br. at 10, merely
restates the Derwin view, supra, that labor awards cannot be confirmed absent non-
compliance with the award, but as explained in Section II of the Argument, supra, that is
simply not the law in this circuit.  And, in Ernest Disabatino & Sons, Inc. v. Metropolitan
Regional Council of Carpenters, 2005 WL 885165, at *3 (D. Del. Feb. 28, 2005), cited at
NFL Br. at 10, the arbitrator had bifurcated the arbitration into liability and damages
phases, and the court merely held that the award was not "final" until both phases were
complete -- an unremarkable holding totally irrelevant to the issue at bar.

later, in 2010, because of the one-year statute of limitations.[23]  Even under the cases cited

by the NFL, this severe prejudice warrants confirmation at the present time.[24]

<u>**CONCLUSION**</u>

        For the foregoing reasons, the NFLPA respectfully requests that this Court

deny the NFL's motion to dismiss and grant the NFLPA's Petition.


Dated:  August 4, 2008               Respectfully submitted,


                                         /s/ Adam J. Kaiser
                        Jeffrey L. Kessler (JL 7891)
                         jkessler@dl.com
                        Adam J. Kaiser (AK 2122)
                         akaiser@dl.com
                        Michelle Lo (ML 7091)
                         mlo@dl.com
                        DEWEY & LEBOEUF LLP
                        1301 Avenue of the Americas
                        New York, New York 10019-6092

                        Attorneys for the National Football League
                        Players Association

---

[23]  Although it would certainly be the NFLPA's position -- in the event this Court denies confirmation on the basis that the Award is not "final and binding" -- that the statute of limitations could not even begin to run until the final league year under the CBA, when the Award will go into effect.

[24]  <u>See</u> <u>Derwin</u>, 719 F.2d at 492 ("[i]f there were a strict limitations period for actions to confirm, one could reasonably argue that, even in the absence of any current dispute over an awards effect, a party should be entitled to obtain judicial confirmation in order to protect its rights under the award from lapse due to the passage of time"); <u>see</u> <u>also</u> <u>United Steel Workers AFL-CIO v. Murphy Oil USA, Inc.</u>, 541 F. Supp. 2d at 832 (E.D. La. 2007) ("if courts applied a shorter statute of limitations … successful parties to arbitration would be forced, often unnecessarily, to run to the courts for enforcement of the award whenever there was even a slight doubt the other party would fulfill its obligations under the award … a displeased party would need only feign cooperation and wait out a brief period in order to avoid fully complying with the award").

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing NFLPA's

Memorandum of Law (1) In Further Support of Its Amended Petition to Confirm

Arbitration Award And (2) In Opposition to the NFL's Motion to Dismiss Petition was

served this 4th day of August, 2008 via the ECF filing system (registered users) on the

following:

        Daniel L. Nash
        Stacey R. Eisenstein
        Akin, Gump, Strauss, Hauer & Feld, LLP
        Robert S. Strauss Building
        1333 New Hampshire Avenue, N.W.
        Washington, DC 20036

        Sean E. O'Donnell
        Akin, Gump, Strauss, Hauer & Feld, LLP
        590 Madison Avenue
        New York, NY  10022-2524


                                  /s/
                                Michelle Lo