**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**IN THE MATTER OF THE
ARBITRATION BETWEEN**

| | |
|---|---|
| **THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION On Behalf of Steve Harvey, David Alexander and Marlon Kerner** | Civil Action No. 08-cv-3658 (PAC) |
| **and** | SDNY ECF FILING |
| **THE NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL On Behalf of THE BUFFALO BILLS and THE NEW YORK JETS** | |

**THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION On Behalf of
Charles Smith, Dusty Renfro, Michael Swift
and Jason Peter**

**and**

**THE NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL On Behalf of
THE CAROLINA PANTHERS**

**DECLARATION OF MICHELLE LO IN SUPPORT OF NFLPA'S
MEMORANDUM OF LAW (1) IN FURTHER SUPPORT OF ITS AMENDED
PETITION TO CONFIRM ARBITRATION AWARD AND (2)
IN OPPOSITION TO THE NFL'S MOTION TO DISMISS**

Michelle Lo hereby declares as follows:

1.    I am an associate at Dewey & LeBoeuf LLP, counsel for the National

Football Players Association ("NFLPA"), and am admitted to practice in this Court.  I

submit this declaration, of my own personal knowledge, in support of the NFLPA's

Memorandum of Law (1) In Further Support of Its Amended Petition to Confirm Arbitration Award and (2) In Opposition to the NFL's Motion to Dismiss Arbitration.

2.      Attached hereto as Exhibit A is a true and correct copy of Article XII ("Injury Protection") of the 2006-2012 NFL Collective Bargaining Agreement ("CBA").

3.      Attached hereto as Exhibit B is a true and correct copy of Article LIV ("Workers' Compensation") of the CBA.

4.      Attached hereto as Exhibit C is a true and correct copy of an article from the SportsBusiness Daily entitled "NFL Owners Feel No Choice But To Opt Out Of Current CBA Deal," published on May 20, 2008.

5.      Attached hereto as Exhibit D is a true and correct copy of the Joint Petition to Confirm Arbitration Award in In the Matter of the National Football League Players Association and The National Football League Management Council, The Dallas Cowboys and The Houston Texans, filed by the NFL and NFLPA on November 22, 2005 in the Northern District of Texas.  A true and correct copy of the Order Granting Joint Petition to Confirm Arbitration Award, entered by the U.S. District Court for the Northern District of Texas on November 23, 2005, is attached hereto as Exhibit E.

6.      Attached hereto as Exhibit F is a true and correct copy of the transcript of the pre-motion hearing before this Court on June 9, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2008 in New York, New York.


_____
                /s/
            Michelle Lo

# EXHIBIT A

# NFL
# COLLECTIVE
# BARGAINING
# AGREEMENT
## 2006-2012

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
THE NFL MANAGEMENT COUNCIL
AND
THE NFL PLAYERS ASSOCIATION
March 8, 2006



**NFL PLAYERS**
ASSOCIATION

# ARTICLE XII
# INJURY PROTECTION

**Section 1. Qualification:** A player qualifying under the following criteria will receive an injury protection benefit in accordance with Section 2 below:

(a)     The player must have been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his Club's last game of the season of injury, as certified by the Club physician following a physical examination after the last game; or the player must have undergone Club-authorized surgery in the off-season following the season of injury; and

(b)     The player must have undergone whatever reasonable and customary rehabilitation treatment his Club required of him during the off-season following the season of injury; and

(c)     The player must have failed the pre-season physical examination given by the Club physician for the season following the season of injury because of such injury and as a result his Club must have terminated his contract for the season following the season of injury. This pre-season physical may be given by the Club physician prior to the beginning of pre-season camp, so long as such fact is clearly communicated to the player at the time of the physical exam. The past understanding of the parties concerning a Club releasing a player who otherwise qualifies under (a) and (b) above prior to the pre-season physical examination will apply during the term of this Agreement (see Appendix B).

**Section 2. Benefit:** A player qualifying under Section 1 above will receive an amount equal to 50% of his contract salary for the season following the season of injury, up to a maximum payment of $275,000, if he is released pursuant to Section 1(c) above in the 2006-08 League Years unless he has individually negotiated more injury protection or a larger guaranteed salary into his contract. This amount shall be increased to $300,000 in the 2009 League Year and, if they are Uncapped Years, in the 2010-11 League Years; to $325,000 in the 2010-11 League Years, if they are Capped Years; and to $350,000 in the 2012 League Year. A player will receive no amount of any contract covering any season subsequent to the season following the season of injury, except if he has individually negotiated injury protection into that contract. The benefit will be paid to the player in equal weekly installments commencing no later than the date of the first regular season game, which benefit payments will cease if the player signs a contract for that season with another Club. A player will not be entitled to such benefit more than once during his playing career in the NFL, and such benefit shall be reduced by any salary guaranteed to the player for the season following the season of injury.

36

Article XII, Injury Protection

***Section 3*. Disputes:** Any dispute under this Article will be processed under Article IX (Non-Injury Grievance). In any grievance in which the NFLPA or a player is claiming an injury protection benefit, the NFLPA or the player may contend that the player should not have passed the pre-season physical examination given by a Club following the season of a player's injury. In any such grievance, the NFLPA or the player may introduce evidence from a physician selected by and paid for by the player regarding the player's physical condition at the time of the Club's pre-season physical exam, provided that such physician conducted his examination of the player within fourteen days of the player's contract termination, but no later than the date of the first pre-season cutdown. Any such evidence will be considered with the evidence from the Club physician, and the arbitrator shall give no special deference to the evidence presented by either physician. If the NFLPA prevails in such a grievance, then the requirements of Section 1(c) above shall be deemed to have been satisfied.

37

# EXHIBIT B





# NFL
# COLLECTIVE
# BARGAINING
# AGREEMENT
## 2006-2012

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
THE NFL MANAGEMENT COUNCIL
AND
THE NFL PLAYERS ASSOCIATION
March 8, 2006



**NFL PLAYERS**
A S S O C I A T I O N

# ARTICLE LIV
# WORKERS' COMPENSATION

**Section 1. Benefits:** In any state where workers' compensation coverage is not compulsory or where a Club is excluded from a state's workers' compensation coverage, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its Players. In the event that a Player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.

**Section 2. Rejection of Coverage:** Nothing in this Article is to be interpreted as preventing a Club that has the legal right to do so from rejecting coverage under the compensation law of its state. However, if a Club elects to reject coverage under the compensation law of its state, it must nevertheless guarantee benefits to its Players in the manner provided in Section 1 above. Moreover, any Club may be excluded from those laws if it elects to do so, but any such Club will be obligated to guarantee benefits to its Players in the same manner provided in Section 1 above.

**Section 3. Arbitration:** In any state where a Club (e.g., Miami Dolphins/Florida) has legally elected not to be covered by the workers' compensation laws of that state, the equivalent benefit, if any, to which a Player may be entitled under this Article will be determined under the grievance procedure of Article IX (Non-Injury Grievance).

**Section 4. Workers' Compensation Offset Provisions:** The parties agree that the following provisions shall exclusively govern any and all rights Clubs have with respect to workers' compensation credits or offsets during the remaining Capped Years of this Agreement.

    (i)    **"Dollar-for-Dollar" Credits or Offsets.** No Club shall be entitled to claim or receive any dollar-for-dollar credit or offset for salary, benefits, or other compensation paid or payable to a Player against any award or settlement of workers' compensation benefits, either pursuant to Paragraph 10 of the NFL Player Contract or any provision of state law.

    (ii)    **"Time" Credits or Offsets.** All Clubs are instead entitled only to a "time" credit or offset under Paragraph 10 of the NFL Player Contract or state law, as set forth more specifically in Subsections (A)-(F) below. This "time" credit or offset shall in all cases be expressed or granted as a reduction in the number of weeks of a Player's workers' compensation award or settlement that is attributable to the same period of weeks in which the Player is deemed entitled to salary payments or CBA benefits as described in this Section. The credit or offset shall be at the weekly rate specified under the state workers' compensation law in question. Because the period from the beginning of the regular season to the end of the League Year

Article LIV, Workers' Compensation

(twenty five weeks) is approximately 1.5 times longer than the seventeen week period over which Players receive salary and/or Injury Protection payments, the parties agree that, in calculating the "time" credit or offset as set forth more particularly herein, the Club is entitled to a reduction of 1.5 weeks of a Player's workers' compensation award or settlement for each week during the regular season for which a Player is awarded or executes a settlement agreement for workers' compensation benefits and for the same period of weeks is paid his full Paragraph 5 salary or Injury Protection payments.

(A)  In the case of salary payments pursuant to Paragraph 5 or 9 of the NFL Player Contract, the Club shall be entitled to a reduction of 1.5 weeks of a Player's workers' compensation award or settlement for each week during the regular season in which the Player is physically unable to perform his services under his contract due to an injury he suffers while performing services during that contract year, to a maximum of twenty-five weeks, provided that the Player receives his full salary as set forth in Paragraph 5 of his contract for the period in question. For example, if a Player receives three weeks of Paragraph 5 salary subsequent to an injury that rendered him unable to perform for three games (regardless of whether the payments were made on a weekly or bi-weekly basis), the Club will be entitled to a reduction of 4.5 (= 3 x 1.5) weeks of the Player's workers' compensation award or settlement. As another example, if a Player receives seventeen weeks of Paragraph 5 salary subsequent to an injury that rendered him unable to perform all sixteen games of the regular season (regardless of whether the payments were made on a weekly or bi-weekly basis), the Club will be entitled to a reduction of 25 (= 17 x 1.5) weeks of the Player's workers' compensation award or settlement.

(B)  In the case of Injury Protection payments, a Club shall be entitled to a reduction of 1.5 weeks of a Player's workers' compensation award or settlement for each week from the beginning of regular season to the end of the League Year that the Player receives full Injury Protection payments, to a maximum of twenty-five weeks. For example, if a Player receives the Injury Protection payments for seventeen weeks (regardless of whether the payments were made on a weekly or bi-weekly basis), the Club will be entitled to a reduction of twenty-five weeks of the Player's workers' compensation award or settlement. As another example, if a Player receives Injury Protection payments for three weeks but then signs a contract for that season with another Club such that benefits payments cease, the Club will be entitled to a reduction of 4.5 weeks of the workers' compensation award or settlement. In the event that a Club pays a Player full Injury Protection payments prior to the first regular season game of the League Year, the Club will be entitled to a reduction of 1.5 weeks of the Player's workers' compensation award or settlement for each week during the regular season to the end of the League Year for which the Player's Injury Protection payments are made.

228

(C)    Nothing in this Section 4 shall be interpreted to preclude a Club from receiving the "time" credit or offset set forth in this Section for both salary payments and Injury Protection payments when both payments are made.

(D)    In the event that an Injury Grievance, Injury Protection, injury guarantee, or other arbitrable claim where workers' compensation offsets or credits is at issue and within the jurisdiction of the arbitrator, is settled between the Player and the Club, or in the event that a Club and Player execute an injury-related settlement agreement, the Club shall be entitled to a reduction of 1.5 weeks of a Player's workers' compensation award or settlement for each week that the Player is deemed entitled to receive his full Paragraph 5 salary or Injury Protection payments pursuant to the settlement, to a maximum of twenty-five weeks. The Club and Player shall be required to specify in the written settlement agreement the number of weeks for which the Player is receiving his full Paragraph 5 salary or Injury Protection payments under the settlement so that the appropriate number of weeks of the Player's workers' compensation award or settlement can be reduced. For example, if a Player and a Club settle an Injury Grievance, Injury Protection or injury guarantee claim for a specified period of three weeks, the Club will be entitled to a reduction of 4.5 (= 3 x 1.5) weeks of the Player's workers' compensation award or settlement.

(E)    In the event that an Arbitrator awards Paragraph 5 salary or Injury Protection payments in an Injury Grievance, Injury Protection, injury guarantee, or other arbitrable claim where workers' compensation offsets or credits is at issue and within the jurisdiction of the arbitrator, for the same period of weeks for which a Player has already been awarded workers' compensation benefits or received a workers compensation settlement, the Club shall be entitled to a reduction of 1.5 weeks of the Player's workers' compensation award or settlement for each week the Player is deemed entitled to receive his full Paragraph 5 salary or Injury Protection payments pursuant to the Arbitrator's award. For example, if an Arbitrator awards a Player three weeks of Paragraph 5 salary pursuant to an Injury Grievance award and the Player has already been awarded workers' compensation benefits or received a workers' compensation settlement for that same period, the Arbitrator shall reduce the award by an amount equal to 4.5 (= 3 x 1.5) weeks of workers' compensation benefits.

(F)    Clubs are not entitled to any credit or offset under this Article against any workers' compensation benefits attributable to the period of time after the last League Year for which the Player is entitled to receive salary payments (or, in cases where the Player receives Injury Protection payments, after such period) from the Club, even if the Player's entitlement to such payments is not determined until after the League Year in question. No payment of any of the following may be used by a Club as a basis for claiming any workers' compensation credit or offset under this Article:

229

Article LIV, Workers' Compensation

(1) Signing bonus;

(2) Option bonus;

(3) Roster bonus;

(4) Incentive bonus;

(5) Performance-based pay earned prior to the date of injury (unless, for any period of time in which a Club would otherwise be entitled to a credit or offset pursuant to this Section, the Player's weekly salary would be less than the amount of weekly workers' compensation benefits payable under state law, in which case the performance-based pay could be added by the Club to the Player's Paragraph 5 salary for those weeks in which the Club would be entitled to a credit or offset under this Section);

(6) Deferred compensation (except where the deferred compensation is salary attributable to the weeks for which the Player has been awarded or has executed a settlement agreement for workers' compensation benefits as described in this Section in which case the Club is permitted a credit or offset in the same manner as if the salary was not deferred and instead was paid during the League Year in which the Player was physically unable to perform his services under his NFL Player Contract due to an injury he suffered while performing services during that contract year);

(7) Severance pay; or

(8) Any other form of compensation other than Paragraph 5 salary under the NFL Player Contract or Injury Protection payments under the CBA.

(G) Total and Permanent, Line of Duty and Degenerative Disability Benefits paid pursuant to the Bert Bell/Pete Rozelle NFL Player Retirement Plans and/or related documents are not subject to any credit or offset for workers' compensation benefits, whether or not those benefits are payable during the same period in which the disability payments are payable. Clubs are not entitled to any credit or offset under this Article for any workers' compensation benefits payable to any Player against any payments made to any Player under the Bert Bell/Pete Rozelle NFL Player Retirement Plans

230

and/or related documents; provided, however, that the receipt of such disability payments by the Player shall not affect the Club's right to claim or receive any offsets or credits set forth elsewhere in this Article.

(iii)    **Pending cases**. The parties agree to settle those Players' workers' compensation claims and related cases that were pending or in any stage of appeal as of March 8, 2006, and thereafter in which a Player or former Player has claimed entitlement to workers' compensation benefits on account of an injury or injuries suffered while performing services under a NFL Player Contract and in which a Club is claiming any entitlement to a credit or offset greater than the credit or offset provided herein; all such settlements shall limit credits or offsets as set forth in this Article, regardless of any awards or decisions already entered in any particular case. Clubs specifically reserve the right to maintain any defenses they may have in such pending cases that are unrelated to the offset issue.

(iv)    **Remedies**. If, after March 8, 2006, despite the terms of this Article and the Clubs' obligation to comply with Subsection (iii) and all other provisions of this Article, a state court or other competent authority nevertheless renders a decision or other determination with an outcome inconsistent with the terms of this Section 4, then the Player shall have a right to immediate payment from the Club for the amount of any difference between such outcome and the outcome specified in Subsections (i)-(ii) above. A Player may initiate a claim under this Section by filing a written notice by certified mail or fax with the Management Council and furnishing a copy to the Club involved. The claim shall set forth the name of the matter and jurisdiction in which the improper award was made, the amount of payment requested and the basis for the calculation. The claim must be initiated within forty-five days of either the date of execution of this Agreement or the date of any adverse order (whichever is later); provided, however, that in the event the Player files an appeal of any adverse order, the time for the Player to notify the Club will begin to run from the date the appeal is decided.

(v)    **Time-Offset Fund**. The NFL shall establish a fund which shall bear the cost of additional benefits or associated insurance and related costs (exclusive of professional fees, administrative overhead, penalties or similar costs) incurred by any Club as a direct result of the adoption of this Section 4. The parties shall use their best efforts to ensure that all parties involved including the Clubs and their insurance carriers will implement this Subsection (v) in such a manner as to minimize the costs and expenses associated with this fund.

(vi)    **Disputes**. Any dispute concerning the operation of Section 4 and/or any payments to a Player under Subsection (iv) will be determined under the grievance procedure of Article IX (Non-Injury Grievance).

*Section 5.* **Preservation of Rights**: Beginning as of the Final League Year, the NFLPA and the Clubs preserve their prior positions (i.e., prior to

Article LIV, Workers' Compensation

March 8, 2006) with regard to the applicability and legality of workers' compensation offset provisions under state law, and nothing in this Article shall beginning in the Final League Year prevent any Player from claiming that an offset provision is not legally binding upon him or prevent any Club from asserting that an offset provision (including, but not limited to, a state statute providing a Club with a dollar-for-dollar credit) is legally binding upon a Player.

232

# EXHIBIT C



STREET & SMITH'S
# SportsBusiness DAILY

---

Leagues & Governing Bodies
Published May 20, 2008

---

**NFL Owners Feel No Choice But To Opt Out Of Current CBA Deal**

By Daniel Kaplan, Staff Writer, SportsBusiness Journal



Owners Opt Out Of CBA To Give Upshaw (l), Goodell Time To Negotiate New Labor Deal

NFL team owners today felt they had no choice but to terminate their CBA deal early because the players would not budge from their position otherwise. "What was there to talk about," said one NFL source, when asked why the owners would not try to talk with the NFLPA through the November 8 deadline. The league also did not want a November opt-out to be a midseason distraction. Now that the owners have opted out of the CBA, which presently runs through 2010, real talks can begin on a new deal, said the source. SportsCorp President Marc Ganis, who also is a sports consultant with ties to several NFL teams, said the early opt-out was an effort to give both sides as much time as possible for serious negotiations. Without an opt-out, players would never have given anything back. Since signing the CBA extension in '06, the owners have been complaining about the seven-year deal as too tilted toward the players. The owners had until November 8 to decide whether to shorten the deal to five years, with the last season being one without a salary cap. The 2010 season will be played without a cap unless a new deal is negotiated before then. The NFL said in a statement, "As we have explained to the union, the clubs must spend significant and growing amounts on stadium construction, operations and improvements to respond to the interests and demands of our fans."

**NFLPA REACTION**: NFLPA Exec Dir Gene Upshaw this morning on Sirius Satellite Radio said of receiving notification of the decision from NFL Commissioner Roger Goodell, "My response to his e-mail was very simple: 'What a surprise.' ... When we negotiated this deal we had two stop points that you could decide to terminate -- either side. Obviously the owners have decided to take this termination early. We expected it. But it means that there is football through 2010, not through 2012. And it also means that, as they say during the Draft, we're on the clock. That's basically what it means."

# EXHIBIT D



ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FILED

NOV 2 2 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE MATTER OF §
THE NATIONAL FOOTBALL LEAGUE §
PLAYERS ASSOCIATION §
§
§
§
§
 and §
§
 §
THE NATIONAL FOOTBALL LEAGUE §
MANAGEMENT COUNCIL, §
THE DALLAS COWBOYS, and §
THE HOUSTON TEXANS §

Civil Action No.
**3-05 CV - 2 2 9 8 G**

## JOINT PETITION TO CONFIRM ARBITRATION AWARD

    This Petition, brought jointly by the parties, seeks confirmation of an arbitration award rendered pursuant to a collectively-bargained grievance procedure and the entry of a judgment in conformity with the arbitration award.

<h2 style="text-align:center">I.    <u>PARTIES AND JURISDICTION</u></h2>

    1.    The National Football League Management Council ("NFL Management Council") is the sole and exclusive bargaining representative of present and future employer member clubs of the National Football League ("NFL").

    2.    The Dallas Cowboys ("Cowboys") and Houston Texans ("Texans") are two of the NFL's member clubs.

    3.    The National Football League Players Association ("NFLPA") is a labor organization certified by the National Labor Relations Board as the exclusive bargaining representative of all NFL Players. The NFLPA regularly represents players employed in this judicial district for the purposes of collective bargaining.

**JOINT PETITION TO CONFIRM ARBITRATION AWARD – Page 1**

4.      This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331, in that it arises under Section 301 of the Labor Management Relations Act, ("LMRA") 29 U.S.C. § 185.

5.      Venue is proper in this Court under 28, U.S.C. § 1391 and 29 U.S.C. § 185.

6.      This petition is brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 9.

## II.      BACKGROUND

7.      The parties are bound by a Collective Bargaining Agreement ("NFL CBA") negotiated between the NFL Management Council, on behalf of the NFL clubs, and the NFLPA, on behalf of all NFL players. *See* NFL CBA (relevant provisions attached hereto as Ex. A).

8.      The NFL CBA contains an arbitration provision which mandates that all disputes between the parties involving the interpretation of, application of, or compliance with the NFL CBA be submitted to final and binding arbitration before a mutually selected arbitrator. *See* Ex. A, Art. IX, §§ 1, 6, & 8. Under the terms of the NFL CBA, a grievance may be initiated by a player, a member club, the NFL Management Council, or the NFLPA by filing a written notice to the opposing parties. *See id.* at §§ 2 & 3. If a grievance is not resolved after it has been filed and answered, either party may appeal the grievance and the dispute is submitted to an NFL arbitrator for final resolution. *See id.* at § 4.

## III.      FACTS

9.      In 1991, the Texas Legislature enacted Texas Labor Code § 406.095. This provision, lobbied for by the Houston Oilers, a predecessor member club of the NFL (now the Tennessee Titans), pertains to workers' compensation benefits for certain professional athletes.

10.      Texas Workers' Compensation Election Law, title 28 § 112.401, promulgated pursuant to Section 406.095, requires professional athletes to elect to receive either statutory

**JOINT PETITION TO CONFIRM ARBITRATION AWARD – Page 2**

workers' compensation benefits or equivalent benefits available under the athlete's contract or collective bargaining agreement.

11.     Following the enactment of the Texas Workers' Compensation Election Regulations, the Cowboys and the Texans have provided injured players with a workers' compensation election form.

12.     On July 15, 2004, the NFLPA filed a grievance against NFLMC, the Texans and the Cowboys, claiming that the use of these election forms violates the NFL CBA by requiring players to waive collectively bargained for injury benefits.

13.     The parties could not resolve the dispute. Thus, the case proceeded to arbitration pursuant to the requirements set out in the NFL CBA.

14.     An arbitration hearing was held on December 22, 2004 before Shyam Das ("Arbitrator Das"), an NFL Arbitrator. The arbitration hearing took place in Dallas, Texas.

15.     On May 24, 2005, Arbitrator Das issued a written final award ("Award"). *See* Arbitrator Das' Opinion and Award (attached as Ex. B).

16.     In his decision, Arbitrator Das acknowledged that the Texas Workers' Compensation Regulations require the Texas clubs make a workers' compensation election. Nevertheless, the Arbitrator concluded that application of the Texas Workers' Compensation Law could result in a player waiving collectively-bargained for rights. Accordingly, the Arbitrator held that the Texas Workers' Compensation Law was preempted by federal labor law and the NFL CBA. *See* Ex. B at 22.

17.     The Arbitrator's award directed the Cowboys and Texans "to cease and desist from requiring injured players to make an election – or providing them with forms that require

**JOINT PETITION TO CONFIRM ARBITRATION AWARD – Page 3**

them to make an election – between receiving general injury-related benefits guaranteed to them in the CBA and state workers' compensation benefits." *Id.* at 22.

18.     Under the terms of the NFL CBA, Arbitrator Das' decision constitutes the "full, final, and complete disposition of the grievance, and will be binding upon the Players(s) and Club(s) involved and the parties to the Agreement." Ex. A, Art. IX, § 8.

19.     Because compliance with the arbitrator's award could be interpreted as contrary to the provisions of Texas Workers' Compensation Election Regulations, the parties jointly seek a judgment by this Court confirming its holding.

## IV.     PRAYER FOR RELIEF

Therefore, the parties respectfully pray that this Court  confirm the Award issued May 24, 2005 and enter a judgment directing the Dallas Cowboys and Houston Texans to cease and desist from requiring injured players to make an election – or providing them with forms that require them to make an election – between receiving general injury related benefits guaranteed to them in the CBA and state workers' compensation benefits.

Respectfully submitted,

Jeffrey L. Kessler
**DEWEY BALLANTINE LLP**
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone No. (212) 259-8050
Facsimile No. (212) 259-6333


_[signature]_
Elizabeth Guffy
State Bar No. 08592525
**DEWEY BALLANTINE LLP**
401 Congress Avenue, Suite 3200
Austin, TX 78701
Telephone No.:  (512) 226-0450
Facsimile No.:  (512) 226-0333

*COUNSEL FOR THE NATIONAL
FOOTBALL LEAGUE PLAYERS
ASSOCIATION*

Daniel L. Nash
Bar No. 375982 (District of Columbia)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone No. (202) 887-4067
Facsimile No. (202) 887-4288


_[signature]_
Marcia N. Jackson
State Bar No. 24008411
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Telephone No. (214) 969-2800
Facsimile No. (214) 969-4343

*COUNSEL FOR NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL, THE DALLAS
COWBOYS, AND THE HOUSTON TEXANS*

**JOINT PETITION TO CONFIRM ARBITRATION AWARD – Page 5**

RECYCLED ⊕
80000 SERIES
30% P C W



# ARTICLE IX
# NON-INJURY GRIEVANCE

**Section 1. Definition**: Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement, and except wherever the Settlement Agreement provides that the Special Master, Impartial Arbitrator, the Federal District Court or the Accountants shall resolve a dispute.

**Section 2. Initiation:** A grievance may be initiated by a player, a Club, the Management Council, or the NFLPA. A grievance must be initiated within forty-five (45) days from the date of the occurrence or non-occurrence upon which the grievance is based, or within forty-five (45) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

**Section 3. Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail or fax with the Management Council and furnishing a copy of such notice to the Club(s) involved; a Club or the Management Council may initiate a grievance by filing written notice by certified mail or fax with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA. The party to whom a non-injury grievance has been presented will answer in writing by certified mail or fax within seven (7) days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or Club(s) involved and the NFLPA or the Management Council as may be applicable.

**Section 4. Appeal:** If a grievance is not resolved after it has been filed and answered, either the player(s) or Club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken, and either the NFLPA or

22

the Management Council as may be appropriate. If the grievance involves a suspension of a player by a Club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within seven (7) days of the filing of the grievance. In addition, the NFLPA and the Management Council will each have the right of immediate appeal and hearing within seven (7) days with respect to four (4) grievances of their respective choice each calendar year. The arbitrator(s) designated to hear such grievances will issue their decision(s) within five (5) days of the completion of the hearing. Prehearing briefs may be filed by either party and, if filed, will be exchanged prior to hearing.

**Section 5. Discovery:** No later than ten (10) days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the dispute. Failure to submit such documents, reports and records no later than ten (10) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it desires into evidence, except that relevant documents submitted to the opposing party less than ten (10) days before the hearing will be admissible provided that the proffering party and the custodian(s) of the documents made a good faith effort to obtain (or discover the existence of) said documents or that the document's relevance was not discovered until the hearing date. In the case of an expedited grievance pursuant to Section 4, such documentary evidence shall be exchanged on or before two (2) days prior to the hearing unless the arbitrator indicates otherwise.

**Section 6. Arbitration Panel:** There will be a panel of four (4) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties will designate the Notice Arbitrator within ten (10) days of the execution of this Agreement. In the event of a vacancy in the position of Notice Arbitrator, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. If the parties are unable to agree on a new arbitrator within thirty (30) days of any vacancy, the Notice Arbitrator shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. With-

23

Article IX, Non-Injury Grievance

in fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

*Section 7.* **Hearing:** Each arbitrator will designate a minimum of twelve (12) hearing dates per year, exclusive of the period July 15 through September 10 for non-expedited cases, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for such ensuing period, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date in the Club city unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, and subject to Section 5, any evidence relevant to the grievance. All hearings will be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call. If either party requests post-

24

hearing briefs, the parties shall prepare and simultaneously submit briefs except in grievances involving non-suspension Club discipline where less than $25,000 is at issue, in which cases briefs will not be submitted. Briefs must be submitted to the arbitrator postmarked no later than sixty (60) days after receipt of the last transcript.

**Section 8. Arbitrator's Decision and Award**: The arbitrator will issue a written decision within thirty (30) days of the submission of briefs, but in no event shall he consider briefs filed by either party more than sixty (60) days after receipt of the last transcript, unless the parties agree otherwise. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell/Pete Rozelle NFL Player Retirement Plan, or an order of compliance, with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XIII (Committees), Section 1(c). In the event the arbitrator finds liability on the part of the Club, he shall award interest beginning one year from the date of the last regular season game of the season of the grievance. The interest shall be calculated at the one-year Treasury Note rate published in the Wall Street Journal as of *February* 1 (or the next date published) of each year, and such rate shall apply to any interest awarded during each such subsequent twelve (12) month period.

*\*Extension Agreement 1/8/02*

**Section 9. Time Limits**: Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon in writing, either the player, the NFLPA, the Club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

**Section 10. Representation**: In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a Club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

RECYCLED ♻
80000 SERIES
30% P C W

SHYAM DAS, ARBITRATOR

In the Matter of Arbitration )
Between )
 )
 )                              ARBITRATOR'S OPINION
 )                                  AND AWARD
THE NATIONAL FOOTBALL LEAGUE )
PLAYERS ASSOCIATION )
 )
 )
 and )
 )                              May 24, 2005
 )
THE NATIONAL FOOTBALL LEAGUE )
MANAGEMENT COUNCIL, On Behalf of )
THE DALLAS COWBOYS and )
THE HOUSTON TEXANS )

Appearances

For the NFL Players Association:

        Richard A. Berthelsen, Esq.
        Jeffrey L. Kessler, Esq.
        David G. Feher, Esq.
        David Greenspan, Esq.

For the NFL Management Council:

        Dennis L. Curran, Esq.
        Lisa F. Lazarus, Esq.
        Daniel L. Nash, Esq.
        Gregory W. Knopp, Esq.

<u>BACKGROUND</u>　　　　　　　NFLPA/NFL
　　　　　　　　　　　　　　　　　　Texas Clubs

　　　　This grievance was filed by the NFLPA on July 15,
2004.  The basis for the grievance is set forth as follows:

> The NFLPA hereby files a non-injury
> grievance against the Dallas Cowboys,
> Houston Texans (collectively, the "Texas
> Clubs") and the NFL Management Council
> pursuant to Article IX of the 1993
> Collective Bargaining Agreement, as amended.
>
> Upon information and belief, the Texas Clubs
> are coercing players who are injured as a
> result of performing services to make an
> election to receive <u>either</u> workers'
> compensation benefits under Texas law <u>or</u>
> other injury-related benefits provided for
> under the CBA.  Further, upon information
> and belief, the Texas Clubs are threatening
> to withhold injured players' CBA benefits
> unless the injured player makes such an
> election.
>
> The Texas Clubs' practice of compelling
> players to make a choice to receive either
> workers' compensation benefits or CBA injury
> benefits violates the terms of the CBA which
> guarantee players <u>both</u> types of benefits.
> *See e.g.* CBA, Article XII (Injury
> Protection), Article XLIV (Players' Rights
> to Medical Care and Treatment), Article LIV
> (Workers' Compensation), Article XLVII
> (Retirement Plan), Article LI (Supplemental
> Disability Benefits), App. C. (NFL Player
> Contract).  A player cannot waive·his rights
> to these benefits under the CBA nor can an
> NFL Club unilaterally revoke such guaranteed
> benefits.  *See id.*, Article II (Governing
> Agreement), Article III (Scope of
> Agreement).  To the extent that the Texas
> Clubs are purporting to rely upon Texas
> Admin. Code, title 28, §112.401, the NFLPA's
> position is that such a state law is

3                               NFLPA/NFL
                                Texas Clubs

        The Texas Workers' Compensation Act includes the
following provisions (Tex. Labor Code §§406.002 and 406.095):

        § 406.002.  Coverage Generally Elective

            (a) Except for public employers and as
        otherwise provided by law, an employer may
        elect to obtain workers' compensation
        insurance coverage.

            (b) An employer who elects to obtain
        coverage is subject to this subtitle.

                        *       *       *

        § 406.095.  Certain Professional Athletes

            (a) A professional athlete employed
        under a contract for hire or a collective
        bargaining agreement who is entitled to
        benefits for medical care and weekly
        benefits that are equal to or greater than
        the benefits provided under this subtitle
        may not receive benefits under this subtitle
        and the equivalent benefits under the
        contract or collective bargaining agreement.
        An athlete covered by such a contract or
        agreement who sustains an injury in the
        course and scope of the athlete's employment
        shall elect to receive either the benefits
        available under this subtitle or the
        benefits under the contract or agreement.

            (b) The commission by rule shall
        establish the procedures and requirements
        for an election under this section.


        Rule 112.401 of the Texas Administrative Code
provides:

§ 112.401.  Election of Coverage by Certain
Professional Athletes

(a) A professional athlete employed by a
franchise with workers' compensation
insurance coverage and subject to the Texas
*Labor Code, § 406.095,* shall elect to
receive either the benefits available under
the Act or the equivalent benefits available
under the athlete's contract or collective
bargaining agreement.  The election shall be
made not later than the 15th day after the
athlete sustains an injury in the course and
scope of employment.  If the athlete fails
to make an election, the athlete will be
presumed to have elected the option which
provides the highest benefits.

(b) When a contract is signed by a
professional athlete, the employer shall
give the athlete a copy of the following
statement:  "(Name of employer) has workers'
compensation coverage from (name of
insurance carrier).  If the benefits
available to you under your contract and any
applicable collective bargaining agreement
are equivalent to or greater than those
available to you under the Texas *Labor Code,
§ 406.095* you are required to elect whether
to receive the benefits available to you
under the Act or the benefits available to
you under your contract and any applicable
collective bargaining agreement.  You must
make this election no later than 15 days
after sustaining an injury.  If you elect to
receive the benefits available to you under
your contract and any applicable collective
bargaining agreement, you cannot obtain
workers' compensation income or medical
benefits if you are injured.  You can get
more information about your workers'
compensation rights and the benefits

available to you under the Act from any
office of the Texas Workers' Compensation
Commission, or by calling 1-800-252-7031."

*       *       *

The Dallas Cowboys and Houston Texans (collectively,
the "Texas Clubs" or the "Clubs") both maintain workers'
compensation insurance coverage pursuant to the Texas Workers'
Compensation Act.  The Texas Clubs provide written notice of the
election requirement to all players, pursuant to Rule 112.401(b)
of the Texas Administrative Code.  When a player is injured,
each Texas Club provides the player with a written election
form.  If, as often is the case, the player refuses to make an
election, the Texas Clubs treat the player as if he selected the
option that yields greater benefits, in accordance with Rule
112.401(a).

As an initial matter, the Texas Clubs contend that
this grievance is untimely because it was not filed within the
45-day time limit set forth in Article IX, Section 2 of the CBA.
The NFLPA maintains the grievance is timely under the
"continuing violations" doctrine, because it challenges a
continuing team policy and practice that repeatedly violates the
CBA.  The positions of the parties on the substantive merits of
this grievance are set forth below.

## NFLPA POSITION

The NFLPA asserts that the general injury-related benefits provided for by the CBA, which include medical and salary benefits, are mandatory and cannot be waived by a player. The NFLPA further contends that Article LIV of the CBA contractually guarantees all injured players an unconditional right to state workers' compensation benefits or their equivalent in addition to the general injury-related benefits provided for in the CBA.

The NFLPA maintains that the phrase "equivalent benefits" in Article LIV, Section 1 means benefits equivalent to the workers' compensation benefits afforded to non-professional athletes within a state where professional athletes are treated differently. Florida, for example, excludes professional athletes from workers' compensation coverage altogether. Yet, it is undisputed that the CBA contractually obligates the three Florida Clubs to provide the equivalent of workers' compensation benefits to their players. Indeed, the December 20, 1985 Implementation Agreement between the NFLPA and NFL Management Council, covering Miami Dolphins players' workers' compensation claims, specifically states that the benefits those players are entitled to "are the same as those set forth for other employees in the Florida Workers' Compensation Law".[1]

---

[1] The Dolphins have not voluntarily obtained coverage under Florida's workers' compensation laws. The other Florida Clubs -- Tampa Bay Buccaneers and Jacksonville Jaguars -- have obtained such coverage.

The NFLPA argues that if all Article LIV did was
guarantee players what they are entitled to under state law, it
would provide them nothing more than what they already are
entitled to, and, thus, would be meaningless. It is absurd,
according to the NFLPA, to argue that the players gave up the
right to sue in court for injuries in return for receiving no
workers' benefits. Voluntary participation in the Texas
Workers' Compensation system does not excuse the Texas Clubs
from providing equivalent benefits to those provided to non-
professional athletes.

The NFLPA insists that the only limited offset to
workers' compensation benefits (or their equivalent) for other
injury benefits provided for in the CBA is the provision in
Paragraph 10 of the NFL Player Contract, which states:

> WORKERS' COMPENSATION. Any compensation
> paid to Players under this contract or under
> any collective bargaining agreement in
> existence during the term of this contract
> for a period during which he is entitled to
> workers' compensation benefits by reason of
> temporary total, permanent total, temporary
> partial, or permanent partial disability
> will be deemed an advance payment of
> workers' compensation benefits due Player,
> and Club will be entitled to be reimbursed
> the amount of such payment out of any award
> of workers' compensation.

The NFLPA stresses that the Texas Clubs' policy results in a
much greater reduction to players' injury benefits than the

limited reduction in workers' compensation agreed to in
Paragraph 10.

The NFLPA also cites Article II, Section 1 of the CBA,
which provides that:

> The provisions of this Agreement supersede
> any conflicting provisions in the NFL Player
> Contract, the NFL Constitution and Bylaws,
> or any other document affecting terms and
> conditions of employment of NFL players, and
> all players, Clubs, the NFLPA, the NFL, and
> the Management Council will be bound
> hereby....

Pursuant to this provision, the NFLPA asserts, no player or Club
can agree to violate terms of the CBA or to waive mandatory
player benefits.  Thus, the election forms the Texas Clubs
require their injured players to sign are superseded by the
terms of the CBA.

The NFLPA maintains that to the extent there is any
inconsistency with the CBA, the provision of the Texas Workers'
Compensation law relied on by the Texas Clubs is preempted under
the National Labor Relations Act (NLRA) and NFL arbitration
precedent.[2]  State law may not alter the substantive terms of the
CBA to reduce players' injury benefits because doing so

---

[2] The NFLPA relies on the *Machinists* preemption doctrine.  See
Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v.
Wis. Employment Relations Comm'n, 427 U.S. 132 (1976).  It also
cites Donald Smith NFL Arb. (Sept. 16, 1996) (Malka, Arb.),
*aff'd* Donald Smith NFL Arb. Appeal (April 21, 1997) (Kagel,
Arb.).

interferes with the collective bargaining process protected by
the NLRA.  The Texas statute is not saved by the "minimum labor
standard" exception to NLRA preemption because its express
purpose is to try to reduce players' injury benefits by
requiring them to choose between their CBA injury-related
benefits and workers' compensation benefits.

        The NFLPA also points out that, as an alternative to
holding the Texas law at issue is preempted, the arbitrator
could find that the law does not justify the Texas Clubs' policy
and practice.  The statute states that professional athletes
"shall elect to receive either the benefits available under [the
Texas Workers' Compensation Act] or the benefits under the
contract or agreement".  Here the CBA expressly provides that
players should receive both general injury-related benefits and
at least "the equivalent" of state workers' compensation
benefits.  Thus, it can be concluded that the Texas statute is
consistent with a player receiving both his general injury-
related benefits and the equivalent of workers' compensation
benefits since both such types of benefits are provided for
under his "contract or agreement".

        The NFLPA argues that the Texas Clubs' assertion that
no player has yet been denied his non-workers' compensation CBA
benefits is not a bar to relief.  The only reason this has not
occurred is because no player has yet opted for Texas Workers'
Compensation benefits on the election form.  If a player had
done that, under Texas law he would have relinquished all rights
to his CBA benefits, which is a clear violation of the CBA.

Moreover, the right to also receive workers' compensation benefits or the equivalent also is a CBA benefit which a player cannot be asked to relinquish.

The NFLPA states that it is not asking the Arbitrator to change or enjoin Texas law, but rather to declare that the Texas Clubs' continuing practice or policy of requiring injured players to choose between their general injury-related benefits and workers' compensation benefits or the equivalent violates the CBA and is not justified or excused by any provision of the Texas Workers' Compensation laws.

In its post-hearing brief, the NFLPA requests the Arbitrator make the following declarations in the Award:

> (1) that the continuing practice of the Texas Clubs to ask NFL players to choose between their general injury-related benefits and workers' compensation benefits or the equivalent thereof violates the CBA and is not excused by any provision of the Texas workers' compensation laws (which are preempted to the extent they are inconsistent with the CBA); (2) that the Texas Clubs shall not make any further attempts to ask their players to elect whether to receive their general injury-related benefits or workers' compensation benefits or the equivalent thereof; and (3) that any injury benefit election forms signed by players on the Texas Clubs within the 45-day period preceding the filing of this grievance, or signed by players at any time after the filing of this grievance, are void and unenforceable.  The NFLPA also

seeks any additional remedy that the
Arbitrator deems just and equitable.


## TEXAS CLUBS POSITION


In addition to being untimely, the Texas Clubs
contend, this grievance is procedurally defective because it
seeks relief that is beyond the Arbitrator's authority.  Article
IX, Section 8 of the CBA states, in relevant part:

> [T]he arbitrator will not have the
> jurisdiction or authority: ...to grant any
> remedy other than a money award, an order of
> reinstatement, suspension without pay, a
> stay of suspension pending decision, a cease
> and desist order, a credit or benefit award
> under the Bert Bell/Pete Rozelle NFL Player
> Retirement Plan, or an order of compliance,
> with a specific term of this Agreement or
> any other applicable document, or an
> advisory opinion pursuant to Article XIII
> (Committees), Section 1(c).


The Texas Clubs argue that the Arbitrator has no authority to
order the Texas Clubs to cease complying with Texas law by
notifying employees of their right to elect benefits, or to void
signed election forms which are irrevocable under Texas law, or
to grant any other remedy not expressly identified in Article
IX, Section 8 of the CBA.  Not only would enjoining state law
exceed the Arbitrator's authority under the CBA, it would
violate public policy (as well as preemption principles) and
would be unenforceable for that reason as well.

The proper venue for challenging the Texas statute,
the NFL insists, is the legislature or the judicial system, not
arbitration.  Indeed, the NFLPA's own conduct -- including
lobbying state legislatures to change workers' compensation laws
and never once filing a grievance based on a Club's compliance
with such laws -- demonstrates that arbitration is not the
proper forum for evaluating the application of Texas law.

The Texas Clubs assert that they have complied with
Texas law by notifying players of their right to elect statutory
or contractual benefits and by providing injured players with a
written election form that requires a player to elect statutory
or contractual benefits.  The NFL Clubs maintain that these
practices are anything but coercive, and that neither Club has
threatened to withhold benefits from a player who has not yet
made an election.  Instead, as Texas law requires, both Clubs
treat a player who has not made an election as if he had
selected the option that yields greater benefits.

The Texas Clubs insist that even if the Arbitrator has
authority to decide this grievance, the NFLPA cannot satisfy its
burden of proving the Clubs violated the CBA by complying with
Texas law.  The Clubs stress that the CBA does not guarantee
workers' compensation benefits, but rather explicitly recognizes
that a player's entitlement to such benefits is entirely a
function of the particular state's law.  In this case, Texas law
precludes a player from receiving both workers' compensation
benefits and equivalent benefits due under a contract.

The Texas Clubs argue that the NFLPA's reliance on the
Implementation Agreement covering Miami Dolphins players is
misplaced.  Not only is that agreement applicable only to the
Dolphins, it pertains to a provision in Article LIV that is not
at issue here.  Because the Dolphins elected not to participate
in the state system, its players are entitled to "equivalent
benefits" as defined in Article LIV.  That provision has no
application here because the Texas Clubs voluntarily elected
coverage under the Texas system.

The Texas Clubs deny they are unilaterally revoking
players' rights to contractual benefits or forcing players to
waive those rights.  In the first place, the Clubs argue, to the
extent a player foregoes any contractual rights as a result of
the election of benefits mandated by state law, he does so in
accordance with both the statute and the CBA -- which
incorporates the state law.  Furthermore, the Clubs insist, the
effect of the statute is not to deny players their contractual
rights.  The statute assures that players receive all injury-
related benefits available under the CBA or more.  A player is
always free to select the more generous alternative, and even a
player who makes no election is presumed to have selected the
better option.  Because the full complement of CBA benefits is
always available, and because a player who elects the statutory
benefits will not receive less, the Texas statute enhances,
rather than undercuts, the CBA benefits.  Nothing in the Texas
Clubs' election forms suggest that players should elect

NFLPA/NFL
Texas Clubs

statutory benefits if they are less generous than the CBA
benefits, and none have done so.

The Texas Clubs contend that even if the Texas law
were somehow inconsistent with the CBA -- and it is not -- the
Clubs would have no choice but to abide by it, as the statute is
neither superseded by the CBA, nor preempted by federal labor
law.

Under federal labor law, the Texas Clubs assert, the
parties to the CBA do not have the power to displace state
regulatory law.  Moreover, in this case, the CBA itself makes it
clear that a player's entitlement to workers' compensation
benefits is entirely a function of state law.

The Texas Clubs maintain that the Texas statute is not
preempted by the NLRA, because it merely creates a minimum labor
standard equally applicable to all workers, which courts
routinely find are not preempted.[3]  The fact that the Texas
statute does not apply to certain employees who elect to receive
benefits under a contract makes the statute no more susceptible
to preemption.  Where a statute provides union-represented
employees with the full protection of the minimum standard
unless they agree to something different, it simply is not
subject to preemption.  Because the Texas statute entitles
players to elect the full complement of statutory benefits

_____

[3] The Clubs cite Metropolitan Life Ins. Co. v. Massachusetts
Travelers Ins. Co., 471 U.S. 724 (1985), and Fort Halifax
Packing Co., Inc. v. Coyne, 482 U.S. 1 (1987).

available to non-union employees, it in no way discourages
collective bargaining, and, hence, is not preempted by the NLRA.

The Clubs contend that this grievance should be
dismissed in its entirety.

## FINDINGS

Article IX, Section 2 of the CBA states that a non-
injury grievance "must be initiated within forty-five (45) days
from the date of the occurrence...upon which the grievance is
based, or within forty-five (45) days from the date on which the
facts of the matter became known or reasonably should have been
known to the party initiating the grievance, whichever is
later."

Although the relevant provisions of the Texas Workers'
Compensation Act have been in effect since 1991, the Texas
Clubs' practice of providing injured players with the protested
election forms began only in 2002 or 2003.  There is no dispute,
however, that the NFLPA was aware of the use of these forms
considerably more than 45 days before it filed this grievance.
In response to the Clubs' argument that the grievance should be
dismissed as untimely filed, the NFLPA relies on the continuing
violations doctrine.

I agree with the NFLPA that the continuing violations
doctrine applies in this case.  If, as the NFLPA contends,

requiring injured players to make an election of benefits
violates the CBA, then each occasion on which an individual
player, after being injured, is given an election form to
complete constitutes a separate violation.  The NFLPA seeks no
remedy with respect to any such violations occurring more than
45 days before the grievance was filed.  Therefore, without
prejudice to the Clubs' right to cite the NFLPA's inaction prior
to the filing of this grievance in support of the Clubs'
position on the merits, the grievance cannot be dismissed as
untimely.

        My authority as the Arbitrator in this case is derived
from the CBA.  As the parties' designated contract reader, I am
empowered -- and required -- to determine whether the Clubs'
actions protested in this grievance violate the terms of the
CBA, and, if they do, to determine the appropriate remedy,
consistent with the limitations set forth in Article IX, Section
8.

        This grievance, as filed on July 15, 2004, alleges
that the Texas Clubs are:  (1) "coercing players who are
injured...to make an election to receive either workers'
compensation benefits under Texas law or other injury-related
benefits provided for under the CBA"; and (2) "threatening to
withhold injured players' CBA benefits unless the injured player
makes such an election."

        The Texas Clubs deny that they are "threatening" to
withhold CBA benefits if a player fails to make an election, and

there is no evidence to support the claim that such threats have
been made.  The Clubs also deny that they are "coercing" injured
players to make an election.  What the record establishes is
that the Clubs have been providing injured players with an
irrevocable election form, conforming to Texas law, which
includes a statement that:  "You must make this election within
[or no later than] fifteen (15) days after sustaining an
injury."  Cowboys' management also has informed players:

> If you do not return the attached form
> (signed) to our trainers within 48 hours of
> receiving it, I will assume that you have
> elected to continue receiving your salary.
>
> Should you elect otherwise, you must notify
> me in writing within 15 days.

There is no evidence that either Texas Club has taken any
adverse action against an injured player who fails to complete
and submit an election form, other than to treat such a player
-- as provided by Texas law -- as having elected the option
which provides the highest benefits.  There also is no
indication in the record that any injured player has been denied
general injury-related benefits provided for in the CBA by
either Texas Club.[4]

---

[4] The election provided for under Texas law only applies to a
player who is entitled to contractual benefits "that are equal
to or greater than" Texas Workers' Compensation benefits.
Therefore, there would appear to be no logical basis to presume
an injured player has elected Texas workers' compensation
benefits, rather than CBA benefits.  There is no evidence of any
player actually having elected Texas workers' compensation
benefits.

I agree with the Texas Clubs that Article LIV does not guarantee any particular level of workers' compensation benefits either where coverage is compulsory or where a Club voluntarily obtains coverage under the workers' compensation laws of a particular state, as the Clubs have done here.  The workers' compensation benefits a player is entitled to in either instance are the benefits the player is entitled to under state law.  The CBA does not purport to define what those benefits are.[5]  Indeed it is difficult to see how a collective bargaining agreement could determine what workers' compensation benefits are to be provided under state law, except to the extent state law looks to the contract.

A Club's obligation under Article LIV to guarantee "equivalent benefits to those benefits paid under the [state] compensation law" applies only where coverage is not compulsory and the Club does not voluntarily obtain coverage.  Thus, the

---

[5] That is not to say that state law may not consider provisions in the CBA for purposes of determining benefit entitlement under state law.  In Tampa Bay Area NFL Football, Inc. v. Jarvis, 668 So. 2d 217 (Fla. Dist. Ct. App. 1996), ("Jarvis") a Florida court held that a contractual provision -- in that case the limited offset provided for in Paragraph 10 of the NFL Player Contract -- may entitle an employee to greater workers' compensation coverage or benefits than otherwise would be provided under the statute, and will be enforced within Florida's workers' compensation system.  It should be noted that neither Jarvis, nor Donald Smith NFL Arb., supra, which applies the holding in Jarvis, involve federal preemption; they both apply state law.

manner in which benefits are provided to Miami Dolphins' players
under the 1985 Implementation Agreement between the NFLPA and
the NFL Management Council is not particularly relevant in this
case.  The Dolphins did not choose to voluntarily obtain
coverage under the Florida workers' compensation statute, which
excludes professional athletes from coverage, and so were
required under Article LIV to provide "equivalent benefits".  In
the Implementation Agreement the parties specified that those
benefits would be equivalent to those provided to non-
professional athletes under Florida law.

        Texas law differs from Florida law.  Florida excludes
professional athletes from workers' compensation coverage, but
evidently treats them like other employees if the employer (as
is true of the Tampa Bay Buccaneers and the Jacksonville
Jaguars) obtains voluntary coverage.  In Texas, all coverage is
voluntary, but the state has enacted special benefit provisions
applicable only to professional athletes who are voluntarily
covered by their employer.  In essence, they are not entitled to
receive state benefits if they receive greater or equivalent
benefits under their contract or collective bargaining
agreement.

        There is no requirement in Article LIV that if a Club
provides workers' compensation benefits either in a compulsory
coverage state or by voluntarily obtaining coverage under state
law the Club must -- as a matter of contract -- guarantee its
players receive the same workers' compensation benefits they
would be entitled to if they were not professional athletes.  If

the CBA contained such a guarantee, surely the NFLPA would not
have waited 13 years after the Texas statute was enacted to file
a grievance raising that claim.

        While I agree with the Texas Clubs that state workers'
compensation benefits are what the state defines them to be and
that Article LIV does not grant players a contractual right to
greater workers' compensation benefits than the state provides,
I do not agree that if a Club voluntarily obtains state workers'
compensation coverage pursuant to Article LIV, that results in
state law being incorporated into the contract.  At least not
where the state law would reduce or limit collectively bargained
benefits.  Therefore, I do not agree that Article LIV, in
effect, incorporates the Texas election procedure into the CBA.

        The Texas Clubs may be in compliance with Article LIV
by voluntarily obtaining coverage under Texas law, but that does
not enable them to deprive players of their right to general
injury-related benefits provided in the CBA.  A player's right
to workers' compensation coverage or "equivalent benefits" under
Article LIV is in addition to those other CBA rights.  Under
Article II, Section 1 of the CBA, no player or Club can agree to
waive mandatory player benefits.  Therefore, consistent with the
CBA, the Clubs cannot require that players make an election
between receiving their general injury-related CBA benefits and
receiving Texas workers' compensation benefits, whatever those
benefits might be.  Any such election would be null and void
under the CBA.  Similarly, the Clubs cannot take any adverse

action against a player who declines or fails to make an
election under the state procedure.

The Clubs argue that, whatever the CBA may provide,
they are not free to disregard the provisions of the Texas
statute which requires them to provide injured players with the
disputed election forms.  Yet, for over ten years after
enactment of the applicable Texas law in 1991 the NFL Clubs
located in Texas, including the Dallas Cowboys, evidently did
not provide those election forms to injured players, and there
is no indication this resulted in any adverse consequences to a
Club.  The Texas Clubs have offered no explanation for why it
became necessary to start doing so in 2002 or 2003.

Moreover, under the *Machinists* federal preemption
doctrine, Texas law cannot deprive players on the Texas Clubs of
their right to collectively bargained injury-related benefits
that exceed state workers' compensation benefits.  The Texas Act
only requires an election where the CBA benefits are equal to or
greater than the state workers' compensation benefits.  Since it
is highly unlikely that the respective benefits ever will be
precisely equal, the election requirement -- as a practical
matter -- only applies where the CBA benefits exceed state
workers' compensation benefits.  In those circumstances, the
state does not have the authority, as I read the relevant case
law, to mandate that a player be required to make an election
where one of the two options -- waiver of greater benefits

guaranteed in addition to workers' compensation under the CBA --
is foreclosed under federal preemption principles.[6]

      Accordingly, I will direct the Texas Clubs to cease
and desist from requiring injured players to make an election --
or providing them with forms that require them to make an
election -- between receiving general injury-related benefits
guaranteed to them in the CBA and state workers' compensation
benefits.  As previously indicated, there is no evidence that
any player has elected to receive workers' compensation
benefits, rather than CBA benefits, but such an election, in any
event, would be null and void under the CBA.  To the extent
players have signed forms electing CBA benefits, rather than
workers' compensation benefits, I cannot dictate how the
appropriate state authority should treat those elections, other
than to reiterate that such an election should not have been
required under the terms of the CBA.

      I do not lightly direct the Texas Clubs to cease
taking action that conforms to the provisions of state law, but
I do not see how the Clubs' action in requiring injured players
to make the disputed election can be squared with the terms of
the CBA, which I am compelled to follow.

---

[6] Whether the state otherwise can deny the player workers'
compensation benefits in those circumstances is not an issue
properly before me.

23                              NFLPA/NFL
                                Texas Clubs


### AWARD


The grievance is resolved as set forth in the above
Findings.  The Texas Clubs are directed to cease and desist from
requiring injured players to make an election -- or providing
them with forms that require them to make an election -- between
receiving general injury-related benefits guaranteed to them in
the CBA and state workers' compensation benefits.




Shyam Das, Arbitrator

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET
3 - 05 CV - 2 2 9 8 G

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.

**(a) JOINT PETITIONER**
The National Football League Players Association

**JOINT PETITIONER**
The National Football League Management Council, The Dallas Cowboys, and The Houston Texans

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone: 212/259-8050

ATTORNEYS (IF KNOWN)

Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: 202/887-4067

RECEIVED
NOV 2 2 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller act | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Law | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patents | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environment Matters |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All other Real Property | | | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Petition to Confirm Arbitration Award; 28 U.S.C. § 1391; 28 U.S.C. § 185; 9 U.S.C. § 9

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ injunction

CHECK YES only if demanded in complaint

JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY: (See instructions)

JUDGE _____ DOCKET NUMBER _____

DATE
November ___, 2005

SIGNATURE OF ATTORNEY OF RECORD

_Elizabeth M. Griffin_
DEWEY BALLANTINE LLP

_Marcia N. Jackson_ MBB
AKIN GUMP

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

# EXHIBIT E

G\BF
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

NOV 2 3 2005

CLERK, U.S. DISTRICT COURT
By_____
              Deputy

| | |
|---|---|
| IN THE MATTER OF | § |
| THE NATIONAL FOOTBALL LEAGUE | § |
| PLAYERS ASSOCIATION | § |
| | § |
| | § |
| **and** | § |
| | § |
| | § |
| THE NATIONAL FOOTBALL LEAGUE | § |
| MANAGEMENT COUNCIL, | § |
| THE DALLAS COWBOYS, and | § |
| THE HOUSTON TEXANS | § |

Civil Action No. 3-05CV-2298 G

## ORDER GRANTING JOINT PETITION TO CONFIRM ARBITRATION AWARD

Upon consideration of the Joint Petition and/or other pleadings filed herein, and this

Court's determination that it has jurisdiction over the matter, it is hereby

ORDERED that the Joint Petition to Confirm Arbitration Award is GRANTED. The

Award of Arbitrator Shyam Das, dated May 24, 2005, attached hereto as Exhibit "A," is thus

CONFIRMED.

SO ORDERED

DATED: November 23, 2005

_____
UNITED STATES DISTRICT JUDGE

**ORDER GRANTING JOINT PETITION TO CONFIRM ARBITRATION AWARD – Page 1**

**Approved as to form and content:**

Jeffrey L. Kessler
**DEWEY BALLANTINE LLP**
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone No. (212) 259-8050
Facsimile No. (212) 259-6333

Daniel L. Nash
Bar No. 375982 (District of Columbia)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone No. (202) 887-4067
Facsimile No. (202) 887-4288

Elizabeth Guffy
State Bar No. 08592525
**DEWEY BALLANTINE LLP**
401 Congress Avenue, Suite 3200
Austin, TX 78701
Telephone No.: (512) 226-0450
Facsimile No.: (512) 226-0333

Marcia N. Jackson
State Bar No. 24008411
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Telephone No. (214) 969-2800
Facsimile No. (214) 969-4343

*COUNSEL FOR THE NATIONAL
FOOTBALL LEAGUE PLAYERS
ASSOCIATION*

*COUNSEL FOR NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL, THE DALLAS
COWBOYS, AND THE HOUSTON TEXANS*

**ORDER GRANTING JOINT PETITION TO CONFIRM ARBITRATION AWARD – Page 2**



SHYAM DAS, ARBITRATOR


| | |
|---|---|
| In the Matter of Arbitration Between | ) )  |
| | ) |
| | )   ARBITRATOR'S OPINION |
| | )   AND AWARD |
| THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION | ) ) |
| | ) |
| | ) |
| and | ) |
| | )   May 24, 2005 |
| | ) |
| THE NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, On Behalf of THE DALLAS COWBOYS and THE HOUSTON TEXANS | ) ) ) ) |


### Appearances

For the NFL Players Association:

> Richard A. Berthelsen, Esq.
> Jeffrey L. Kessler, Esq.
> David G. Feher, Esq.
> David Greenspan, Esq.


For the NFL Management Council:

> Dennis L. Curran, Esq.
> Lisa F. Lazarus, Esq.
> Daniel L. Nash, Esq.
> Gregory W. Knopp, Esq.

BACKGROUND                          NFLPA/NFL
                                    Texas Clubs


        This grievance was filed by the NFLPA on July 15,
2004.   The basis for the grievance is set forth as follows:

>       The NFLPA hereby files a non-injury
>       grievance against the Dallas Cowboys,
>       Houston Texans (collectively, the "Texas
>       Clubs") and the NFL Management Council
>       pursuant to Article IX of the 1993
>       Collective Bargaining Agreement, as amended.
>
>       Upon information and belief, the Texas Clubs
>       are coercing players who are injured as a
>       result of performing services to make an
>       election to receive _either_ workers'
>       compensation benefits under Texas law _or_
>       other injury-related benefits provided for
>       under the CBA.   Further, upon information
>       and belief, the Texas Clubs are threatening
>       to withhold injured players' CBA benefits
>       unless the injured player makes such an
>       election.
>
>       The Texas Clubs' practice of compelling
>       players to make a choice to receive either
>       workers' compensation benefits or CBA injury
>       benefits violates the terms of the CBA which
>       guarantee players _both_ types of benefits.
>       _See e.g._ CBA, Article XII (Injury
>       Protection), Article XLIV (Players' Rights
>       to Medical Care and Treatment), Article LIV
>       (Workers' Compensation), Article XLVII
>       (Retirement Plan), Article LI (Supplemental
>       Disability Benefits), App. C. (NFL Player
>       Contract).   A player cannot waive his rights
>       to these benefits under the CBA nor can an
>       NFL Club unilaterally revoke such guaranteed
>       benefits.   _See id._, Article II (Governing
>       Agreement), Article III (Scope of
>       Agreement).   To the extent that the Texas
>       Clubs are purporting to rely upon Texas
>       Admin. Code, title 28, §112.401, the NFLPA's
>       position is that such a state law is

The Texas Workers' Compensation Act includes the following provisions (Tex. Labor Code §§406.002 and 406.095):

§ 406.002.   Coverage Generally Elective

(a) Except for public employers and as otherwise provided by law, an employer may elect to obtain workers' compensation insurance coverage.

(b) An employer who elects to obtain coverage is subject to this subtitle.

*         *         *

§ 406.095.   Certain Professional Athletes

(a) A professional athlete employed under a contract for hire or a collective bargaining agreement who is entitled to benefits for medical care and weekly benefits that are equal to or greater than the benefits provided under this subtitle may not receive benefits under this subtitle and the equivalent benefits under the contract or collective bargaining agreement. An athlete covered by such a contract or agreement who sustains an injury in the course and scope of the athlete's employment shall elect to receive either the benefits available under this subtitle or the benefits under the contract or agreement.

(b) The commission by rule shall establish the procedures and requirements for an election under this section.

Rule 112.401 of the Texas Administrative Code provides:

§ 112.401.  Election of Coverage by Certain
Professional Athletes

(a) A professional athlete employed by a
franchise with workers' compensation
insurance coverage and subject to the Texas
*Labor Code, § 406.095*, shall elect to
receive either the benefits available under
the Act or the equivalent benefits available
under the athlete's contract or collective
bargaining agreement.  The election shall be
made not later than the 15th day after the
athlete sustains an injury in the course and
scope of employment.  If the athlete fails
to make an election, the athlete will be
presumed to have elected the option which
provides the highest benefits.

(b) When a contract is signed by a
professional athlete, the employer shall
give the athlete a copy of the following
statement:  "(Name of employer) has workers'
compensation coverage from (name of
insurance carrier).  If the benefits
available to you under your contract and any
applicable collective bargaining agreement
are equivalent to or greater than those
available to you under the Texas *Labor Code,
§ 406.095* you are required to elect whether
to receive the benefits available to you
under the Act or the benefits available to
you under your contract and any applicable
collective bargaining agreement.  You must
make this election no later than 15 days
after sustaining an injury.  If you elect to
receive the benefits available to you under
your contract and any applicable collective
bargaining agreement, you cannot obtain
workers' compensation income or medical
benefits if you are injured.  You can get
more information about your workers'
compensation rights and the benefits

available to you under the Act from any
office of the Texas Workers' Compensation
Commission, or by calling 1-800-252-7031."

          *          *          *

The Dallas Cowboys and Houston Texans (collectively,
the "Texas Clubs" or the "Clubs") both maintain workers'
compensation insurance coverage pursuant to the Texas Workers'
Compensation Act.  The Texas Clubs provide written notice of the
election requirement to all players, pursuant to Rule 112.401(b)
of the Texas Administrative Code.  When a player is injured,
each Texas Club provides the player with a written election
form.  If, as often is the case, the player refuses to make an
election, the Texas Clubs treat the player as if he selected the
option that yields greater benefits, in accordance with Rule
112.401(a).

As an initial matter, the Texas Clubs contend that
this grievance is untimely because it was not filed within the
45-day time limit set forth in Article IX, Section 2 of the CBA.
The NFLPA maintains the grievance is timely under the
"continuing violations" doctrine, because it challenges a
continuing team policy and practice that repeatedly violates the
CBA.  The positions of the parties on the substantive merits of
this grievance are set forth below.

## NFLPA POSITION

The NFLPA asserts that the general injury-related benefits provided for by the CBA, which include medical and salary benefits, are mandatory and cannot be waived by a player. The NFLPA further contends that Article LIV of the CBA contractually guarantees all injured players an unconditional right to state workers' compensation benefits or their equivalent in addition to the general injury-related benefits provided for in the CBA.

The NFLPA maintains that the phrase "equivalent benefits" in Article LIV, Section 1 means benefits equivalent to the workers' compensation benefits afforded to non-professional athletes within a state where professional athletes are treated differently. Florida, for example, excludes professional athletes from workers' compensation coverage altogether. Yet, it is undisputed that the CBA contractually obligates the three Florida Clubs to provide the equivalent of workers' compensation benefits to their players. Indeed, the December 20, 1985 Implementation Agreement between the NFLPA and NFL Management Council, covering Miami Dolphins players' workers' compensation claims, specifically states that the benefits those players are entitled to "are the same as those set forth for other employees in the Florida Workers' Compensation Law".[1]

---

[1] The Dolphins have not voluntarily obtained coverage under Florida's workers' compensation laws. The other Florida Clubs -- Tampa Bay Buccaneers and Jacksonville Jaguars -- have obtained such coverage.

The NFLPA argues that if all Article LIV did was guarantee players what they are entitled to under state law, it would provide them nothing more than what they already are entitled to, and, thus, would be meaningless. It is absurd, according to the NFLPA, to argue that the players gave up the right to sue in court for injuries in return for receiving no workers' benefits. Voluntary participation in the Texas Workers' Compensation system does not excuse the Texas Clubs from providing equivalent benefits to those provided to non-professional athletes.

The NFLPA insists that the only limited offset to workers' compensation benefits (or their equivalent) for other injury benefits provided for in the CBA is the provision in Paragraph 10 of the NFL Player Contract, which states:

> WORKERS' COMPENSATION. Any compensation paid to Players under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.

The NFLPA stresses that the Texas Clubs' policy results in a much greater reduction to players' injury benefits than the

limited reduction in workers' compensation agreed to in
Paragraph 10.

        The NFLPA also cites Article II, Section 1 of the CBA,
which provides that:

> The provisions of this Agreement supersede
> any conflicting provisions in the NFL Player
> Contract, the NFL Constitution and Bylaws,
> or any other document affecting terms and
> conditions of employment of NFL players, and
> all players, Clubs, the NFLPA, the NFL, and
> the Management Council will be bound
> hereby....

Pursuant to this provision, the NFLPA asserts, no player or Club
can agree to violate terms of the CBA or to waive mandatory
player benefits. Thus, the election forms the Texas Clubs
require their injured players to sign are superseded by the
terms of the CBA.

        The NFLPA maintains that to the extent there is any
inconsistency with the CBA, the provision of the Texas Workers'
Compensation law relied on by the Texas Clubs is preempted under
the National Labor Relations Act (NLRA) and NFL arbitration
precedent.[2] State law may not alter the substantive terms of the
CBA to reduce players' injury benefits because doing so

---

[2] The NFLPA relies on the *Machinists* preemption doctrine. See
Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v.
Wis. Employment Relations Comm'n, 427 U.S. 132 (1976). It also
cites Donald Smith NFL Arb. (Sept. 16, 1996) (Malka, Arb.),
*aff'd* Donald Smith NFL Arb. Appeal (April 21, 1997) (Kagel,
Arb.).

interferes with the collective bargaining process protected by
the NLRA. The Texas statute is not saved by the "minimum labor
standard" exception to NLRA preemption because its express
purpose is to try to reduce players' injury benefits by
requiring them to choose between their CBA injury-related
benefits and workers' compensation benefits.

The NFLPA also points out that, as an alternative to
holding the Texas law at issue is preempted, the arbitrator
could find that the law does not justify the Texas Clubs' policy
and practice. The statute states that professional athletes
"shall elect to receive either the benefits available under [the
Texas Workers' Compensation Act] or the benefits under the
contract or agreement". Here the CBA expressly provides that
players should receive both general injury-related benefits and
at least "the equivalent" of state workers' compensation
benefits. Thus, it can be concluded that the Texas statute is
consistent with a player receiving both his general injury-
related benefits and the equivalent of workers' compensation
benefits since both such types of benefits are provided for
under his "contract or agreement".

The NFLPA argues that the Texas Clubs' assertion that
no player has yet been denied his non-workers' compensation CBA
benefits is not a bar to relief. The only reason this has not
occurred is because no player has yet opted for Texas Workers'
Compensation benefits on the election form. If a player had
done that, under Texas law he would have relinquished all rights
to his CBA benefits, which is a clear violation of the CBA.

Moreover, the right to also receive workers' compensation benefits or the equivalent also is a CBA benefit which a player cannot be asked to relinquish.

The NFLPA states that it is not asking the Arbitrator to change or enjoin Texas law, but rather to declare that the Texas Clubs' continuing practice or policy of requiring injured players to choose between their general injury-related benefits and workers' compensation benefits or the equivalent violates the CBA and is not justified or excused by any provision of the Texas Workers' Compensation laws.

In its post-hearing brief, the NFLPA requests the Arbitrator make the following declarations in the Award:

> (1) that the continuing practice of the Texas Clubs to ask NFL players to choose between their general injury-related benefits and workers' compensation benefits or the equivalent thereof violates the CBA and is not excused by any provision of the Texas workers' compensation laws (which are preempted to the extent they are inconsistent with the CBA); (2) that the Texas Clubs shall not make any further attempts to ask their players to elect whether to receive their general injury-related benefits or workers' compensation benefits or the equivalent thereof; and (3) that any injury benefit election forms signed by players on the Texas Clubs within the 45-day period preceding the filing of this grievance, or signed by players at any time after the filing of this grievance, are void and unenforceable. The NFLPA also

seeks any additional remedy that the
Arbitrator deems just and equitable.


## TEXAS CLUBS POSITION

In addition to being untimely, the Texas Clubs
contend, this grievance is procedurally defective because it
seeks relief that is beyond the Arbitrator's authority.  Article
IX, Section 8 of the CBA states, in relevant part:

> [T]he arbitrator will not have the
> jurisdiction or authority: ...to grant any
> remedy other than a money award, an order of
> reinstatement, suspension without pay, a
> stay of suspension pending decision, a cease
> and desist order, a credit or benefit award
> under the Bert Bell/Pete Rozelle NFL Player
> Retirement Plan, or an order of compliance,
> with a specific term of this Agreement or
> any other applicable document, or an
> advisory opinion pursuant to Article XIII
> (Committees), Section 1(c).

The Texas Clubs argue that the Arbitrator has no authority to
order the Texas Clubs to cease complying with Texas law by
notifying employees of their right to elect benefits, or to void
signed election forms which are irrevocable under Texas law, or
to grant any other remedy not expressly identified in Article
IX, Section 8 of the CBA.  Not only would enjoining state law
exceed the Arbitrator's authority under the CBA, it would
violate public policy (as well as preemption principles) and
would be unenforceable for that reason as well.

The proper venue for challenging the Texas statute, the NFL insists, is the legislature or the judicial system, not arbitration. Indeed, the NFLPA's own conduct -- including lobbying state legislatures to change workers' compensation laws and never once filing a grievance based on a Club's compliance with such laws -- demonstrates that arbitration is not the proper forum for evaluating the application of Texas law.

The Texas Clubs assert that they have complied with Texas law by notifying players of their right to elect statutory or contractual benefits and by providing injured players with a written election form that requires a player to elect statutory or contractual benefits. The NFL Clubs maintain that these practices are anything but coercive, and that neither Club has threatened to withhold benefits from a player who has not yet made an election. Instead, as Texas law requires, both Clubs treat a player who has not made an election as if he had selected the option that yields greater benefits.

The Texas Clubs insist that even if the Arbitrator has authority to decide this grievance, the NFLPA cannot satisfy its burden of proving the Clubs violated the CBA by complying with Texas law. The Clubs stress that the CBA does not guarantee workers' compensation benefits, but rather explicitly recognizes that a player's entitlement to such benefits is entirely a function of the particular state's law. In this case, Texas law precludes a player from receiving both workers' compensation benefits and equivalent benefits due under a contract.

The Texas Clubs argue that the NFLPA's reliance on the
Implementation Agreement covering Miami Dolphins players is
misplaced.  Not only is that agreement applicable only to the
Dolphins, it pertains to a provision in Article LIV that is not
at issue here.  Because the Dolphins elected not to participate
in the state system, its players are entitled to "equivalent
benefits" as defined in Article LIV.  That provision has no
application here because the Texas Clubs voluntarily elected
coverage under the Texas system.

The Texas Clubs deny they are unilaterally revoking
players' rights to contractual benefits or forcing players to
waive those rights.  In the first place, the Clubs argue, to the
extent a player foregoes any contractual rights as a result of
the election of benefits mandated by state law, he does so in
accordance with both the statute and the CBA -- which
incorporates the state law.  Furthermore, the Clubs insist, the
effect of the statute is not to deny players their contractual
rights.  The statute assures that players receive all injury-
related benefits available under the CBA or more.  A player is
always free to select the more generous alternative, and even a
player who makes no election is presumed to have selected the
better option.  Because the full complement of CBA benefits is
always available, and because a player who elects the statutory
benefits will not receive less, the Texas statute enhances,
rather than undercuts, the CBA benefits.  Nothing in the Texas
Clubs' election forms suggest that players should elect

statutory benefits if they are *less* generous than the CBA
benefits, and none have done so.

The Texas Clubs contend that even if the Texas law
were somehow inconsistent with the CBA -- and it is not -- the
Clubs would have no choice but to abide by it, as the statute *is*
neither superseded by the CBA, nor preempted by federal labor
law.

Under federal labor law, the Texas Clubs assert, the
parties to the CBA do not have the power to displace state
regulatory law.  Moreover, in this case, the CBA itself makes it
clear that a player's entitlement to workers' compensation
benefits is entirely a function of state law.

The Texas Clubs maintain that the Texas statute is not
preempted by the NLRA, because it merely creates a minimum labor
standard equally applicable to all workers, which courts
routinely find are not preempted.[3]  The fact that the Texas
statute does not apply to certain employees who elect to receive
benefits under a contract makes the statute no more susceptible
to preemption.  Where a statute provides union-represented
employees with the full protection of the minimum standard
unless they agree to something different, it simply is not
subject to preemption.  Because the Texas statute entitles
players to elect the full complement of statutory benefits

_____

[3] The Clubs cite Metropolitan Life Ins. Co. v. Massachusetts
Travelers Ins. Co., 471 U.S. 724 (1985), and Fort Halifax
Packing Co., Inc. v. Coyne, 482 U.S. 1 (1987).

available to non-union employees, it in no way discourages
collective bargaining, and, hence, is not preempted by the NLRA.

The Clubs contend that this grievance should be
dismissed in its entirety.

### FINDINGS

Article IX, Section 2 of the CBA states that a non-
injury grievance "must be initiated within forty-five (45) days
from the date of the occurrence...upon which the grievance is
based, or within forty-five (45) days from the date on which the
facts of the matter became known or reasonably should have been
known to the party initiating the grievance, whichever is
later."

Although the relevant provisions of the Texas Workers'
Compensation Act have been in effect since 1991, the Texas
Clubs' practice of providing injured players with the protested
election forms began only in 2002 or 2003. There is no dispute,
however, that the NFLPA was aware of the use of these forms
considerably more than 45 days before it filed this grievance.
In response to the Clubs' argument that the grievance should be
dismissed as untimely filed, the NFLPA relies on the continuing
violations doctrine.

I agree with the NFLPA that the continuing violations
doctrine applies in this case. If, as the NFLPA contends,

requiring injured players to make an election of benefits
violates the CBA, then each occasion on which an individual
player, after being injured, is given an election form to
complete constitutes a separate violation.  The NFLPA seeks no
remedy with respect to any such violations occurring more than
45 days before the grievance was filed.  Therefore, without
prejudice to the Clubs' right to cite the NFLPA's inaction prior
to the filing of this grievance in support of the Clubs'
position on the merits, the grievance cannot be dismissed as
untimely.

        My authority as the Arbitrator in this case is derived
from the CBA.  As the parties' designated contract reader, I am
empowered -- and required -- to determine whether the Clubs'
actions protested in this grievance violate the terms of the
CBA, and, if they do, to determine the appropriate remedy,
consistent with the limitations set forth in Article IX, Section
8.

        This grievance, as filed on July 15, 2004, alleges
that the Texas Clubs are:  (1) "coercing players who are
injured...to make an election to receive either workers'
compensation benefits under Texas law or other injury-related
benefits provided for under the CBA"; and (2) "threatening to
withhold injured players' CBA benefits unless the injured player
makes such an election."

        The Texas Clubs deny that they are "threatening" to
withhold CBA benefits if a player fails to make an election, and

there is no evidence to support the claim that such threats have been made.  The Clubs also deny that they are "coercing" injured players to make an election.  What the record establishes is that the Clubs have been providing injured players with an irrevocable election form, conforming to Texas law, which includes a statement that:  "You must make this election within [or no later than] fifteen (15) days after sustaining an injury."  Cowboys' management also has informed players:

> If you do not return the attached form (signed) to our trainers within 48 hours of receiving it, I will assume that you have elected to continue receiving your salary.
>
> Should you elect otherwise, you must notify me in writing within 15 days.

There is no evidence that either Texas Club has taken any adverse action against an injured player who fails to complete and submit an election form, other than to treat such a player -- as provided by Texas law -- as having elected the option which provides the highest benefits.  There also is no indication in the record that any injured player has been denied general injury-related benefits provided for in the CBA by either Texas Club.[4]

--------

[4] The election provided for under Texas law only applies to a player who is entitled to contractual benefits "that are equal to or greater than" Texas Workers' Compensation benefits. Therefore, there would appear to be no logical basis to presume an injured player has elected Texas workers' compensation benefits, rather than CBA benefits.  There is no evidence of any player actually having elected Texas workers' compensation benefits.

I agree with the Texas Clubs that Article LIV does not
guarantee any particular level of workers' compensation benefits
either where coverage is compulsory or where a Club voluntarily
obtains coverage under the workers' compensation laws of a
particular state, as the Clubs have done here.  The workers'
compensation benefits a player is entitled to in either instance
are the benefits the player is entitled to under state law.  The
CBA does not purport to define what those benefits are.[5]  Indeed
it is difficult to see how a collective bargaining agreement
could determine what workers' compensation benefits are to be
provided under state law, except to the extent state law looks
to the contract.

A Club's obligation under Article LIV to guarantee
"equivalent benefits to those benefits paid under the [state]
compensation law" applies only where coverage is not compulsory
and the Club does not voluntarily obtain coverage.  Thus, the

---

[5] That is not to say that state law may not consider provisions
in the CBA for purposes of determining benefit entitlement under
state law.  In Tampa Bay Area NFL Football, Inc. v. Jarvis, 668
So. 2d 217 (Fla. Dist. Ct. App. 1996), ("Jarvis") a Florida
court held that a contractual provision -- in that case the
limited offset provided for in Paragraph 10 of the NFL Player
Contract -- may entitle an employee to greater workers'
compensation coverage or benefits than otherwise would be
provided under the statute, and will be enforced within
Florida's workers' compensation system.  It should be noted that
neither Jarvis, nor Donald Smith NFL Arb., supra, which applies
the holding in Jarvis, involve federal preemption; they both
apply state law.

manner in which benefits are provided to Miami Dolphins' players
under the 1985 Implementation Agreement between the NFLPA and
the NFL Management Council is not particularly relevant in this
case.  The Dolphins did not choose to voluntarily obtain
coverage under the Florida workers' compensation statute, which
excludes professional athletes from coverage, and so were
required under Article LIV to provide "equivalent benefits".  In
the Implementation Agreement the parties specified that those
benefits would be equivalent to those provided to non-
professional athletes under Florida law.

          Texas law differs from Florida law.  Florida excludes
professional athletes from workers' compensation coverage, but
evidently treats them like other employees if the employer (as
is true of the Tampa Bay Buccaneers and the Jacksonville
Jaguars) obtains voluntary coverage.  In Texas, all coverage is
voluntary, but the state has enacted special benefit provisions
applicable only to professional athletes who are voluntarily
covered by their employer.  In essence, they are not entitled to
receive state benefits if they receive greater or equivalent
benefits under their contract or collective bargaining
agreement.

          There is no requirement in Article LIV that if a Club
provides workers' compensation benefits either in a compulsory
coverage state or by voluntarily obtaining coverage under state
law the Club must -- as a matter of contract -- guarantee its
players receive the same workers' compensation benefits they
would be entitled to if they were not professional athletes.  If

the CBA contained such a guarantee, surely the NFLPA would not
have waited 13 years after the Texas statute was enacted to file
a grievance raising that claim.

While I agree with the Texas Clubs that state workers'
compensation benefits are what the state defines them to be and
that Article LIV does not grant players a contractual right to
greater workers' compensation benefits than the state provides,
I do not agree that if a Club voluntarily obtains state workers'
compensation coverage pursuant to Article LIV, that results in
state law being incorporated into the contract.  At least not
where the state law would reduce or limit collectively bargained
benefits.  Therefore, I do not agree that Article LIV, in
effect, incorporates the Texas election procedure into the CBA.

The Texas Clubs may be in compliance with Article LIV
by voluntarily obtaining coverage under Texas law, but that does
not enable them to deprive players of their right to general
injury-related benefits provided in the CBA.  A player's right
to workers' compensation coverage or "equivalent benefits" under
Article LIV is in addition to those other CBA rights.  Under
Article II, Section 1 of the CBA, no player or Club can agree to
waive mandatory player benefits.  Therefore, consistent with the
CBA, the Clubs cannot require that players make an election
between receiving their general injury-related CBA benefits and
receiving Texas workers' compensation benefits, whatever those
benefits might be.  Any such election would be null and void
under the CBA.  Similarly, the Clubs cannot take any adverse

action against a player who declines or fails to make an
election under the state procedure.

The Clubs argue that, whatever the CBA may provide,
they are not free to disregard the provisions of the Texas
statute which requires them to provide injured players with the
disputed election forms.  Yet, for over ten years after
enactment of the applicable Texas law in 1991 the NFL Clubs
located in Texas, including the Dallas Cowboys, evidently did
not provide those election forms to injured players, and there
is no indication this resulted in any adverse consequences to a
Club.  The Texas Clubs have offered no explanation for why it
became necessary to start doing so in 2002 or 2003.

Moreover, under the *Machinists* federal preemption
doctrine, Texas law cannot deprive players on the Texas Clubs of
their right to collectively bargained injury-related benefits
that exceed state workers' compensation benefits.  The Texas Act
only requires an election where the CBA benefits are equal to or
greater than the state workers' compensation benefits.  Since it
is highly unlikely that the respective benefits ever will be
precisely equal, the election requirement -- as a practical
matter -- only applies where the CBA benefits exceed state
workers' compensation benefits.  In those circumstances, the
state does not have the authority, as I read the relevant case
law, to mandate that a player be required to make an election
where one of the two options -- waiver of greater benefits

guaranteed in addition to workers' compensation under the CBA --
is foreclosed under federal preemption principles.[6]

Accordingly, I will direct the Texas Clubs to cease
and desist from requiring injured players to make an election --
or providing them with forms that require them to make an
election -- between receiving general injury-related benefits
guaranteed to them in the CBA and state workers' compensation
benefits. As previously indicated, there is no evidence that
any player has elected to receive workers' compensation
benefits, rather than CBA benefits, but such an election, in any
event, would be null and void under the CBA. To the extent
players have signed forms electing CBA benefits, rather than
workers' compensation benefits, I cannot dictate how the
appropriate state authority should treat those elections, other
than to reiterate that such an election should not have been
required under the terms of the CBA.

I do not lightly direct the Texas Clubs to cease
taking action that conforms to the provisions of state law, but
I do not see how the Clubs' action in requiring injured players
to make the disputed election can be squared with the terms of
the CBA, which I am compelled to follow.

---

[6] Whether the state otherwise can deny the player workers'
compensation benefits in those circumstances is not an issue
properly before me.

23                         NFLPA/NFL
                           Texas Clubs

## AWARD

The grievance is resolved as set forth in the above Findings. The Texas Clubs are directed to cease and desist from requiring injured players to make an election -- or providing them with forms that require them to make an election -- between receiving general injury-related benefits guaranteed to them in the CBA and state workers' compensation benefits.

_____
Shyam Das, Arbitrator

# EXHIBIT F

```
1                        UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF NEW YORK
2
                                          .
3    THE NATIONAL FOOTBALL LEAGUE    .   Case No. 08-cv-3658
     PLAYERS ASSOCIATION, et al,     .
4                                    .   New York, New York
                  Plaintiffs,        .   June 9, 2008
5                                    .
            vs.                      .
6                                    .
     THE NATIONAL FOOTBALL LEAGUE    .
7    MANAGEMENT COUNCIL, et al,      .
                                     .
8             Defendants.           .
     . . . . . . . . . . . . . . . . .
9
                          TRANSCRIPT OF MOTION
10             BEFORE THE HONORABLE PAUL A. CROTTY
                UNITED STATES DISTRICT COURT JUDGE
11
     APPEARANCES:
12   For the Plaintiffs:        Adam J. Kaiser, Esq.
                                Michelle Lo, Esq.
13                              DEWEY & LE BOEUF, LLP
                                1301 Avenue of the Americas
14                              New York, New York 10019

15   For the Defendants:        Stacey R. Eisenstein, Esq.
                                Daniel L. Nash, Esq.
16                              AKIN, GUMP, STRAUSS, HAUER & FELD
                                1333 New Hampshire Avenue NW
17                              Washington, DC  20036

18                              Brooke Gardner, Esq.
                                THE NATIONAL FOOTBALL LEAGUE
19                               MANAGEMENT COUNCIL

20
     Audio Operator:            Electronically Recorded
21                              by Court Personnel

22   Transcription Company:     Rand Reporting & Transcription, LLC
                                80 Broad Street, Fifth Floor
23                              New York, New York 10004
                                (212) 504-2919
24                              www.randreporting.com

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

1                          I N D E X

2

3                                                              Page

4   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
    PETITION TO ENFORCE ARBITRATION AWARD                      3
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings commence.)

2           THE COURT:  Good afternoon.  Please be seated.

3           THE CLERK:  Your Honor, this is the matter of The

4    National Football League Players Association, et al, v. The

5    National Football League Management Council, et al, Number

6    08-cv-3658.  Please state your appearances for the record.

7           MR. KAISER:  On behalf of the National Football

8    League Players Association, Adam Kaiser from the law firm of

9    Dewey & LeBoeuf; and I have with me Michelle Lo.  And if it's

10   acceptable to the Court, we have a summer associate from our

11   firm here today, Mr. Robbins.  And if it's okay, I'd like to

12   have him sit at counsel table.

13          THE COURT:  Okay.  Where does Mr. Robbins go to law

14   school, before I say it's okay?

15          MR. ROBBINS:  I attend Emory University, Your Honor.

16   Emory University.

17          THE COURT:  Down in Atlanta?

18          MR. ROBBINS:  Yes, sir.

19          THE COURT:  Okay.  Well, you can stay, then.

20      (Laughter.)

21          MR. KAISER:  Thank you very much, Your Honor.

22          THE COURT:  Sure.

23          THE CLERK:  Respondent?

24          MS. EISENSTEIN:  Good afternoon, Your Honor.  Stacey

25   Eisenstein, counsel for respondent National Football League

1    Management Council, the New York Jets, the Buffalo Bills, and

2    the Carolina Panthers.  I'm with the law firm of Akin Gump in

3    Washington, D.C. and I have with me Daniel Nash from Akin

4    Gump as well, and Brooke Gardner, who is an attorney at the

5    Management Council.

6              THE COURT:  All right.  You're all most welcome.

7              All right, Ms. Eisenstein.  I guess we're here on

8    your application.  As I understand it, this deals with an

9    arbitration award.  The Players Association wants an

10   enforcement and you want to move to, what, dismiss it?

11             MS. EISENSTEIN:  Yes, Your Honor.  That's correct.

12             THE COURT:  Okay.  Want to tell me why?

13             MS. EISENSTEIN:  Your Honor, there's a few reasons.

14   I could give you just a little bit of background.  They

15   brought a petition to confirm an arbitration award pursuant

16   to the Federal Arbitration Act.

17             Now, the arbitration award was rendered pursuant to

18   the grievance process under the parties' collective

19   bargaining agreement and the Second Circuit has clearly held

20   that the Federal Arbitration Act does not apply to actions to

21   confirm arbitration awards brought pursuant to collective

22   bargaining agreements under Section 301.  That's the first

23   reason, Your Honor.

24             The second reason -- actually, taking a step back,

25   the award at issue is an award that generally deals with the

5

1   rights of NFL players who have been injured to collect

2   workers' compensation benefits.

3          THE COURT:  And your right to offset the workers'

4   compensation award against any award they get under the

5   collective bargaining agreement?

6          MS. EISENSTEIN:  Precisely, Your Honor.

7          THE COURT:  Right.

8          MS. EISENSTEIN:  And in their petition to confirm,

9   the Players Association has made reference to an agreement

10  between the parties.  That was entered into prior to the

11  issuance of the arbitration award at issue today.

12         And that agreement is critical to the reasons we

13  seek to dismiss the petition, Your Honor.  Under that

14  agreement the parties expressly agreed that the award would

15  not go into effect until what's referred to as the "final

16  league year," which is currently 2010.  And they agreed that

17  it wouldn't be until that point, which is now 2010, that the

18  arbitration award would become final and binding on the

19  parties.

20         Also importantly, Your Honor, under that agreement,

21  the parties agreed to settle the underlying grievances that

22  were subject of the arbitration.  So currently there is no

23  dispute.  There's no case or controversy, as is required to

24  maintain an action under the LMRA, if you were to choose to

25  convert this action into a suit under the LMRA.  And we

1  believe it's premature at this time for them to seek to

2  confirm the award.

3          THE COURT:  Okay.  Mr. Kaiser?

4          MR. KAISER:  Well, Your Honor --

5          THE COURT:  Well, let me ask you first, Ms.

6  Eisenstein.  Are there any factual issues here?

7          MS. EISENSTEIN:  Any factual issues in dispute?

8          THE COURT:  Yes.

9          MS. EISENSTEIN:  Your Honor, I think this would be a

10  motion to dismiss, if that's what you're referring to.

11          THE COURT:  Well, I'm really -- I'm going to ask Mr.

12  Kaiser, if there are no factual issues I'm going to ask him

13  to cross-move for enforcement so I get -- I don't have to

14  deal with this thing seriatim, I can deal with it at one

15  time.

16          Are there any factual issues?  I understand you're

17  moving to dismiss, so we take the facts in the petition as

18  true then?

19          MS. EISENSTEIN:  That's correct, Your Honor,

20  although we believe there are additional material facts that

21  were omitted from the petition that would be relevant to your

22  determination.

23          THE COURT:  Okay.  Mr. Kaiser?

24          MR. KAISER:  Well, thank you, Your Honor.

25          The petition I think is very clear.  On the very

1    first page -- it's actually Page 2 where it says, "This Court

2    has subject matter jurisdiction in this action pursuant to 28

3    USC Section 1331, in that it arises under Section 301 of the

4    Labor Management Relations Act," we again discuss the Labor

5    Management Relations Act on Page 5, in Footnote 2, when we

6    demonstrate to the Court -- and this is not disputed by the

7    NFL -- that the statute of limitations set forth in the Labor

8    Management Relations Act will apply for this proceeding.

9            What the Management Council has done, the NFL, is

10   they've gone to Page 2 and they've looked at only the last

11   sentence of the fourth paragraph.  This is right above that -

12   -

13           THE COURT:  "This petition is brought pursuant to

14   the Federal Arbitration Act."

15           MR. KAISER:  That's correct.  And they've looked --

16           THE COURT:  And they skipped the first sentence.

17           MR. KAISER:  Well, they skipped the first sentence.

18           THE COURT:  To the fourth paragraph.

19           MR. KAISER:  They skipped the footnote.  And it's

20   hard to imagine that the simple inclusion of that sentence

21   somehow renders this entire petition void.

22           Now, the Labor Management Relations Act does not

23   contain a specific procedure for confirming an arbitration

24   award.

25           THE COURT:  So you're borrowing it as a guide.

1          MR. KAISER:  So we borrowed it.

2          Now, I was reminded of this by my colleague Ms. Lo

3    last week as we were getting ready for today's hearing.

4    Where did this language come from?  Why did we put this

5    petition pursuant to 9 USC Section 9?

6          THE COURT:  Did Ms. Lo put it in?

7          MR. KAISER:  Well, Ms. Lo reminded me, and I had

8    forgotten this, that in a prior action almost identical to

9    this one where the parties wanted to confirm an arbitration

10   award between the NFL and the NFL Management Council dealing

11   with workers' compensation benefits, the exact provisions of

12   the CBA, the exact standard player agreement, that Akin Gump,

13   representing the NFL, put together a joint petition to

14   confirm the award.

15         And if it pleases the Court, I'd just like to hand

16   that up so the Court can see where --

17         THE COURT:  Don't -- submit it with your papers.

18         MR. KAISER:  But in that --

19         THE COURT:  You're saying you borrowed it from --

20         MR. KAISER:  Well, in this petition in the case

21   brought in the Northern District of Texas -- and it's

22   verbatim.  "This petition is brought pursuant to the Federal

23   Arbitration Act, 9 USC Section 9."  In fact, that entire

24   paragraph, that entire fourth paragraph on Page 2, are

25   Paragraphs 4, 5, and 6 from the petition that the NFL

1  prepared to confirm an arbitration award --

2          THE COURT:  Let me put this --

3          MR. KAISER:  -- in almost identical situation.

4          THE COURT:  Yeah.  I understand you disagree with

5  Ms. Eisenstein.  Let me ask the question I put to her.

6          Are you ready to make your motion for enforcement?

7          MR. KAISER:  Well, we --

8          THE COURT:  I mean, do you see any factual issues

9  here?

10          MR. KAISER:  No.  We believe that the petition --

11  there are no factual issues here, we are ready.  We believe

12  that the petition itself is the motion.  The way the Federal

13  Arbitration Act works, and this is why we borrowed the

14  procedure, and the same reason the NFL borrowed the procedure

15  in the Northern District of Texas case from 2005, is the

16  actual petition is treated like a motion.

17          So the petition itself --

18          THE COURT:  So your view is you don't have to make

19  any motion?

20          MR. KAISER:  No, that's absolutely correct, Your

21  Honor.  We believe the petition is our motion --

22          THE COURT:  And if I deny Ms. -- the defendants'

23  application, I can enforce yours?

24          MR. KAISER:  That's correct.

25          THE COURT:  Okay.  All right.  Well, do you want to

1   talk about a schedule?  Because without a doubt in the Second

2   Circuit, Ms. Eisenstein and the parties she represents have,

3   you know, a right, almost a constitutional right, to bring

4   their motion to dismiss.  It's one allowed by statute, it's

5   one allowed by rules.

6          And the rule here in the Second Circuit is everybody

7   gets to make the motions.  So what's your schedule, Ms.

8   Eisenstein?  When do you want to make your motion?

9          MS. EISENSTEIN:  We're pretty much ready to file it.

10  I would defer to Mr. Kaiser's schedule on that.  We can do it

11  on an expedited basis.

12         If I might just respond briefly to his mention of

13  the other petition to confirm that he borrowed from?

14         THE COURT:  Well, I'm not going to decide it on that

15  basis, so you don't have to worry about it.

16         When are you going to file your motion?  Today is

17  the 9th.

18         MS. EISENSTEIN:  Today is the 9th?  Your Honor,

19  thirty days?  Would that be --

20         THE COURT:  You're ready at any time within thirty

21  days?

22         MS. EISENSTEIN:  Yes, Your Honor.

23         THE COURT:  Okay.  That would be July 7th.  That

24  would be twenty-eight days.

25         Mr. Kaiser, when can you respond?

...Motion                                    11

1          MR. KAISER:  Well, I usually go on vacation the last

2     two weeks of August, so I'd like to get it in before then.

3     Can I have thirty days to respond?

4          THE COURT:  Yes.  That would bring you to the 4th of

5     August.  July 7 for the defendants' motion to dismiss, August

6     4th for your response.

7          And the reply, Ms. Eisenstein?  Two weeks?

8          MS. EISENSTEIN:  Yes, Your Honor.  Two weeks would

9     be fine.

10          THE COURT:  Okay.  August 18th.  And then if I need

11     argument, we'll have argument sometime in September.

12          MR. KAISER:  Now, can we use these same dates for

13     the petition?  In other words, on July 7th the NFL will

14     submit its brief opposing our petition to confirm the award

15     and on August 4th we'll submit our reply to --

16          THE COURT:  Makes sense to me, Mr. Kaiser.

17          Ms. Eisenstein, it was my hope that we'd only go

18     through this once so I don't have to read the papers

19     seriatim.  I can read them all at one time.  And when we get

20     around to argument, I can be prepared by both sides on the

21     same schedule to rule one way or the other.

22          MS. EISENSTEIN:  That's fine, Your Honor.

23          THE COURT:  All right?

24          MS. EISENSTEIN:  Yes.

25          THE COURT:  Okay.  There's your answer.

1         So they'll answer the petition on July 7th and

2   you'll get your --

3         MR. KAISER:  The reply in by August 4th.

4         THE COURT:  -- August 4th.  And then that matter

5   will be fully submitted, correct?

6         MR. KAISER:  That's correct, Your Honor.

7         THE COURT:  All right.  Fine.  Anything else to do

8   today?

9         MR. KAISER:  I don't believe so, Your Honor.

10        MS. EISENSTEIN:  No, Your Honor.

11        THE COURT:  Okay.  Thank you very much.

12        MR. KAISER:  Thank you.

13        MS. EISENSTEIN:  Thank you.

14        THE COURT:  Well, let me ask you a question.  What

15  happened in that proceeding down in the Northern District of

16  Texas?  Was enforcement granted to the --

17        MR. KAISER:  Yes, it was.  It was a joint petition

18  to confirm the award.  It had the exact same language from

19  our petition brought under Section 301.

20        THE COURT:  You'll cite that in your papers.

21        Ms. Eisenstein?

22        MS. EISENSTEIN:  Your Honor, if I might just

23  interject that this circuit -- there's a split in the

24  circuits and, unlike the Second Circuit, I believe that the

25  Fifth Circuit does not hold that the FAA is not applicable to

1   actions for enforcement brought pursuant to 301, whereas the

2   Second Circuit has squarely held that that is prohibited

3   under the FAA.

4         THE COURT:  And you believe that the Players

5   Association are proceeding under the FAA and not under the

6   301?

7         MS. EISENSTEIN:  We do, Your Honor --

8         MR. KAISER:  No, we --

9         MS. EISENSTEIN:  -- because --

10        THE COURT:  Just a minute, Mr. Kaiser.

11        MS. EISENSTEIN:  Because they've brought this --

12   they filed this as a petition to confirm.  Were this to be an

13   action under the LMRA, the proper procedure is to file a

14   breach of contract claim, essentially a complaint.

15        THE COURT:  Okay.  Well, you'll tell me that in your

16   papers, right?

17        MS. EISENSTEIN:  Yes, Your Honor.  I will.

18        THE COURT:  All right.  Fine.  Thank you very much.

19     (Proceedings concluded.)

20                    *****

21

22

23

24

25

1

2                              CERTIFICATION

3    I certify that the foregoing is a correct transcript from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6

7

8

9

10   _____          June 18, 2008

11   Lisa Luciano, AAERT Cert. No. 327

12   Certified Court Transcriptionist

13   For Rand Reporting & Transcription, LLC

14

15

16

17

18

19

20

21

22

23

24

25